**Exhibit A**

OIC - 039647

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 1 of 480)

IN THE SUPERIOR COURT OF FULTON COUNTY
BUSINESS CASE DIVISION
STATE OF GEORGIA

| | |
|---|---|
| ALIERA HEALTHCARE, INC., | |
|     Plaintiff/Counterclaim Defendant, | CIVIL ACTION FILE NO. |
| v. | 2018CV308981 |
| ANABAPTIST HEALTHSHARE; and UNITY HEALTHSHARE, LLC, | |
|     Defendants/Counterclaimants, | Business Case Div. 1 |
| ALEXANDER CARDONA, and TYLER HOCHSTETLER, | |
|     Defendants. | |

**ORDER ENTERING INTERLOCUTORY INJUNCTION
AND APPOINTING RECEIVER**

The Court has carefully considered the Application for an Interlocutory Injunction and for the Appointment of a Receiver submitted by Defendants-Counterclaimants Anabaptist Healthshare ("Anabaptist") and Unity Healthshare LLC ("Unity") (collectively, "AHS/Unity"), the exhibits and briefs submitted in support, the responses and exhibits submitted by Plaintiff-Counterclaim Defendant Aliera Healthcare, Inc. ("Aliera"), and the evidence and arguments presented at the evidentiary hearing held on January 22, 2019 and January 24, 2019. This Order reduces to writing the oral order and interlocutory injunction of the Court issued at the conclusion of the hearing on January 24, 2019.

Having allowed the parties several opportunities to confer on a proposed order following the January hearing and having considered the parties' respective submissions and the record, the Court finds and orders as follows:

OIC - 039648

OIC 7702 Hamburger BAMBURGER DECL.
EX. 13 (Page 2 of 480)

## I.    FINDINGS OF FACT[1]

**Background**

1.    Defendant/Counterclaimant AHS is a non-profit Section 501(c)(3) tax exempt organization. Affidavit of T. Hochstetler (Hochstetler Aff.) at ¶ 2; Transcript of Hearing on AHS/Unity's Application for Interlocutory Injunction and for Appointment of a Receiver ("Hr'g Tr.") 42:14-18.[2]

2.    AHS has, for some years, managed a Health Care Sharing Ministry ("HCSM") for members of the Anabaptist communities in Virginia. Hochstetler Aff. ¶ 2; Hr'g Tr. 94:18-95:19.

3.    Health care sharing ministries ("HCSM") facilitate the sharing of certain medical expenses among their members. Hochstetler Aff. at ¶ 3; Hr'g Tr. 43:16-44:13.

4.    The Affordable Care Act (the "ACA") exempts members of a qualifying HCSM from the tax penalty levied on those who fail to purchase health insurance, commonly referred to as "the individual mandate." Hochstetler Aff. ¶ 3; Hr'g Tr. 43:16-24.

5.    AHS received a letter from the Centers for Medicare and Medicaid Services ("CMS") stating that it met the ACA's requirements for its members to claim the tax exemption, which included the requirement that AHS has been "in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since December 31, 1999." Hochstetler Aff. ¶ 3; Hr'g Tr. 43:25-44:3.

6.    The United States Department of Health and Human Services certified that AHS is an HCSM whose members qualified for the exemption from the individual mandate. Hochstetler Aff. ¶ 6; Hr'g Tr. 45:1-12; Joint Ex. 2.

7.    AHS's wholly-owned subsidiary, Unity, is also an HCSM whose members qualified for the exemption from the individual mandate to the same extent as AHS. Hr'g Tr. 49:18-50:6.

---

[1]    As demonstrated by the parties' respective proposed findings of fact and other submissions, the evidence adduced to date in this matter is too vast to adequately summarize here. Included herein are the Court's preliminary findings that are most relevant to the Court's rulings and analysis.
[2]    The exhibits cited herein were either received in evidence at the evidentiary hearing on AHS/Unity's motion for interlocutory injunction or are attached to the parties' pleadings and filings in connection with AHS/Unity's motion for a TRO/interlocutory injunction.

OIC - 039649

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 3 of 480)

8.     AHS was formed in 2015, and Unity was formed in late 2016.  Hr'g Tr. 96:7-8; 300:3-5.

9.     Congress eliminated the individual mandate's tax penalty beginning January 1, 2019. *See* Pub. L. No. 115-97, § 11081 (2017); Hr'g Tr. 98:23-99:9.

10.     Georgia's Insurance Code defines a "health care sharing ministry" as "a faith-based, nonprofit organization that is tax exempt under the Internal Revenue Code" and that meets the six specific requirements set forth in the statute.  O.C.G.A. § 33-1-20 (providing that HCSMs meeting such requirements are neither insurance nor subject to the jurisdiction of the Commissioner of Insurance).

11.     Other states have similar statutes defining HCSMs. *See, e.g.*, Fla. Stat. § 624.1265(1) (defining a healthcare sharing ministry as "[a] nonprofit religious organization" that satisfies certain requirements); Tex. Ins. Code § 1681.001 ("A faith-based, nonprofit organization that is tax-exempt under the Internal Revenue Code of 1986 qualifies for treatment as a health care sharing ministry…"); Va. Code Ann. § 38.2-6300 ("As used in this chapter, 'health care sharing ministry' means a health care cost sharing arrangement…administered by a non-profit organization that has been granted an exemption from federal income taxation pursuant to § 501(c)(3) of the Internal Revenue Code of 1986…").

12.     Additionally, the federal ACA provision that allowed HCSM members to claim an exemption from the tax penalty of the individual mandate makes clear that an HCSM must be a non-profit federally tax-exempt organization. *See* 26 U.S.C. § 5000A(d)(2)(B) (defining a "health care sharing ministry" as a non-profit tax exempt 501(c)(3) organization that meets certain criteria including having members who share a common set of ethical or religious beliefs and who share medical expenses, and that the HCSM must have been in existence and sharing continuously and without interruption since at least December 31, 1999).

13.     Aliera is an Atlanta-based for-profit company that sells healthcare products.  Hochstetler Aff. at ¶ 10; *see also* Hr'g Tr. 48:12-20; 89:1-2. Aliera offers alternative healthcare that is not insurance. Hr'g Tr. 251:1-23; Steele Aff. at ¶2.

14.     As a for-profit company, Aliera does not qualify as an HCSM under state or federal law. *See* Hr'g Tr. 48:12-20; 50:10-17; 52:1-8; 55:17-23; 89:1-2.

OIC - 039650

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 4 of 480)

15.     Aliera began selling its healthcare products in 2015.  Hr'g Tr. at 185:5-17. At that time, Aliera's products included services such a direct primary care medical home (DPCMH) service but did not include coverage for emergency room visits and hospitalization. Hr'g Tr. at 50:7-17, 185:5-17; Steele Aff. at ¶ 4.

16.     Before Aliera established a relationship with an HCSM to offer an HCSM product, members who purchased Aliera's products did not qualify for exemption from the individual mandate's tax penalty. In other words, individuals who purchased Aliera's products did not satisfy the ACA's individual mandate unless they also purchased additional healthcare products from another source that satisfied the individual mandate.  Hr'g Tr. 186:9-11.

17.     At some point after it began selling its products, Aliera determined that if it could sell its plans side-by-side with an ACA-exempt HCSM plan, it would make the Aliera plan much more attractive to consumers and increase sales of Aliera's own products.  Hr'g Tr. 186:12-189:4.  Such concurrent offering of non-ACA exempt Aliera products with ACA-exempt AHS/Unity products would not, however, make Aliera's own products satisfy the individual mandate.

**Aliera Approaches AHS and the Parties Negotiate and Execute an Amended MOU and a Written Agreement**

18.     To this end, in 2016, Aliera approached AHS to pitch a relationship between Aliera and AHS. Hochstetler Aff. at ¶ 7; Hr'g Tr. 46:4-9.

19.     Timothy Moses, Alexander Cardona, and G. Michael Smith pitched the relationship and negotiated with AHS on behalf of Aliera. Hochstetler Aff. at ¶¶ 7-14; Hr'g Tr. 46:4-47:25; Smith Aff. at ¶¶3-5. Tyler Hochstetler led the negotiations for AHS.  Hr'g Tr. 46:4-65:4.

20.     Tyler Hochstetler testified that Aliera representatives proposed an arrangement under which Aliera would work with AHS to build AHS's HCSM network.  Hochstetler Aff. at ¶ 8; Hr'g Tr. 46:10-50:3.

21.     Timothy Moses explained to Tyler Hochstetler that Aliera sought to enter into a business relationship with AHS because Aliera could not offer hospitalization coverage through its direct primary

4

care medical home (DPCMH) products, nor could Aliera – as a for-profit company – offer HCSM products by itself.  Hr'g Tr. 50:10-17.

22.     Aliera valued AHS's exemption from the individual mandate, and entering into a relationship with AHS would allow Aliera to bundle HCSM plans with its products to offer participants the ability to qualify for the tax exemption from the ACA's individual mandate.  Hochstetler Aff. at ¶¶ 11-13; Hr'g Tr. 48:12-20.

23.     Timothy Moses stated that, if the parties were to enter into a business relationship, Aliera would market and administer AHS's HCSM plans.  Hr'g Tr. 46:10-18; 49:21-24.

24.     Timothy Moses proposed that AHS/Unity compensate Aliera $25 per member per month as Aliera's fee for the administrative services Aliera performed as part of its business relationship with AHS.  Hr'g Tr. 51:14-25.  Timothy Moses suggested that this fee was reasonable because it was similar to the fee other HCSMs paid for administrative services.  Hr'g Tr. 51:11-25.

25.     AHS asserts it was interested in partnering with Aliera because it desired to expand its ministry, and Aliera presented itself as an experienced and reputable company that could help AHS expand its HCSM nationwide.  Hochstetler Aff. at ¶¶ 13-14; Hr'g Tr. at 50:21-50:1.

26.     For example, Aliera represented to AHS that it had a strong compliance strategy and maintained strong relationships with insurance commissioners in every state.  According to Tyler Hochstetler, this was extremely important to AHS.  Hochstetler Aff. at ¶ 14; Hr'g Tr. 51:2-10.

27.     Following their negotiations, Aliera and AHS executed a Memorandum of Understanding on October 31, 2016.  Hochstetler Aff. at ¶ 15.

28.     On November 10, 2016, AHS and Aliera executed an Amended Memorandum of Understanding.  Hochstetler Aff. at ¶¶ 16; Hr'g Tr. 55:7-9.

29.     Aliera primarily drafted the Amended Memorandum of Understanding with participation from AHS representatives.  Hr'g Tr. 55:15-16; 164:7-20; Smith Aff. at ¶5.

30.     The Amended Memorandum of Understanding contemplated that AHS would create a new nonprofit subsidiary, Unity, to offer HCSM plans.  Hochstetler Aff. at ¶ 16.

5

31.     The Amended Memorandum of Understanding further contemplated that Aliera and AHS, through its new subsidiary Unity, would partner to sell two-part healthcare products.  It provided that "AHS and [Aliera] wish to cooperate as set forth in this MOU so that the [Aliera] products along with the AHS products are sold side by side and marketed to the public members who are or agree to become members of the faith-based ministry membership and health plan." Joint Ex. 3 at p. 1 (Amended Memorandum of Understanding); Hochstetler Aff. at ¶ 16; Hr'g Tr. 57:5-11.

32.     The Amended Memorandum of Understanding described Aliera's role in Section 2.5(j) as follows:  "AHS will contract with [Aliera] to market Unity Healthshare, service memberships, cover claims, handle bill reductions, and generally operate Unity Healthshare, subject to the direction of the board of AHS.  [Aliera] will charge an anticipated $25 per member, per month for this service."  Joint Ex. 3 at p.3.

33.     The Amended Memorandum of Understanding at Section 1.2 provided in part: "[Aliera] is and shall remain the sole and exclusive owner or authorized licensee of and will retain all right, title, and interest, including all intellectual property rights, in and to the [Aliera] Products, and AHS is and shall remain the sole and exclusive owner or authorized licensor of and will retain all right, title, and interest, including all intellectual property rights, in and to the AHS product offerings, except for the specific licenses granted to [Aliera] or specific grants by [Aliera] to AHS…" Joint Ex. 3 at p.2.

34.     The Amended Memorandum of Understanding also contemplated that the parties would "enter into a more formal understanding and written agreement as quickly as possible . . . to formalize their understanding and agreement."  Joint Ex. 3 at p. 1.

35.     On February 1, 2017, Aliera and AHS entered into a written contract ("the Agreement"). Hochstetler Aff. at ¶ 17; Hr'g Tr. 59:4-7; Joint Ex. 4 (Agreement).

36.     Aliera drafted the Agreement although the parties negotiated the terms.  Hr'g Tr. 58:23-24, 59:12-14; Smith Aff. at ¶5.

37.     The fourth "Whereas" clause on the first page of the Agreement provides, in relevant part, that AHS and Aliera "have agreed to cooperate and partner together in accordance with the

6

OIC - 039653

Amended Memorandum of Understanding, whereby the two parties agree to enable ALIERA to market and sell the two part non-insurance products to AHS and ALIERA and/or [Unity] members." Joint Ex. 4 at p. 1.

38.      The fifth "Whereas" clause goes on to state that "AHS and its subsidiary, UHS, wish to market products through ALIERA's DPCMH model of care, network, administration, call center, marketing, plan design, website administration, enrollment portal, concierge services, telemedicine, and other related services, and whereas, AHS and [Unity] do hereby contract with ALIERA to provide said services, in accordance with the terms and conditions contained herein." Joint Ex. 4 at p. 1.

39.      The ninth "Whereas" clause  provides: "AHS is granting ALIERA an exclusive **license to sell and distribute [Unity] products** to the public markets (*pubic markets means persons who will acknowledge the standard of beliefs and other requirements as deemed necessary by AHS*) via all distribution channels…" Joint Ex. 4 at p. 2 (capitalized and italicized emphasis in original; bold emphasis added).  Section 1.2 further provides that AHS, on Unity's behalf, granted Aliera a "U.S. wide, royalty-free, non-transferable, exclusive[] **license**." Joint Ex. 4 at p. 2 (bold emphasis added).

40.      Section 1.3 provides:  "**During the term of this agreement** ALIERA shall remain the sole and exclusive authorized non-insurance health care company allowed to market and sell health care products to ALIERA and Unity HealthShare members.  Aliera will retain all right, title, and interest including all intellectual property rights, in and **to the ALIERA products**, and AHS is and shall remain the sole and exclusive owner or authorized licensor of and will retain all right, title, and interest, including all intellectual property rights, in and to the membership roster, except for the specific licenses granted in Sections 1.2." Joint Ex. 4 at p. 2 (bold emphasis added).

41.      Section 1.4 provides that the "HealthShare offerings [are] to be marketed and sold by Unity HealthShare, LLC."  Joint Ex. 4 at p.2.

42.      Section 7(g) states that "Aliera will design and implement all cost sharing plans, marketing materials, operational controls and general business banking for [Unity] subject to access and approval by the AHS Board of Directors."  Joint Ex. 4 at p. 5.

7

OIC - 039654

43.    Under Section 7(d), Unity was to escrow $2.00 per member per month from each new membership application into a "ministry fund" to be administered directly by AHS. Joint Ex. 4 at p. 5. Unity also agreed to deposit $25.00 from each one-time application fee per membership to be used by AHS as it deemed most appropriate to further the intent of the ministry and cover administration and related costs. *Id.*

44.    Section 7(f) sets forth a "profit-sharing arrangement" whereby Eldon and Tyler Hochstetler each received $2.50 per enrolled member in Unity per month. Joint Ex. 4 at p. 5.

45.    Section 4 of the Agreement is entitled "Administrative Fees" and states, in relevant part: "It is agreed that ALIERA shall be entitled to retain the initial enrollment fee, and the first monthly membership fee payment.  The second monthly membership fee payment shall also be retained by ALIERA, to be used if necessary for ALIERA or [Unity] expenses.  Thereafter, any succeeding month(s) which the membership is continued, ALIERA shall be entitled to retain $25.00 PMPM [*i.e.*, "per member per month"] as payment for its services."  Joint Ex. 4 at pp. 3-4.  Thus, the parties' Agreement provides Aliera with more compensation than what was contemplated in the Amended Memorandum of Understanding.

46.    The Administrative Fees paid to Aliera under Section 4 of the parties' Agreement amounted to millions of dollars.  Hr'g Tr. 307:17-308:5.

47.    Section 7(l) of the Agreement states that the parties' contract is integrated: "This Agreement contains the entire understanding between the Parties with respect to the subject matter hereof and supersedes all and any prior understandings, undertakings and promises between AHS, [Unity], and ALIERA, whether oral or in writing." Joint Ex. 4 at p. 6.

48.    Tyler Hochstetler testified that, during the parties' negotiations concerning the Agreement, Timothy Moses told Tyler that he had retired after building a billion-dollar company.  Hr'g Tr. 54:8-55:1.

49.    In 2005, a federal jury found Timothy Moses guilty of securities fraud and perjury. *See United States v. Moses*, No. 1:04-cr-508-CAP (N.D. Ga.), at ECF 86.  Mr. Moses was sentenced on

8

OIC - 039655

February 17, 2006 to 78 months' imprisonment followed by a term of five years' supervised release. *Id.* at ECF 96. Soon after his release, Judge Pannell revoked Mr. Moses's supervised release because he had misled his supervising probation officer about his financial affairs and failed to disclose bank account information and new lines of credit. *Id.* at ECF 145 & 150. Mr. Moses's supervised release was terminated in April 2015 (*see id.* at ECF 167), approximately six months prior to Aliera's creation and approximately one and a half years prior to Aliera and Mr. Moses approaching AHS and Mr. Hochstetler about forming a relationship.

50.     Tyler Hochstetler testified that he learned about Tim Moses' criminal conviction in the "first half" of 2017. Hr'g Tr. 151:21-24.

**The Parties' Business Relationship**

51.     Aliera offered its products to the public in conjunction with the Unity HCSM plans. Hochstetler Aff. at ¶ 19; Hr'g Tr. 107:8-20.

52.     Individuals and families who purchased a Unity HCSM plan could claim an exemption from the tax penalty of the ACA individual mandate. Hochstetler Aff. at ¶¶ 12, 19; Hr'g Tr. 50:4-6

53.     The marketing materials for the side-by-side plan offerings emphasized the Unity HCSM exemption from the tax penalty of the ACA's individual mandate. Hr'g Tr. 188:22-189:18.

54.     Members interfaced with Aliera with respect to both plans because Aliera served as the program administrator for the Unity HCSM plans under the Agreement. Hochstetler Aff. at ¶ 20.

55.     Unity entrusted Aliera with Unity HCSM member information and the Unity HCSM plan assets. Hochstetler Aff. at ¶ 20; Hr'g Tr. 80:21-81:4.

56.     Some individuals purchased plans that contained only an Aliera product and some individuals purchased plans that contained only a Unity HCSM product. The vast majority of individuals, however, purchased plans that contained two separate products: an Aliera DPCMH product and a Unity HCSM product. Hr'g Tr. 188:13-189:18. Though those plans were offered side by side, Aliera represented to third parties during the course of its relationship with AHS/Unity, consistently with the fact that only the Unity HCSM was ACA exempt, that the plans were legally separate and distinct. *See*

9

OIC - 039656

OIC 7702 Hamburger Decl.    HAMBURGER DECL.
EX. 13 (Page 10 of 480)

Corresp. to Fla. Office of Ins. Reg., Joint Ex. 6 at pp. 1-2; Corresp. to Maryland Ins. Comm'r, Joint Ex. 1 at p. 2.

57.     The separate and distinct nature of the Unity HCSM plans is also reflected in the Member Guide admitted into evidence, which was drafted by Aliera.  Joint Ex. 5; Hr'g Tr. 65:25-66:12.

58.     The Member Guide delineates between the Aliera component and the Unity HCSM component of the combined plans.  For example, the Member Guide distinguishes between "Aliera Healthcare services and Unity HealthShare cost sharing," which "combine to create a full range of services and benefits."  Joint Ex. 5 at p. 4.  Part I of the Member Guide relates to information about Aliera's products.  Part II of the Member Guide relates to the Unity HCSM. *See generally* Joint Ex. 5.

59.     Part II of the Member Guide makes clear that the HCSM is a Unity HealthShare plan and that the members of such plan are Unity HealthShare members.  For example, Part II begins by describing Unity HealthShare as "a health care sharing ministry (HCSM) which acts as an organizational clearing house to administer sharing of health care needs for qualifying members." *Id.*  It also outlines certain criteria that individuals must meet in order to "become and remain a member of Unity HealthShare." *Id.* at p. 11.  The Member Guide also states that "[m]embers wishing to change to a membership type other than that in which they are currently participating may, at the discretion of Unity HealthShare, be required to submit a new signed and dated membership application for review." *Id.* at p. 12.  And page 13 of the Member Guide defines the term "Membership" as "[a]ll members of Unity HealthShare." *Id.* at p. 13.  Monthly contributions are defined as monetary contributions "voluntarily given to Unity HealthShare to hold as an escrow agent and to disburse according to the membership escrow instructions." *Id.* at p. 14.  These are just a few examples of how Part II of Member Guide defines the HCSM plan as a Unity product, separate and distinct from the Aliera product.

60.     Moreover, the Member Guide requires members to seek resolution of any disputes concerning their HCSM plan with Unity, *not* Aliera. *See id.* at p. 17.  The Dispute Resolution and Appeal section of the Member Guide outlines the various steps that a member must take to challenge determinations made by the HCSM.  The first level of appeal asks the member to "call[] Unity

10

OIC - 039657

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 11 of 480)

Healthshare," which "will try to resolve the matter within ten (10) working days in writing." *Id.* The second level of appeal is to an "Internal Resolution Committee, made up of three Unity HealthShare officials." *Id.* The third level of appeal is to submit the dispute to "three sharing members in good standing and randomly chosen by Unity HealthShare." *Id.*

61.     If the various levels of appeal do not result in a resolution that is satisfactory to the member, then the member must pursue the claims through a mediation and arbitration with Unity HealthShare. The Member Guide states that "Unity HealthShare shall pay the fees of the arbitrator in full and all other expenses of the arbitration." *Id.*

62.     Aliera is not referenced in the dispute resolution provision in Part II for the HCSM plan.

63.     The Member Guide also expressly accords Unity, not Aliera, with exclusive subrogation rights for amounts paid or found to be payable by an institutional source or a liable third party, which further evidences that the HCSM plans belonged to Unity, not Aliera. *Id.* at p. 19.

64.     Consistent with the Member Guide, during the course of the parties' relationship, Aliera described itself to regulators as a third-party administrator of the Unity HCSM plans. For example, Aliera explained to the Maryland Insurance Commissioner that "as a program administrator for Unity plans, Aliera is exempt from Maryland licensing laws because Aliera does not market insurance in Maryland." Corresp. to Maryland Ins. Comm'r, Joint Ex. 1 at p. 2.

65.     Tyler Hochstetler testified that AHS/Unity understood that, under the parties' Agreement, member funds collected for Unity products were to be segregated in a separate account that belonged to Unity. Hr'g Tr. at 70:14-17.

66.     Tyler Hochstetler also testified that AHS/Unity trusted that Aliera would properly account for Unity HCSM plan assets and that Aliera would keep the Unity HCSM plan assets separate from Aliera's funds. Hr'g Tr. 80:21-81:4.

67.     Aliera represented to third parties, such as the Florida Office of Insurance Regulation, that it was in fact segregating the Unity HCSM plan assets from other funds. Specifically, a law firm retained by Aliera to represent it in proceedings before the Florida Office of Insurance Regulation stated

11

OIC - 039658

OIC 7702 Hamburger Decl. HAMBURGER DECL.
EX. 13 (Page 12 of 480)

in September 2017 that "Aliera provides and maintains the portal used by members to purchase products. Funds collected through the portal for Unity products are disbursed directly to Unity Healthshare. Likewise, funds collected through the portal for Aliera products are disbursed directly to Aliera." Corresp. to Fla. Ins. Comm'r, Joint Ex. 6 at 1. Aliera also stated in its Motion to Reconsider that "[a]ll of the [Unity HCSM plan members'] money – in the form of payments to Aliera, to Trinity, to Unity, and payments from those entities to providers – can be traced." Aliera's Motion to Reconsider at 8 (Jan. 2, 2019).

68.     Tyler Hochstetler testified that in January 2018, he learned for the first time that Aliera was not properly segregating the Unity HCSM plan assets. According to Tyler Hochstetler, Timothy Moses stated at a January 2018 meeting of the AHS Board that Aliera had not segregated the Unity HCSM plan assets, but instead unilaterally allocated revenues in the manner in which Aliera saw fit, keeping as much of the incoming member funds for Aliera's own benefit as it desired. Hr'g Tr. 71:10-16; 79:20-80:10.

69.     Tyler Hochstetler testified that Aliera did not have AHS/Unity's permission or authorization to treat member funds in this way, and that AHS/Unity never authorized Aliera to place Unity funds into Aliera accounts or to use Unity funds for Aliera's own purposes. Hr'g Tr. 70:21-24 & 80:14-20.

70.     The evidence shows that, per Timothy Moses' admissions to AHS/Unity, the representations that Aliera made to the Florida Office of Insurance Regulation about the way it treated Unity HCSM plan funds were incorrect. Indeed, Aliera's Comptroller, James F. Butler, III, acknowledged at the interlocutory injunction hearing in this case that member contributions associated with the Unity HCSM plans were not sent directly to Unity Healthshare. Hr'g Tr. at 334:6-335:4. Rather, Mr. Butler testified that: payments were received by Aliera and deposited into an account; when transactions occurred Aliera transferred money to pay for the claims; and later there would be a monthly reconciliation whereby contribution payments were segregated into Aliera and Unity accounts. Hr'g Tr. 331:21-333:13.

12

OIC - 039659

OIC 7702 Hamburger Decl. HAMBURGER DECL.
EX. 13 (Page 13 of 480)

71.     On May 4, 2018, Unity also learned that Timothy Moses had written approximately $150,000 dollars in checks to himself out of the Unity operating account without AHS/Unity's knowledge or authorization.  Hochstetler Aff. at ¶ 28; Hr'g Tr. 83:5-86:3.

72.     Tyler Hochstetler testified that after learning that the Unity HCSM plan assets were not being properly segregated, AHS/Unity took immediate steps to secure the integrity of its funds.  Hr'g Tr. 81:5-12.

73.     AHS/Unity first demanded an accounting of Unity funds so that AHS/Unity could assess whether Aliera was handling Unity HCSM plan assets appropriately.  Hr'g Tr. 81:5-12.  Aliera did not provide Unity with an accounting.  Hochstetler Aff. at ¶¶ 24-25.

74.     On July 25, 2018, AHS/Unity instructed Aliera to turn over control of Unity funds to Unity immediately and directed Unity HCSM plan members to make future payments to Unity.  Hr'g Tr. at 81:13-22.   Aliera did not comply with either of these demands, and continued to collect funds associated with the Unity HCSM component of member plans.  Hr'g Tr. at 83:2-4; 195:2-23.

75.     AHS/Unity has presented evidence that it became increasingly concerned about Aliera's administration of its plans during the summer of 2018.  It was particularly troubled by Aliera's repeated refusals to disclose information about the Unity HCSM plans that Aliera had assumed complete control over. Hochstetler Aff. at ¶¶ 24-26; Hr'g Tr. 79:20-86:17.

76.     Tyler Hochstetler testified that given Timothy Moses's criminal history, Mr. Moses's taking funds from the Unity operating account, and Aliera's refusal to disclose complete financial information, he and other AHS Board members became seriously concerned that the Unity HCSM plan assets were at risk of misappropriation.  Hochstetler Aff. at ¶ 24-29; Hr'g Tr. 79:20-86:17.

77.     Tyler Hochstetler testified that AHS/Unity removed Timothy Moses and Shelley Steele from certain Unity bank accounts as signers and ultimately froze two accounts containing approximately $5 million in funds used to pay claims. Hr'g Tr. 82:21-83:4, 147:8-149:24.

OIC - 039660

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 14 of 480)

**AHS/Unity Terminates the Agreement**

78.     With respect to termination, Section 3 of the Agreement provides:

This Agreement will commence on the Effective Date and will remain in effect perpetually after the execution date of this [A]greement, unless terminated or modified earlier by mutual agreement or substantial, material breach of this contract. However, upon termination, any existing member plans will remain active until the member's next renewal date.

**Upon termination of this Agreement, all licenses granted hereunder shall immediately terminate, and the Parties will promptly destroy or return all materials in its possession which belong to the other Party, including any and all confidential information which may have come into its possession.** In the event of any termination of this Agreement, Sections 2, 3.2 and 4., 5. and 6. will survive in accordance with their terms.

Joint Ex. 4 at p. 3 (bold emphasis added).

79.     On August 10, 2018, following a failed mediation with Aliera, AHS terminated the Agreement.  Hochstetler Aff. at ¶ 30; Hr'g Tr. 86:18-19, 146:14-20.

80.     AHS/Unity's termination included an express revocation of Aliera's right to hold the Unity HCSM plan funds and demanded that Aliera return control over those funds to AHS/Unity.  Hr'g Tr. 89:12-21; 179:17-23.  Aliera disagreed and did not turn over the Unity HCSM plan funds. Hr'g Tr. 89:19-21.

81.     AHS/Unity sought to have Aliera provide it with the Unity HCSM membership roster. Hr'g Tr. 88:16-22.  Aliera disagreed and did not provide the Unity HCSM membership roster to AHS/Unity.  Hr'g Tr. 88:16-22.

82.     Aliera retained possession of the Unity membership roster, all of the Unity HCSM plans, all of the Unity HCSM plan assets, Unity's intellectual property, including the Unity website, and Unity's employees. Hr'g Tr. 88:11-22.

83.     Tyler Hochstetler testified that Aliera's retention of the financial information concerning the Unity HCSM plans has prevented AHS/Unity from completing its 2017 and 2018 audits, which are necessary to retain Unity's status as a HCSM.  Hr'g Tr. 91:13-92:5; 92:12-19.

14

OIC - 039661

84.    AHS/Unity's inability to complete its audit jeopardizes its status as a tax exempt and ACA-approved HCSM. Hr'g Tr. 91:13-92:16.

85.    Tyler Hochstetler testified that if AHS/Unity's HCSM status as an ACA-approved HCSM is lost, it may become very difficult to recover, as HCSMs must share healthcare expenses of its members continuously and without interruption from 1999 to the present. Hr'g Tr. 92:6-11.

86.    Tyler Hochstetler testified that Aliera has prevented AHS/Unity from doing business with a key vendor. Hr'g Tr. 90:6-20.

87.    After termination of the Agreement, Aliera retained the entirety of the Unity HCSM plans' member base for itself. Hr'g Tr. 90:6-12.

88.    After termination of the Agreement, Aliera continued to maintain control over Unity's website and refused Unity's claims to it. Hr'g Tr. 91:2-12.

89.    The testimony at the hearing demonstrates that Aliera continues to controls the Unity website, www.unityhealthshare.org  and www.unityhealthshare.com. Aliera has configured those website so that when a member visits them, the member is automatically redirected to the website of Trinity Healthshare ("Trinity"). Hr'g Tr. 91:2-12.

90.    In 2018, Unity changed its name to Kingdom Healthshare. Mr. Cardona testified that Unity decided to change its name to Kingdom Healthshare in part because Aliera maintained control of the Unity HCSM plans and Unity's website. Hr'g Tr. 170:22-25; 195:24-198:6.

**Change from Unity HSCM to Trinity HCSM**

91.    On November 15, 2018, Aliera sent a notice to all Unity HCSM members. Joint Ex. 9.

92.    Aliera's November 15, 2018 notice stated "*No Action is Needed*" in bold italics font, near the top of the notice. Joint Ex. 9.

93.    Aliera's November 15, 2018 notice announced that it would transition all Unity HCSM members to Trinity on January 1, 2019. Joint Ex. 9.

94.    Trinity was created in 2018 by Aliera and its principals. Its Chief Executive Officer is William H. ("Rip") Thead, III, a former Aliera employee. Hr'g Tr. 300:8-16. Mr. Thead is a Moses

15

OIC - 039662

OIC 7702 Hamburger 000807
HAMBURGER DECL.
EX. 13 (Page 16 of 480)

family friend who officiated Chase Moses's wedding.  Hr'g Tr. 300:19-23. Chase Moses testified that Trinity is a 501(3)(c) and that it is "based on the Baptist faith." Hr'g Tr. 301:2-302:20.

      95.    The November 15, 2018 notice stated in part: "Beginning January 1st, 2019 Aliera is excited to announce Trinity HealthShare as its new Healthcare Sharing Ministry (HCSM) partner…All plan features, including eligible medical services, Member Shared Responsibility Amount ("MSRA"), and monthly member contribution amounts (how much you are billed each month) will remain the same. You also retain access to the same network providers and facilities with the same discounts. ***Nothing changes on your plan except for the HCSM name.  You don't have to do anything to maintain your current plan.***  You will retain your Member ID number and continue to contact Aliera Member Services for any assistance you may need regarding your membership. You will receive an updated plan membership card.  All contact and processing information remains the same.  If for any reason, you wish not ***to continue*** with your AlieraCare 5000 – Premium Plan Plan, [sic] you may opt-out by clicking here to complete a member cancellation form.  An Aliera representative will follow up with you promptly to process your request."  Joint Ex. 9 (emphasis added).

      96.    Unity HCSM members had to take affirmative action to opt out of the transition of their plans from Unity plans to Trinity plans.

      97.    Trinity is a separate and distinct entity from Unity Healthshare.  Trinity is in no way affiliated with Unity. Hochstetler Aff. at ¶ 34; Hr'g Tr. 91:10-12.

      98.    Trinity was created in Delaware on June 26, 2018, and authorized to conduct business in Georgia on October 26, 2018.  Joint Ex. 10.

      99.    The November 15, 2018 notice made no mention of Unity, or the fact that Unity had terminated its Agreement with Aliera.  Joint Ex. 9.

**The Court's TRO**

      100.    On December 28, 2018, the Court entered a Temporary Restraining Order, which – in part – enjoined Aliera from "transitioning any Unity HCSM members and plan assets to Trinity HealthShare LLC while this Temporary Restraining Order is in effect."

OIC - 039663

OIC 7702 Hamburger BAMBURGER DECL.
EX. 13 (Page 17 of 480)

101.    The Temporary Restraining Order also required Aliera to "use electronic means to notify as many Unity HSCM plan members as possible by January 1, 2019, that they will not automatically move to Trinity effective January 1, 2019, as previously stated in Aliera's November 15, 2018 electronic correspondence . . ."

102.    Aliera, however, did not send this notice out to Unity HCSM members until two days after denial of its motion to reconsider the Court's TRO, on January 10, 2019.  Hr'g Tr. 312:1-8.

## II.    CONCLUSIONS OF LAW

Under Georgia law, a court may enter an interlocutory injunction "to maintain the status quo, if, after balancing the relative equities of the parties, it appears the equities favor the party seeking an injunction." *Bernocchi v. Forcucci*, 279 Ga. 460, 461, 614 S.E.2d 775, 777 (2005).

In weighing the relevant equities, the Court considers the following factors:

> (1) whether there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted;
>
> (2) whether the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined;
>
> (3) whether there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial;
>
> (4) whether granting the interlocutory injunction will not disserve the public interest.

*Bishop v. Patton*, 288 Ga. 600, 604, 706 S.E.2d 634, 638 (2011). These factors guide the Court's weighing of the equities, but "a party seeking interlocutory injunctive relief need not always 'prove all four of these factors.'" *SRB Inv. Servs., LLLP v. Branch Banking & Tr. Co.*, 289 Ga. 1, 5 n. 7, 709 S.E.2d 267, 271 (2011).

As an initial matter, in weighing the relevant equities on the facts presented here, the Court finds instructive the Georgia Supreme Court's decision in *Grossi Consulting, LLC v. Sterling Currency Grp., LLC*, 290 Ga. 386, 722 S.E.2d 44 (2012). In that case, the Supreme Court affirmed an interlocutory injunction where the moving party's former contractor – initially hired to create a website and technology infrastructure to aid the movant's business – held the movant's assets after termination of the parties'

17

OIC - 039664

business relationship. *Id.* The Supreme Court found that because the former contractor had gained control of the movant's assets by virtue of the parties' business relationship, the Court did not abuse its discretion in ordering the contractor to relinquish control of those assets. *Id.* The contractor's continued possession of the movant's assets threatened dissipation of the assets during litigation. *Id.*

In this case, and as more fully set forth below, the evidence shows that AHS/Unity is substantially likely to succeed on its claim that it held all rights to the Unity HCSM plans and that Aliera serviced those plans solely as a third-party administrator under the parties' Agreement. *See* Findings of Fact ("FOF") at ¶¶ 23-24, 54-56, 64. The evidence further shows that, as in *Grossi*, Aliera had substantial control over the Unity HCSM plan assets by virtue of the parties' Agreement and Aliera's role as an administrator of the Unity HCSM plans. FOF at ¶¶ 55, 65-66, 87-90. And, most importantly, the evidence shows that Aliera has taken actions to misappropriate those assets; namely, by unilaterally attempting to transition the Unity HCSM plans to Trinity. FOF at ¶¶ 91-99.

An interlocutory injunction is legally appropriate to prevent Aliera from transitioning all Unity plan members and plan funds to a new HCSM, and to protect those funds from misappropriation and waste pending a final resolution on the merits. Moreover, the terms of the interlocutory injunction – enjoining the transition of Unity HCSM members to Trinity coupled with a receivership – are less intrusive than in *Grossi* where the court ordered a transfer of all disputed assets to the movant. Accordingly, the Court finds that the Georgia Supreme Court's decision in *Grossi* governs the propriety of granting an interlocutory injunction under the circumstances presented here.

Moreover, upon consideration of the parties' briefing, the exhibits attached thereto, and the evidence adduced at the hearing, the Court finds that each equitable factor weighs in favor of an interlocutory injunction in this case.[3]

---

[3]    To the extent Defendants argue Section 2.4 of the Agreement forecloses injunctive relief, the Court disagrees. That section provides:

> EXCEPT FOR (i) A PARTY'S BREACH OF ITS CONFIDENTIALITY
> OBLIGATIONS SET FORTH IN SECTION 6. AND (ii) A PARTY'S INDEMNITY
> OBLIGATIONS SET FORTH IN SECTION 5. **NEITHER PARTY WILL BE**

OIC - 039665

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 19 of 480)

**Likelihood of Success on the Merits**

The Court finds that AHS/Unity is likely to succeed on its claim for breach of the parties' Agreement. While the Court is not making a final determination regarding contract interpretation at this time nor deciding the parties' claims seeking declaratory relief, the Court preliminarily concludes for purposes of deciding this interlocutory injunction that a fair reading of the Agreement is that the Unity HCSM plans belonged to AHS/Unity with Aliera administering the Unity HCSM plans as consideration for the administrative fees provided for under the Agreement. FOF at ¶¶ 45-46. This interpretation is consistent with the statutory requirements for HCSMs like Unity. The Court finds that there is a substantial likelihood that AHS/Unity will succeed on the merits of its declaratory judgment claim and its claim that Aliera's treatment of the Unity HCSM plans and its retention of the Unity HCSM plans and plan assets after termination of the parties' contract was a material breach of the parties' Agreement. Unity is also likely to succeed on the merits of its breach of fiduciary duty claim.

First, AHS/Unity is likely to succeed on its declaratory judgment claim that the Agreement

---

LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES ARISING OUT OF THIS AGREEMENT, WHETHER LIABILITY IS ASSERTED IN CONTRACT OR TORT, AND REGARDLESS OF WHETHER EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH LOSS OR DAMAGE THIS SECTION DOES NOT LIMIT EITHER PARTY'S LIABILITY FOR BODILY INJURY (INCLUDING DEATH), OR PHYSICAL DAMAGE TO TANGIBLE PROPERTY. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, EXCEPT AS PROVIDED FOR A BREACH OF SECTION 4.1 (CONFIDENTIALITY OBLIGATIONS) OR EXCEPT AS PROVIDED UNDER SECTION 2.5 (INDEMNITY OBLIGATIONS), **IN NO EVENT SHALL EITHER PARTY'S TOTAL LIABILITY TO THE OTHER PARTY IN CONNECTION WITH, ARISING OUT OF OR RELATING TO THIS AGREEMENT EXCEED $5,000 (USD)**. THE PARTIES AGREE THAT THE LIMITATION SPECIFIED IN THIS SECTION WILL APPLY EVEN IF ANY LIMITED REMEDY PROVIDED IN THIS AGREEMENT IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE.

Joint Ex. 4 at p. 3 (capitalized emphasis in original; bold emphasis added). The foregoing section plainly describes "liability" in terms of damages and limits the parties' entitlement to monetary relief. However, it does not address injunctive or other equitable relief, much less do so explicitly, prominently clearly and unambiguously. *See Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 644–45, 490 S.E.2d 124, 128 (1997) ("Provisions severely restricting remedies act as exculpatory clauses and therefore should be explicit, prominent, clear and unambiguous") (citation and punctuation omitted); *2010-1 SFG Venture LLC v. Lee Bank & Tr. Co.*, 332 Ga. App. 894, 898, 775 S.E.2d 243, 248 (2015) ("[B]ecause exculpatory clauses may amount to an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on the subject matter and must be explicit, prominent, clear and unambiguous") (citation and punctuation omitted).

19

OIC - 039666

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 20 of 480)

provides that AHS/Unity holds the rights to the Unity HCSM plans, and that Aliera has breached the

Agreement in how it has treated the Unity HCSM plans and plan assets as its own. As summarized in

*Scrocca v. Ashwood Condo. Ass'n, Inc.*, 326 Ga. App. 226, 756 S.E.2d 308 (2014):

> [C]ontract construction proceeds in a series of steps, moving from one to the next
> only if necessary. The construction of contracts involves three steps. At least
> initially, construction is a matter of law for the court. First, the trial court must
> decide whether the language is clear and unambiguous. If it is, the court simply
> enforces the contract according to its clear terms; the contract alone is looked to
> for its meaning. Next, if the contract is ambiguous in some respect, the court
> must apply the rules of contract construction to resolve the ambiguity. Finally, if
> the ambiguity remains after applying the rules of construction, the issue of what
> the ambiguous language means and what the parties intended must be resolved
> by a jury….
>
> When courts construe contracts, the primary purpose is ascertaining the parties'
> intent: [C]ourts should ascertain the parties' intent after considering the whole
> agreement and interpret each of the provisions so as to harmonize with the others.
> That is, in construing contracts, it is important to look to the substantial purpose
> which must be supposed to have influenced the minds of the parties, rather than
> at the details of making such purpose effectual.

*Id.* at 228-29 (citations omitted).

Here, Section 1.3 of the Agreement states, in part, that "AHS is and shall remain the sole and

exclusive owner or authorized licensor of and will retain all right, title, and interest, including all

intellectual property rights, in and to the membership roster, except for the specific licenses granted in

Sections 1.2." Agreement, Joint Ex. 4 at p. 2. Upon consideration of two days of testimony from six

witnesses and the voluminous evidence and briefing submitted by the parties, the Court finds that

AHS/Unity is likely to succeed on its claim that the parties' Agreement provides that Unity, and not

Aliera, is the owner of the Unity HCSM plans and plan assets.[4] A fair reading of the Agreement is that

---

[4]      The Court rejects Aliera's argument that such a construction of the Agreement violates federal antitrust
laws. Accepting AHS/Unity's construction of the Agreement does not allocate customers between horizontal
competitors as Aliera suggests. Indeed, Aliera and Unity are not horizontal competitors because only Unity is a non-
profit organization and therefore only Unity can qualify as an HCSM under Georgia law, federal law, and the laws
of numerous other states. Because Aliera cannot compete with Unity for HCSM members, there is no basis for a
claim of an antitrust violation. *See Ad-Vantage Tel. Directory Consultants v. GET Directories Corp.*, 849 F.2d
1336, 1346 (11th Cir. 1987) ("[T]here can be no antitrust violation without a competitor, and agents do not compete
with those whom they represent"). Even if Aliera and AHS/Unity, through their affiliates, currently "compete" in the
HCSM market, such does not change the Court's analysis. As noted above, a fair reading of the Agreement is that
AHS/Unity granted Aliera a license to market and sell the Unity HCSM plans, not that AHS/Unity was "allocating"
customers to a competitor.

OIC - 039667

OIC 7702 Hamburger BAMBERGER DECL.
EX. 13 (Page 21 of 480)

AHS/Unity granted Aliera a license to market and sell the Unity HCSM plans. As the party with authority to grant a license to market and sell the plans, AHS/Unity is substantially likely to be able to demonstrate that it is the plan owner. Moreover, Section 1.4 of the Agreement confirms that the "Healthshare offerings" are "to be marketed and sold by Unity HealthShare, LLC." Aliera's role in the parties' relationship is delineated in Section 7(g) of the Agreement, which provides that "ALIERA will design and implement all cost sharing plans, marketing materials, operational controls and general business banking for [Unity] for its operation of Unity HealthShare, subject to access and approval by the AHS Board of Directors."

Aliera's compensation structure under the Agreement is further evidence that AHS/Unity's reading of the contract is substantially likely to be correct. Section 4 of the Agreement entitles Aliera to "Administrative Fees" on a per member per month basis. FOF at ¶45. Aliera has received millions of dollars in administrative fees. FOF at ¶ 46. Through Section 4, AHS/Unity and Aliera agreed that Aliera would be paid substantial administrative fees for administering the Unity HCSM plans. Such a provision is wholly consistent with administration, not ownership.

Moreover, AHS/Unity's reading of the contract is consistent with the nature of the parties' business relationship. The testimony reveals that only AHS/Unity, not Aliera, is a recognized HCSM. Indeed, Aliera, as a for-profit company, cannot qualify as an HCSM. *See, e.g.*, O.C.G.A. § 33-1-20 (defining an HCSM as "a faith-based, nonprofit organization that is tax exempt under the Internal Revenue Code" which meets the six specific requirements set forth in the statute).[5] FOF at ¶¶ 10-14. Thus, it makes sense that AHS/Unity, and not Aliera, would retain the right to the Unity HCSM plans and plan assets after termination of the Agreement. Further, Aliera represented to, *e.g.*, the Maryland Insurance Commissioner that it acted as an administrator for the Unity HCSM plans, nothing more. FOF

---

[5]     *See also* Fla. Stat. § 624.1265(1) (defining a healthcare sharing ministry as "[a] nonprofit religious organization" that satisfies certain requirements); Tex. Ins. Code § 1681.001 ("A faith-based, nonprofit organization that is tax-exempt under the Internal Revenue Code of 1986 qualifies for treatment as a health care sharing ministry…"); Va. Code Ann. § 38.2-6300 ("As used in this chapter, 'health care sharing ministry' means a health care cost sharing arrangement…administered by a non-profit organization that has been granted an exemption from federal income taxation pursuant to § 501(c)(3) of the Internal Revenue Code of 1986…").

OIC - 039668

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 22 of 480)

at ¶¶ 56, 64.  In light of these facts, AHS/Unity is substantially likely to succeed on the merits of its claim that under a fair reading of the Agreement AHS/Unity holds the rights to the Unity HCSM plans.

Even if the Court were to ultimately conclude that the Agreement is ambiguous and consider parol evidence to determine which entity owns the Unity HCSM plans, the Court still finds that AHS/Unity is substantially likely to succeed on the merits.  Tyler Hochstetler provided credible testimony that the parties intended that AHS/Unity, and not Aliera, would retain all rights to the Unity HCSM plans and plan assets.  Furthermore, the law governing HCSMs, referenced above, strongly supports a conclusion that AHS/Unity's reading of the Agreement is not only correct, but the only reading permitted by law.  Again, while the Court does not make that final determination at this point, there is a likelihood of success in favor of AHS/Unity on its claim that the Unity HCSM plans belong to it, not Aliera.

Finally, the Court finds that AHS/Unity is likely to succeed on the merits of its breach of fiduciary duty claim.  "[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Engelman v. Kessler*, 340 Ga. App. 239, 246, 797 S.E.2d 160, 166 (2017) (quoting *Nash v. Studdard*, 294 Ga. App. 845, 849-850 (2), 670 S.E.2d 508 (2008)).  Under Georgia law, "[a] fiduciary duty arises where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another." *Curry v. TD Ameritrade, Inc.*, No. 1:14-cv-1361, 2015 WL 11251449, at *10 (N.D. Ga. June 30, 2015) (quoting O.C.G.A. § 23-2-58).  "The showing of a relationship in fact which justifies the reposing of confidence by one party in another is all the law requires." *Cochran v. Murrah*, 235 Ga. 304, 307, 219 S.E.2d 421, 424 (1975).

Here, the Court finds, for purposes of this interlocutory injunction, that AHS/Unity is likely to succeed in establishing that Aliera owed it a fiduciary duty given the testimony set forth above demonstrating that AHS/Unity delegated the administration of virtually all aspects of the Unity HCSM plans and plan assets to Aliera. *See Tom Brown Contracting, Inc. v. Fishman*, 289 Ga. App. 601, 603, 658 S.E.2d 140, 142 (2008) (finding fiduciary duties created under Georgia law when one party holds funds in escrow for another).  AHS/Unity is also likely to succeed in establishing that Aliera breached this

OIC - 039669

OIC 7702 Hamburger Decl. HAMBURGER DECL.
EX. 13 (Page 23 of 480)

fiduciary duty by refusing to provide AHS/Unity with complete information about the Unity HCSM plans and plan assets and in light of Tyler Hochstetler's testimony that Timothy Moses informed the AHS Board of Directors that Aliera was using funds that were supposed to be allocated to Unity for whatever purpose Aliera wished. *See Wright v. Apartment Inv. & Mgmt. Co.*, 315 Ga. App. 587, 594, 726 S.E.2d 779, 787 (2012) ("When a fiduciary relationship exists, the agent may not make a profit for himself out of the relationship to the injury of the principal.").

**Irreparable Harm**

The Court also finds that Aliera's actions, if not enjoined, will result in irreparable harm to AHS/Unity. The threat of irreparable harm "is the most important [factor], given that the main purpose of an interlocutory injunction is to preserve the status quo temporarily to allow the court and the parties time to try the case in an orderly manner." *Bishop*, 288 Ga. at 605. That said, "a demonstration of irreparable injury is not an absolute prerequisite to interlocutory relief." *Parker v. Clary Lakes Recreation Ass'n, Inc.*, 272 Ga. 44, 44, 526 S.E.2d 838, 839 (2000).

Aliera's plan to transition all Unity HCSM Members to Trinity threatens Unity with irreparable harm. The evidence shows that Trinity is not affiliated with Unity. FOF at ¶ 97. The evidence further shows that Aliera intended to unilaterally transition all Unity HCSM members to Trinity effective January 1, 2019. FOF at ¶¶ 91-99. Aliera made this intention clear in its November 15, 2018 notice to Unity HCSM members (*id.*) which, notably, was sent after this litigation was initiated and when the parties' rights with respect to the Unity HCSM plans were plainly in dispute.

The Court finds that Aliera's intent to transition all of Unity's members and plan assets to an entirely different entity – unaffiliated with Unity – amounts to irreparable harm. *See TMX Fin. Holdings, Inc. v. Drummond Fin. Servs.*, LLC, 300 Ga. 835, 839 n. 9, 797 S.E.2d 842, 846 (2017) (affirming interlocutory injunction where trial court balanced the equities and found "there was 'a substantial threat' that [the movant] would 'suffer irreparable injury in the form of lost customers"). The Court finds that the irreparable harm here – caused not by any external factors but by the very conduct that breached the parties' Agreement – weighs heavily in favor of equitable relief.

23

OIC - 039670

Further, the Court finds that Aliera's conduct during the parties' relationship and in light of AHS's termination of the Agreement threatens Unity's status as an HCSM. FOF at ¶¶ 83-85. Aliera's failure to provide AHS/Unity with important information about the Unity plan assets or to return control of the Unity plan assets to AHS/Unity upon termination threatens AHS/Unity's status as a 501(c)(3) non-profit organization and therefore its ability to function as an HCSM. Moreover, Aliera's refusal to provide AHS/Unity with information about its funds has impaired AHS/Unity's ability to complete its 2017 and 2018 annual audits, which are required to maintain its status as a 501(c)(3) organization. *Id.* AHS/Unity's 501(c)(3) status is integral to its status as an ACA-approved HCSM and its ability to operate as an HCSM under numerous state laws. *Id.* And once lost, an ACA-exemption cannot be recovered because the ACA requires continuous operation as an HCSM from December 1999 to the present. 26 U.S.C. § 5000A(d)(2)(B). As such, loss of AHS/Unity's status as a 501(c)(3) would amount to irreparable harm, and Aliera's conduct – unless enjoined – threatens such harm.

Finally, the Court finds that Aliera's conduct has harmed AHS/Unity's goodwill. *See Dunkin Donuts, Inc. v. Kashi Enters., Inc.*, 119 F. Supp. 2d 1363, 1364 (N.D. Ga. 2000) (harm to goodwill "constitutes an irreparable injury"). Aliera's unilateral decision to transition all of the Unity HCSM members to Trinity harms Unity's goodwill because the members have not been provided with any information about the reason that Aliera is attempting to transition the plans to Trinity and therefore conveys the impression that Unity was somehow unable to maintain their plans. This irreparable harm is especially acute given the unique nature of HCSMs, which require members to put a great deal of trust in the organizations that hold their member contributions, and the relatively small market of HCSMs. Moreover, Aliera's retaining the Unity website – and redirecting visitors to that website automatically to Trinity – also harms Unity's goodwill by suggesting that Unity has some sort of relationship with Trinity, which is not the case.

**Public Interest**

The Court is most concerned with the plan members' rights and welfare. The Court finds that an interlocutory injunction is in the members' interest, and thus the public interest.

OIC - 039671

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 25 of 480)

Aliera has demonstrated a lack of transparency with respect to the Unity HCSM plans and funds. Aliera did not provide Unity with information about the Unity HCSM funds Aliera held and controlled — funds that members contributed with the understanding that they would be used to share in other members' healthcare expenses. After termination of the parties' Agreement, Aliera did not return control of the Unity funds to Unity as requested. Further, Aliera represented to state insurance regulators that it kept Unity funds separate from Aliera funds, but Aliera's Controller has now stated under oath that Aliera's prior representations to state regulators were not accurate. In light of the foregoing, and in consideration of all of the testimony, documentary evidence, and briefing in this case, the Court finds that Aliera's course of conduct evinces a threat of misappropriation of the plan assets. An interlocutory injunction – and appointment of a receiver, discussed more fully below – is necessary to protect the members' interests, and the public interests, during this litigation.

Moreover, the evidence shows that Timothy Moses, who exercises substantial control over Aliera, was convicted of felony securities fraud and perjury in federal court. Following his custodial sentence, the court revoked Moses's supervised release after finding that he lied to his probation officer about his financial situation. Moses did not inform AHS/Unity of any of this when proposing a relationship to AHS. Moreover, during the parties' relationship Moses wrote checks to himself out of the AHS/Unity operating account, without AHS/Unity's knowledge or authorization.

**Balance of Harms**

The Court finds that the threatened irreparable harm to AHS/Unity outweighs any harm to Aliera. As discussed more fully above, Aliera's conduct threatens irreparable harm to AHS/Unity. Importantly, the harm claimed by Aliera from the interlocutory injunction is largely self-inflicted. Had Aliera given control of the Unity HCSM plans back to Unity upon termination of the parties' Agreement – as requested by AHS/Unity – it would not have had to incur costs associated with maintaining those plans following termination. And if Aliera had not taken steps to unilaterally transition those Unity HCSM plans to Trinity – a separate and distinct entity from Unity – Aliera would not have had to incur costs of stopping that transition – a transition the Court has found is likely unlawful. Moreover, the interlocutory

25

OIC - 039672

OIC 7702 Hamburger 040920   HAMBURGER DECL.
EX. 13 (Page 26 of 480)

injunction impacts only the Unity HCSM plans.  It does not impact any of Aliera's other products, including the DPCMH products that Aliera sold.  The interlocutory injunction also does not impact Aliera's ability to market and sell the Trinity HCSM.  In consideration of all of the evidence and argument presented, the Court finds the balance of the harms favors AHS/Unity.

**Appointment of Receiver**

Under Georgia law, "[w]hen any fund or property is in litigation and the rights of either or both parties cannot otherwise be fully protected or when there is a fund or property having no one to manage it, a receiver of the same may be appointed by the judge of the superior court having jurisdiction thereof." O.C.G.A. § 9-8-1.  The Georgia Supreme Court has recognized that Superior Courts have broad power to appoint a receiver to administer disputed assets.  *Georgia Rehab. Ctr., Inc. v. Newnan Hosp.*, 283 Ga. 335, 336, 658 S.E.2d 737, 738 (2008). Appointment of a receiver is appropriate under the circumstances presented here.

The Unity HCSM and plan assets are disputed.  As discussed more fully above, AHS/Unity is likely to succeed on its claim that it holds the rights to the Unity HCSM plans and the right to possess the Unity HCSM plan assets under the parties' Agreement.  However, Aliera disputes AHS/Unity's right to the plans and plan assets; and instead argues that Aliera should have control over those Unity HCSM plans and be allowed to transition or otherwise transfer those plans to Trinity.  The parties' diametrically opposed positions with respect to the ownership of and rights to the Unity HCSM plans is a dispute over assets during litigation for which appointment of a receiver is appropriate.  *See Ga. Rebab Ctr. Inc.*, 283 Ga. at 336 (appointment of receiver appropriate where dissolution of joint venture leaves disputed assets).

The Court finds a receivership all the more appropriate here because the evidence shows that Aliera did not provide a full accounting of Unity funds when AHS/Unity made a demand for such an accounting prior to the termination of the parties' Agreement.  The Georgia Supreme Court has recognized that appointment of a receiver is appropriate where the parties cannot meaningfully account for the disputed assets during litigation.  *Id.* (receivership appropriate where "no meaningful accounting could be done" because of "conflicting, incomplete, and inconsistent information").  Aliera's lack of

26

OIC - 039673

transparency with respect to the Unity HCSM funds has prevented any accounting of those same disputed funds. Appointment of a receiver is appropriate to account for, administer, and oversee those Unity HCSM plan funds during the pendency of this litigation.

Finally, the evidence shows a risk of Aliera misappropriating those disputed assets in absence of a receiver. *Mirko Di Giacomantonio v. Romagnoli*, No. 2007CV133477, 2007 WL 7330441 (Ga. Super. Oct. 4, 2007) (receivership appropriate under circumstances showing "waste . . . mismanagement, or misappropriation of assets"). As set forth above, AHS/Unity is likely to succeed on its claim that it holds the rights to the Unity HCSM plans. Aliera has attempted, however, during the pendency of this litigation to move those same assets to an entirely different entity that is unaffiliated with Unity. FOF at ¶91-99. Aliera's attempt to move what are likely Unity assets to a different entity after the Agreement was terminated and while litigation with respect to those assets was ongoing amounts to an attempt to misappropriate those assets. Accordingly, appointment of a receiver is necessary to protect the integrity of the plan funds during the pendency of the litigation.

The Court has considered – and rejects – Aliera's argument that the appointment of a receiver is inappropriate because it allegedly permits the receiver to take over Aliera's business. The Court's Order merely permits the receiver to have oversight of the Unity HCSM plans and assets (i.e., the member funds that are properly allocated to the Unity HCSM component of member plans) in order to monitor their proper allocation, preserve them and to ensure that member claims are paid consistently with the plan documents. The Georgia Supreme Court has consistently held that the appointment of a receiver is warranted in circumstances akin to these. *See, e.g.*, *Richardson v. Roland*, 267 Ga. 34, 35, 472 S.E.2d 301, 302 (1996) (receiver appropriate where evidence presented to court showed that "the assets belonging to [movant] were in [non-movant's] control and were likely to be impaired or depleted should they remain under that control"); *Alstep, Inc. v. State Bank & Tr. Co.*, 293 Ga. 311, 745 S.E.2d 613 (2013) (same); *Ebon Found. v. Oatman*, 269 Ga. 340, 344, 498 S.E.2d 728, 732 (1998) (evidence of commingling of disputed assets with non-disputed assets necessitated interlocutory injunction and appointment of receiver); *Warner v. Warner*, 237 Ga. 462, 462, 228 S.E.2d 848, 849 (1976) ("A receiver

27

OIC - 039674

OIC 7702 Hamburger 000299    HAMBURGER DECL.
EX. 13 (Page 28 of 480)

is also appropriate…where the person who is managing the property seems inimical to its best interests"). Thus, for all of the reasons set forth above, the Court finds that the appointment of a receiver is appropriate here.

<b>CONCLUSION</b>

After full and careful consideration of the parties' briefing, exhibits attached thereto, and evidence presented at the hearing on AHS/Unity's Application for Interlocutory Injunction and for Appointment of Receiver, the Court finds that an Interlocutory Injunction and appointment of a receiver are appropriate under the facts presented here and under Georgia law.

The Court finds that there is a likelihood of success on the merits for AHS/Unity in this case, that the actions of Aliera are causing irreparable harm to Anabaptist and Unity, and that this harm outweighs any harm that may occur to Aliera as a result of this Order. The Court concludes that converting the Temporary Restraining Order that is currently in place, with some modification, to an Interlocutory Injunction is proper. Accordingly, the Court **ORDERS** that:

Aliera Healthcare Inc. ("Aliera") remains **ENJOINED** from moving, converting, or in any way unilaterally transitioning Unity Healthcare Sharing Ministry ("HCSM") members and Unity HCSM plan assets relating to all Unity HCSM members whose Unity HCSM plans existed as of August 10, 2018 and prior to that time to Trinity HealthShare, LLC.

However, insofar as Aliera asserts that, through its affiliate Trinity, it is offering an HCSM product to members/prospective members similar to AHS/Unity (now known as Kingdom Healthshare) and the Agreement does not include a non-compete or non-solicitation provision post-termination, the Court finds it would be improper to prohibit Aliera from soliciting the "legacy" Unity HCSM plan members after the termination as that would grant greater rights to AHS/Unity then contemplated under the Agreement. Thus, the Court finds either side may solicit the Unity HCSM plan members under the traditional confines of fair competition and Unity HCSM plan members are free to make their own decision as to whether to terminate or change their plan and which HCSM they wish to associate with, if any. Indeed, such is most consistent with the fundamental premise of a "health care sharing ministry" as a

OIC - 039675

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 29 of 480)

faith-based, nonprofit organization with participants who are of a similar faith and who voluntarily agree to share in each other's medical expenses. In line with the Court's findings and rulings above, Aliera is **ORDERED** to provide AHS/Unity with the names and all contact information available for all Unity HCSM members whose Unity HCSM plans existed as of August 10, 2018 and prior to that time **within twenty-four (24) hours of the entry of this order**. Aliera may not begin to market/solicit the Unity HCSM members until members' contact information has been provided to AHS/Unity. Additionally, particularly given the history of this case and the ongoing litigation, the Court **strongly cautions** the parties not to disparage each other in any such marketing/solicitation efforts or to engage in other improper conduct which may result in the Court ordering additional injunctive relief. The Court **DENIES** Aliera's request to stay the injunction ordered herein pending an appeal.

The Court **ORDERS** appointment of a receiver pursuant to O.C.G.A § 9-8-1 to oversee the legacy Unity HCSM plans and to oversee all Unity HCSM plan assets during the pendency of this litigation in accordance with the instructions set forth below. The receiver shall have complete access to the books and records of Aliera and Unity that the receiver determines, subject to the direction of the Court, are necessary to fulfill the duties set forth in this Order. The receiver's access to any confidential information shall be subject to an appropriate Protective Order that restricts the receiver's use or disclosure of the information to the receiver's duties in this action.

The receiver shall examine Aliera's and Unity's books and records as necessary to determine the total amount of funds in Aliera's possession, custody, or control corresponding to the Unity HCSM component of member plans. Aliera shall segregate those funds – *i.e.*, the Unity HCSM plan assets – to an account over which the receiver shall have access and oversight. The receiver shall have all financial access and audit rights necessary to confirm the proper allocation, as well as payment of claims and expenses.

Aliera shall continue to administer the Unity HCSM member plans as it has in accordance with the Temporary Restraining Order. While the Unity HCSM claims administration and payment of member claims shall continue through Aliera and its third-party administrator HealthScope Benefits, Inc. (or such

29

OIC - 039676

other qualified third-party administrator approved by the receiver and the Court), the receiver will have access to and oversight of the use of Unity HCSM member funds to pay for the claims administration services provided by Aliera, HealthScope, and any other entities providing approved administration or other necessary services for the Unity HCSM plans. The receiver also has review and audit rights with respect to Aliera's administration of Unity HCSM claims to ensure that Aliera is administering the members' plans and paying member claims consistently with the plan documents. If any issue arises with the manner in which Aliera is allocating funds or administering the Unity HCSM plans and claims, the receiver may bring the issue to the Court's attention as he deems appropriate. Aliera shall not make changes to its plan administration practices without prior written approval of the receiver and the Court.

The parties have each submitted the name of their preferred candidates to serve as the receiver. Aliera has proposed Marshall Glade of GlassRatner. AHS/Unity has proposed Tim Renjilian of FTI Consulting, Inc.    After careful consideration, the Court hereby **ORDERS** that **Marshall Glade of GlassRatner** is appointed as the receiver in this action.

The Court will hold a status conference on **May 17, 2019 beginning at 10:00 AM** to further address the role and compensation of the receiver.  The receiver shall be present along with counsel for the parties.  The status conference will be held in Courtroom 9J of the Fulton County Courthouse, 136 Pryor Street, 9th Floor, Atlanta, Georgia 30303.  A court reporter will not be provided.  If the parties wish for the conference or any other court proceeding to be taken down, counsel must confer and make appropriate arrangements to have a court reporter present.

Until the receiver assumes its role, Aliera is required to maintain the status quo.  The Court declines to order bond.  The Court declines to enter a declaratory judgment at this point.  The Court is most concerned with the plan members. The Court strongly cautions the parties that the members' rights need to be taken care of and handled, and this case needs to proceed in an expedited manner.

The parties are **ORDERED** to submit a Joint Case Management Order to the Court no later than ten (10) days from this Order.  In doing so, the parties shall also prioritize the pending motions. The Court does not believe that a long discovery period will be necessary, as much of the work in this case has been

OIC - 039677

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 31 of 480)

done.

Aliera is **ORDERED** to provide notice of this Order to its officers, agents, servants, employees, attorneys, and anyone acting in concert or participation with them with respect to the Unity HCSM plans, and this Order shall also be binding on such persons with respect to the Unity HCSM plans.

**IT IS SO ORDERED, this 25th day of April, 2019.**


_Alice D. Bonner_

JUDGE ALICE D. BONNER
Superior Court of Fulton County
Business Case Division
Atlanta Judicial Circuit


**Served upon registered service contacts through eFileGA**

| Attorneys for Plaintiff | Attorneys for Defendants |
|---|---|
| **Joseph W. Letzer**<br>**Greg F. Harley**<br><br>BURR & FORMAN LLP<br><br>171 17th Str. NW, Suite 1100<br>Atlanta, GA 30363<br>Tel: 404.817.3244<br>Fax: 404.815.3000<br>jletzer@burr.com<br>gharley@burr.com | **Kyle G.A. Wallace**<br>**Gavin Reinke**<br>**Andrew Brown**<br><br>ALSTON & BIRD LLP<br><br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>Tel: 404.881.7000<br>Fax: 404.81.7777<br><br>kyle.wallace@alston.com<br>gavin.reinke@alston.com<br>andrew.brown@alston.com |
| **Elizabeth B. Shirley***<br>**Jacob A. Burchfield***<br><br>BURR & FORMAN LLP<br><br>420 North 20th Street<br>Suite 3400<br>Birmingham, Alabama 35203<br>Tel: 205.251.3000<br>Fax: 205.458.5100<br>bshirley@burr.com<br>jburchfield@burr.com<br><br><br>* Admitted _pro hac vice_ | **Ronan P. Doherty**<br>**Robert L. Ashe**<br>**Kamal Ghali**<br><br>BONDURANT MIXSON & ELMORE, LLP<br>1201 West Peachtree St., NW<br>Suite 3900<br>Atlanta, Georgia 30303<br>Tel: 404.881.4100<br><br>Doherty@bmelaw.com<br>Ashe@bmelaw.com<br>Ghali@bmelaw.com |

31

OIC - 039678

**Exhibit B**

OIC - 039679
OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 33 of 480)

The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
9                        AT SEATTLE

10   GERALD JACKSON, ROSLYN JACKSON,
     DEAN MELLOM, JON PERRIN AND JULIE          NO.  2:19-cv-01281-BJR
11   PERRIN, individually and on behalf of all
     others similarly situated,
12
                                                **ORDER GRANTING PLAINTIFFS'**
13                    Plaintiffs,               **MOTION TO STRIKE ALIERA'S**
                                                **ANSWER AND ENTER DEFAULT**
14        v.                                    **JUDGMENT OR IN THE**
                                                **ALTERNATIVE TO GRANT**
15                                              **PLAINTIFFS' MOTION FOR**
     THE ALIERA COMPANIES, INC., a              **SUMMARY JUDGMENT**
16   Delaware corporation; ALIERA
     HEALTHCARE, INC., a Delaware
17   corporation; TRINITY HEALTHSHARE,
     INC., a Delaware corporation,
18
19
                      Defendants.
20

21        THIS  MATTER  came  before  the  Court  on  Plaintiffs'  Motion  for  Class

22   Certification.   The Court has considered the Plaintiffs' Motion, the Declarations of

23   Eleanor Hamburger, Jon Perrin, Dean Mellom, Roslyn Jackson, Neil F. Luria (both

24   original and supplemental), and all attached Exhibits in Support of Plaintiffs' Motion

25   attached to those declarations, the Declaration of Mailing (Dkt. No. 160) evidencing

26   service of this Court's October 26, 2021 Order (Dkt. No. 159) and Notice of Additional

     Authorities.  No response was received from Defendant Aliera.

ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE            SIRIANNI YOUTZ
ALIERA'S ANSWER AND ENTER DEFAULT JUDGMENT        SPOONEMORE HAMBURGER PLLC
ETC. – 1                                           3101 WESTERN AVENUE, SUITE 350
[Case No. 2:19-cv-01281-BJR]                       SEATTLE, WASHINGTON 98121
                                                 TEL. (206) 223-0303  FAX (206) 223-0246

OIC - 039680

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 34 of 480)

The Court has also considered the other pleadings and records on file.

Based upon the foregoing, and having found that Aliera is unrepresented, despite service of the Motion and all documents in support of the motion (original and supplemental) at Aliera's last known place of business, and on the recorded Assignee for Aliera, and despite the allowance of sufficient time for Aliera to retain counsel (Dkt. 150) and respond, the Court hereby:

1. GRANTS Plaintiffs' Motion to Strike Aliera's Answer.  The Clerk is hereby ORDERED to strike Aliera's Answer from the record.

2. GRANTS Plaintiffs' Motion for Entry of Default.

3. GRANTS Plaintiffs' Motion for Default Judgment against Aliera. Pursuant to Fed. R. Civ. P. 55(b)(2), the Court enters a default judgment against Defendant Aliera in favor of Roslyn and Gerald Jackson, Dean Mellom, Jon and Julie Perrin, and the Plaintiff Class.  Based upon the records and pleadings herein, and as described in the Court's oral ruling (incorporated herein by reference), the Court concludes that Defendant Aliera designed, marketed, and sold the Named Plaintiffs and the Plaintiff Class unauthorized and illegal health insurance.  The Court further concludes that Aliera's acts and omissions were also violations of the Washington Consumer Protection Act.  The damages suffered as a result of these illegal and fraudulent practices is as follows:

   (a) Roslyn and Gerald Jackson suffered damages in the amount of $12,082.00 in reformation damages;

   (b) Dean Mellom suffered damages in the amount of $3,442.00 in rescission damages;

   (c) Jon and Julie Perrin suffered damages in the amount of $7,107.92 in rescission damages;

ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE
ALIERA'S ANSWER AND ENTER DEFAULT JUDGMENT
ETC. – 2
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

OIC - 039681

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 35 of 480)

(d) the Plaintiff Class suffered damages totaling $20,646,077.08 (excluding the damages assessed to the named plaintiffs), reflecting the greater of either (i) recission damages or (ii) reformation damages for each member of the Class;

(e) the Plaintiffs and Plaintiff Class are also entitled to an additional $250 per class member in damages stemming from Aliera's violation of the Consumer Protection Act;

(f) Accordingly, the total damages, including CPA damages, for Roslyn and Gerald Jackson is $12,582.00; for Dean Mellom is $3,692.00; and for Jon and Julie Perrin, is $7,607.92.  The Plaintiff Class, excluding the claims of the named plaintiffs, is awarded $21,352,827.08 ($20,646,077.08 in recission/reformation damages and $706,750 in CPA damages). Judgment shall and hereby is entered in these amounts.

4. Orders that Plaintiffs' counsel may petition for attorney fees and litigation costs pursuant to RCW 19.86.090 and *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

DATED:  November 11, 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE
ALIERA'S ANSWER AND ENTER DEFAULT JUDGMENT
ETC. – 3
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

OIC – 039682

Presented by:

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

___*s/ Eleanor Hamburger*___
Richard E. Spoonemore (WSBA #21833)
Eleanor Hamburger (WSBA #26478)
Email:  rspoonemore@sylaw.com
        ehamburger@sylaw.com

MYERS & COMPANY, PLLC

___*s/ Michael David Myers*___
Michael David Myers (WSBA #22486)
Samantha Lin (WSBA #50782)
1530 Eastlake Avenue East
Seattle, WA 98102
Tel. (206) 398-1188; Fax (206) 400-1115
Email:    mmyers@myers-company.com
          slin@myers-company.com

MEHRI & SKALET, PLLC

___*s/ Jay Angoff*___
Jay Angoff, *Pro Hac Vice*
Cyrus Mehri, *Pro Hac Vice*
1250 Connecticut Avenue, NW, Suite 300
Washington, DC  20036
Tel. (202) 822-5100
Email:    jangoff@findjustice.com
          cmehri@findjustice.com

Attorneys for Plaintiffs

ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE
ALIERA'S ANSWER AND ENTER DEFAULT JUDGMENT
ETC. – 4
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

OIC 1- 039683

**Exhibit C**

OIC - 039684

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 38 of 480)

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | WESTERN DISTRICT OF WASHINGTON AT SEATTLE |
| 3 | ———————————————————————————————————— |

```
 4                              )
     GERALD JACKSON, ROSLYN      ) C19-01281-BJR
 5   JACKSON, DEAN MELLOM, JON   )
     PERRIN AND JULIE PERRIN,    ) SEATTLE, WASHINGTON
 6   individually and on behalf  )
     of all others similarly     ) November 10, 2021
 7   situated,                   )
                                 )
 8                  Plaintiffs,  ) 10:00 a.m.
                                 )
 9   v.                          )
                                 ) MOTION HEARING
10   THE ALIERA COMPANIES, INC., )
     a Delaware corporation;     )
11   ALIERA HEALTHCARE, INC., a  )
     Delaware corporation;       )
12   TRINITY HEALTHSHARE, INC., a)
     Delaware corporation,       )
13                               )
                     Defendants. )
14                               )
                                 )
15                               )
```

| | |
|---|---|
| 16 | ———————————————————————————————————— |
| 17 | VERBATIM REPORT OF PROCEEDINGS<br>BEFORE THE HONORABLE BARBARA J. ROTHSTEIN<br>UNITED STATES DISTRICT JUDGE |
| 18 | ———————————————————————————————————— |
| 19 | |
| 20 | APPEARANCES: |
| 21 | |
| 22 | For the Plaintiffs:     Richard E. Spoonemore<br>                        Eleanor Hamburger |
| 23 | Sirianni Youtz Spoonemore<br>                        Hamburger |
| 24 | 3101 Western Avenue<br>                        Suite 350 |
| 25 | Seattle, WA  98121 |

**Stenographically reported - Transcript produced with computer-aided technology**

OIC 039085

OIC 7702 Hamburger HAMBURGER DECL.
EX. 13 (Page 39 of 480)

1
                      Cyrus Mehri
                      Mehri & Skalet, PLLC
2
                      2000 K Street NW
                      Suite 325
3
                      Washington, DC  20006

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Stenographically reported - Transcript produced with computer-aided technology**

OIC - 039086

OIC 7702 Hamburger DECL. HAMBURGER DECL.
EX. 13 (Page 40 of 480)

1    MR. SPOONEMORE:  We were saying $125 for every member

2  of the class is the amount that then becomes trebled.

3    THE COURT:  And how many class members are you

4  hypothesizing?  I've seen two different figures.  So which --

5    MR. SPOONEMORE:  We believe the figure is -- well,

6  from Neil Luria and the records, there are 2,832 members.

7    THE COURT:  That's --

8    MR. SPOONEMORE:  And so if you take the $125, treble

9  it, multiply it by 2,832, you should arrive at that 708

10  figure that we came up with.

11    THE COURT:  I see how you did it now.  Okay.  Okay.

12   Well, the court is ready to enter its judgment.  And let

13  me deal with the class action first.  I am going to certify a

14  class.  I do find that the class in this case meets the

15  requirements of being a class, both in numerosity, clearly,

16  it's close to 3,000 individuals, and the commonality.  They

17  all have very, very similar claims.  The amounts may be

18  different, but any legal issues and the claims themselves are

19  essentially the same.

20   I find that plaintiff Perrin adequately represents the

21  class.  His claims are typical of the other class claims.

22  And he has shown himself a willing and competent

23  representative for the class.

24   I find that certifying this as a class makes this -- the

25  class action here superior to any other source of remedy for

1  these individuals.  The fact that close to 3,000 of them

2  would pursue individual remedy against Aliera is impractical,

3  to say the least.  So I am going to certify a class.

4      Then moving on.  I do find, whether you call it rescission

5  or reformation, I think we've already established that either

6  would be the correct way to find a remedy.  For that, the

7  court finds that defendants have, indeed, violated RCW

8  48.01.040, 030, and the regulations that have been issued

9  under that, by illegally selling health insurance, and by

10 failing to make payments, as promised, to the individuals;

11 and, in fact, siphoning off money from -- in such a way, to

12 the individuals, so that there are no funds now, essentially

13 available to repay the class members for the money that has

14 been taken from them.  Aliera has misused that money and has

15 defrauded these individuals.

16      I find that the violations of the Fair Insurance Practices

17 Act are per se violations of the Consumer Protection Act, and

18 therefore, the defendants have violated not only the

19 insurance code, but the Consumer Protection Act 1986.020.

20 And, therefore, treble damages are due to the class.

21      So turning back to the rescission or reformation remedy,

22 either of which is available to the class members, but

23 assuming, as counsel has represented to the court, assuming

24 that class members would exercise whichever remedy would give

25 them the maximum recovery for the money that they have lost

1  due to defendants' fraudulent behavior, the court will enter

2  a judgment in the amount of $20,668 -- $668,709.  And I will

3  enter the treble damages amount of $708,000.

4      I will go on to say that, given the violations of the

5  Consumer Protection Act, the class members are entitled to

6  have attorney's fees assessed against the defendants, and

7  costs.  And counsel shall petition the court for same, and

8  provide substantiation of their fees in this matter.

9      I believe I have covered everything you have raised in

10 your briefs and here before the court.  Is that correct,

11 counsel?

12         MR. SPOONEMORE:  Just to be clear.  It was garbled, I

13 think, in your oral statement, when you got to the number.  I

14 understand that number to be $20,668,709?

15         THE COURT:  That's correct.

16         MR. SPOONEMORE:  And I understand the answer is being

17 stricken as well.

18         THE COURT:  Yes, the answer should be stricken.  And

19 the court is going to enter a default -- and in addition to

20 the default judgment.

21         MR. SPOONEMORE:  Very good.  That covers, I think, my

22 list.

23         THE COURT:  I think it covers just about everything.

24     Counsel, I think you probably need a written judgment in

25 this matter.  And since I think the need to expedite this is

**Exhibit D**

OIC - 039690

OIC 7702 Hamburger 041945

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| HANNA ALBINA and AUSTIN WILLARD, individually and on behalf of others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>THE ALIERA COMPANIES, INC., TRINITY HEALTHSHARE, INC., and ONESHARE HEALTH, LLC d/b/a UNITY HEALTHSHARE, LLC,<br><br>  Defendants. | Case No.: 5:20-CV-00496-JMH<br><br><br>***ELECTRONICALLY FILED*** |

## DEFAULT JUDGMENT AGAINST
## THE ALIERA COMPANIES, INC.

** ** ** ** ** ** ** ** ** ** **

It appearing that Defendant the Aliera Companies, Inc., is in default by the failure to appear before the Court by counsel (DE 69), the Clerk having previously noted Aliera's default on the docket by order of the Court (D.E. 70), and seven or more days having elapsed since entry of the default and notice of Plaintiffs' motion for default judgment, without any appearance of Aliera by counsel, the Court having previously certified this matter as a class action pursuant to Fed. R. Civ. P. 23(2) and 23(b)(3) (D.E. 68), the Court having reviewed the motion, memoranda, and evidence submitted by Plaintiffs, the Court now finds as follows.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      The Aliera Companies, Inc. ("Aliera") entered into contracts with Plaintiffs and various Kentucky residents defined in the class herein to pay medical expenses on the determination of certain contingencies. Pursuant to KRS 304.1-030, those contracts constituted

OIC - 039691

OIC 7702 Hamburger 041946

"insurance" and are therefore subject to the Kentucky insurance code. There is an exception to application of the Kentucky insurance code afforded to certain religious organizations by KRS 304.1-120(7), but that exception does not apply to the plans sold by Aliera because, *inter alia*, Aliera is not a nonprofit religious association, Aliera did not limit the sales of its plans to participants who were members of the same denomination or religion, Aliera did not match specific participants who have financial, physical, or medical needs with participants who choose to assist with those needs, the contractual amounts paid to Aliera were not voluntary, and Aliera and Trinity, through its member guide, did assume specific risks or make specific promises to pay certain medical expenses that were not discretionary with Aliera and/or Trinity.

2.      Aliera held itself out as providing health care sharing ministry ("HCSM") products of Trinity HealthShare, Inc. ("Trinity") (no known as Sharity Ministries, Inc.), but Trinity did not qualify as an HCSM under United States law, 26 U.S.C. § 5000A(d)(2), because, *inter alia*, Trinity or its predecessors have not been in continuous existence since December 31, 1999, and Trinity did not conduct an annual audit performed by an independent certified public accounting firm at all times during its existence. According to the declaration of Neil Luria, no outside audit was performed for the year 2018 or any year thereafter.

3.      Aliera misled the class members into entering contracts for a product that was not what it purported to be and did not comply with applicable federal or state law. Because the products Aliera sold to the class members met the definition of insurance under Kentucky law, it was required to comply with the Kentucky insurance code and it failed to do so, to the damage of the class members.

4.      Each Plaintiff or class member at his or her option is entitled to rescind his or her contract with Aliera or reform his or her contract with Aliera so as to comply with applicable

OIC - 039692

OIC 7702 Hamburger 041947

insurance law, including Kentucky law and the law of the United States, which among other things, prohibits the exclusion of pre-existing conditions, prohibits waiting periods for coverage, and prohibits insurers from selectively paying claims to different insured in a different manner. Those Plaintiffs or class members who choose to rescind their contracts with Aliera are entitled to judgment in the amount of all payments made to Aliera for purchase of products sold by Trinity Healthshare, Inc. ("rescission damages").  Those Plaintiffs or class members who choose to reform their contracts with Aliera are entitled to judgment in the amount of all claims submitted to Aliera for payment by Trinity Healthshare, Inc., but not previously paid ("reformation damages").

5.      The uncontroverted declaration of Neil Luria (D.E. 64-5), the Chief Restructuring Officer of Sharity Ministries Inc. (the company formerly known as Trinity Healthshare, Inc.), is sufficient evidence of both the amount of contract payments made to Aliera for Trinity plans, and the amount of claims submitted to Aliera but unpaid for Trinity plans. Plaintiff Austin Willard made total contractual payments to Aliera and Trinity of $16,038.75. Mr. Willard submitted total medical bills to Aliera and Trinity that have not been paid of $16,255.24. On a classwide basis, the contract payments to Aliera and Trinity by all class members total $2,189,003, and the medical bills submitted to Aliera and Trinity by all class members that have not been paid total $3,112,951.

6.      Mr. Willard has elected to reform his contract and therefore is entitled to receive judgment of his reformation damages, in an amount of the total medical bills submitted by him to Aliera but unpaid.

7.      The class members have not yet had the opportunity to elect the measure of damages each will receive. Presumably, each will make the rational decision to elect to receive

OIC - 039693

OIC 7702 Hamburger 041948

the higher of the rescission damages or reformation damages available to him or her on an individual basis. Neil Luria has provided a Second Declaration, dated November 11, 2021, and filed in the record herein on November 12, 2021. Mr. Luria's Second Declaration provides sufficient evidence of the total amount of damages sustained by the class members, based on each class member's presumed election to take the higher amount of damages available to him or her. The aggregate amount of those damages, based on the presumed individual elections, is $4,696,124. The Court finds that this amount represents the total damages of the class known at this time.

### JUDGMENT

IT IS NOW THEREFORE ORDERED AND ADJUDGED AS FOLLOWS:

The Court grants default judgment in favor of Austin Willard, against The Aliera Companies, for reformation of his contract with The Aliera Companies in order to comply with applicable insurance laws, in the amount of $16,255.54.

The Court grants default judgment in favor of the class of all persons who, while a Kentucky resident, purchased or were covered by a plan from Aliera and Trinity Healthshare, Inc., that purported to be a "health care sharing ministry." The amount of the judgment is the aggregate rescission damages or reformation damages of the class, presuming each individual class member elects the higher measure of available damages, $4,696,124, less the judgment in favor of Austin Willard, individually, for a total judgment in favor of the absent class members of $4,679,868.46.

This 17th day of November, 2021.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge

OIC - 039694

OIC 7702 Hamburger 041949

**Exhibit E**

OIC - 039695

OIC 7702 Hamburger 041950

# EXHIBIT 2

OIC - 039696

OIC 7702 Hamburger 041951

**STATE OF GEORGIA**

**COUNTY OF FULTON**

Deed Book 64630 Page 525
Filed and Recorded 10/11/2021 07:31:00 PM
2021-0317337
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 1148285343

> Upon recording, please return to:
> Katie S. Goodman
> **Asset Recovery Associates Aliera, LLC**
> **3155 Roswell Road NE Suite 120 Atlanta, Georgia 30326**

### DEED OF ASSIGNMENT

ASSIGNMENT, made this *4th* day of **October, 2021** between **The Aliera Companies, Inc.** (**"Aliera"**), a Delaware corporation, **Advevo LLC** (**"Advevo"**), a Delaware limited liability company, **Ensurian Agency LLC** (**"Ensurian"**), a Delaware limited liability company, and **Tactic Edge Solutions LLC** (**"TES"**), a Delaware limited liability company, and **USA Benefits & Administrators LLC** (**"UBA"**), a New Mexico limited liability company (Aliera, Advevo, Ensurian, TES and UBA to be collectively referred to herein as the **"Assignors"**), each of which Assignors has a principal office and / or principal record address at **990 Hammond Drive, Suite 700, Atlanta, GA, 30328** and with significant investors and debt holders in Georgia, and **Asset Recovery Associates Aliera, LLC**, a Georgia limited liability company with its principal place of business at **3155 Roswell Road NE, Atlanta, Georgia, 30305** (**"Assignee"**).

WHEREAS, Aliera holds 100% of the outstanding equity interests in Advevo, Ensurian, TES and UBA; and

WHEREAS, each of the Assignors is indebted to creditors, as set forth in Exhibits A-1, A-2, A-3, A-4 and A-5 annexed hereto, is unable to pay its debts as they become due, and is desirous of providing for the payment of its debts, so far as possible, by an assignment of all of its assets for that purpose.

NOW, THEREFORE, Assignors, in consideration of Assignee's acceptance of this assignment, and for other good and valuable consideration, hereby grant, assign, convey, transfer, and set over unto Assignee, its successors and assigns, all of their assets, including, but not limited to, all corporate personal property, fixtures, goods, stock, inventory, equipment, furniture, furnishings, accounts receivable, bank deposits, cash, deposits, tax refunds, promissory notes, trade names, goodwill, contracts, leases, claims and demands belonging to Assignors, books, records, books of account, choses in action, judgments, liens, and

1

OIC - 039697

mortgages held or owned by Assignors, wherever such assets may be located (hereinafter, collectively, the "**Estate**") as such assets are, to the best knowledge and belief of Assignors, set forth on Exhibits B-1, B-2, B-3, B-4 and B-5 annexed hereto.

Assignee shall take possession of and administer the Estate in accordance with the provisions of O.C.G.A. § 18-2-40, *et seq.,* and may continue to operate each Assignor's business for a limited period of time, with reasonable dispatch, in order to liquidate and maximize the value of the assets of the Estate and convert the Estate into money, collect all claims and demands hereby assigned as may be collectible, and pay and discharge all reasonable attorneys' fees, expenses, costs, disbursements and indebtedness to lenders who have advanced funds to Assignee in connection with the execution and administration of this assignment (hereinafter, the "**Administrative Expenses**") from the proceeds of such liquidations and collections.

Assignee shall then pay and discharge in full, to the extent that funds are available in the Estate after payment of the Administrative Expenses as set forth above, all of the debts and liabilities now due from each Assignor, including interest on such debts and liabilities. If funds in the Estate are insufficient to pay all debts and liabilities in full, then proceeds shall be paid as follows according to the categories listed Exhibit A attached hereto: (i) Assignee shall first pay to creditors with valid and perfected liens on and security interests in the assets sold (the "**Secured Creditors**") (hereinafter, all such liens and security interests are referred to as "**Liens**") all proceeds of the sale of the assets to which such Liens attach in the order of priority established under applicable law; (ii) after payment in full of all creditors with Liens on the assets sold, Assignee shall pay any taxing authorities that do not have Liens on the assets sold (the "**Taxing Authorities**"); and (iii) after payment in full of the Taxing Authorities, Assignee shall pay all amounts owed to former employees of the Assignor for wages, salary and/or employee benefits ("**Employee Wage Claims**"); and (iv) after payment in full of all Employee Wage Claims, Assignee shall pay the remaining proceeds to general. unsecured creditors (including any creditors holding Liens that have deficiency claims after payment of the proceeds from the sale of assets to which such Liens attach) (the "**Unsecured Creditors**") on a pro rata basis.

OIC - 039698

OIC 7702 Hamburger 041953

In the event all debts and liabilities are paid in full, any funds in the Estate shall be returned to Assignors.

To accomplish the purposes of this assignment, Assignors hereby appoint Assignee as their true and lawful attorney, irrevocable, with full power and authority to do all acts and things that may be necessary to execute the assignment hereby created; to demand and recover from all persons all assets of the Estate; to sue for the recovery of such assets; to execute, acknowledge, and deliver all necessary deeds, instruments, and conveyances; and to appoint one or more attorneys to assist in carrying out Assignee's duties hereunder.

Each of the Assignors hereby authorize Assignee to sign the name of any Assignor to any check, draft, promissory note, or other instrument in writing that is payable to the order of said Assignor, or to sign the name of said Assignor to any instrument in writing, whenever it shall be necessary to carry out the purposes of this assignment.

At and from time to time following the date hereof, each Assignor shall, and shall cause its respective affiliates, directors, officers, personnel, independent contractors, agents, and other representatives to execute, deliver, file, and record any and all agreements, instruments, certificates, or other documents and take such other actions as may be reasonably necessary or desirable to effectuate the assignment and transfer to Assignee.

Assignee shall have all rights and powers available under Georgia law, including O.C.G.A. § 11-9-309 and O.C.G.A. § 18-2-54.

Assignee shall be authorized to pay at the closing of a sale all valid claims of creditors holding Liens against the assets sold, such creditors not constituting "preferred creditors" as contemplated by O.C.G.A. § 18-2-53.

In accordance with O,C.G.A. § 18-2-46, annexed hereto is an affidavit executed by each Assignor stating that (i) this assignment conveys all property held, claimed, or owned by such Assignor; (ii) all recitals and all estimates of totals and values herein and the list of creditors annexed hereto are true and

OIC - 039699

OIC 7702 Hamburger 041954

Deed Book 64630 Page 528

correct to the best of such Assignor's knowledge and belief; and (iii) this assignment was not made for the purpose of hindering, delaying, or defrauding creditors.

[SIGNATURES ON NEXT PAGE]

4

OIC - 039700

OIC 7702 Hamburger 041955

**THE ALIERA COMPANIES, INC.,**
a Delaware corporation

By:
Name: Shelley Steele

Signed, sealed and delivered
in the presence of:

Chelsea Beard
Notary Public
My commission expires: January 23, 2024

Unofficial Witness

**ADVEVO LLC,**
a Delaware limited liability company

By:
Name: Shelley Steele
Its: Manager

Signed, sealed and delivered
in the presence of:

Chelsea Beard
Notary Public
My commission expires: January 23, 2024

Unofficial Witness

**ENSURIAN AGENCY LLC,**
a Delaware limited liability company

By:
Name: Shelley Steele
Its: Manager

Signed, sealed and delivered
in the presence of:

Chelsea Beard
Notary Public
My commission expires: January 23, 2024

Unofficial Witness

**TACTIC EDGE SOLUTIONS LLC,**
a Delaware limited liability company

By:
Name: Shelley Steele
Its: Manager

Signed, sealed and delivered
in the presence of:

Chelsea Beard
Notary Public
My commission expires: January 23, 2024

Unofficial Witness

5

OIC - 039701

OIC 7702 Hamburger 041956

**USA BENEFITS & ADMINISTRATORS LLC,**
a New Mexico limited liability company

By: _____

Name: Shelley Steele

Its:    Manager

Signed, sealed and delivered
in the presence of:

_____
Notary Public
My commission expires: January 23, 2024

_____
Unofficial Witness

6

OIC - 039702

OIC 7702 Hamburger 041957

## Exhibit A-1 : The Aliera Companies, Inc.

### Creditors

### Secured Creditors

None

### Taxing Authorities

| Authority | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Fulton County Tax Commissioner | 141 Pryor Street SW | Atlanta | GA | 30303 | $ - |
| Georgia Department of Revenue | 1800 Century Blvd NE | Atlanta | GA | 30345 | $ - |
| Internal Revenue Service | | Ogden | UT | 84201-0002 | $ - |
| Texas Comptroller of Public Accounts | PO Box 149348 | Austin | TX | 78714-9348 | $ - |
| Total | | | | | $ - |

### Unsecured Creditors

Note: balances are as of August 31, 2021.

| Name | Address line 1 | City | State | Zip code | Amount |
|---|---|---|---|---|---|
| AAA Security Shredding, Inc | 1426 Briarcliff Drive | Woodstock | GA | 30189 | 6,240.00 |
| ADP, LLC | PO Box 842875 | Boston | MA | 02284-2875 | 13,214.90 |
| Aramark | PO Box 21971 | New York | NY | 10087-1971 | 2,075.63 |
| Bondurant Mixson & Elmore LLP | 1201 West Peachtree Street NW, Suite 3900 | Atlanta | GA | 30309 | 736,239.16 |
| Bridge Commercial Real Estate | Five Concourse Parkway Suite 500 | Atlanta | GA | 30328 | 5,380.61 |
| Burr Forman LLP | 420 North 20th Street, Suite 2400 | Birmingham | AL | 35203 | 1,518,422.06 |
| CIT | 21146 Network Place | Chicago | IL | 60673 | 31,447.16 |
| CT Corporation | PO Box 4349 | Carol Stream | IL | 60197 | 6,157.50 |
| Eagle Resource Group, Inc | 5755 Glenridge Drive | Atlanta | GA | 30328 | 9,093.00 |
| Edgewood Partners Insurance Center | P. O. Box 734005 | Chicago | IL | 60673 | 50,000.00 |
| Five9, Inc.** | 4000 Executive Parkway Suite #400 | San Ramon | CA | 94583 | 115,181.31 |
| FPG Colonnade LP | 45 Main Street Suite 800 | Brooklyn | NY | 11201 | 10,182.31 |
| GreatAmerica Financial Svcs | PO Box 660831 | Dallas | TX | 75266-0831 | 11,981.56 |
| HealthScope Benefits, Inc | 27 Coporate Hil Drive | Little Rock | AR | 72211 | 106,200.83 |
| McGuire Woods Consulting | 800 E. Canal Street | Richmond | VA | 23219-3916 | 35,000.00 |
| Nelson Taplin Goldwater Inc | 1555 Palm Beach Lakes Blvd, Suite 1510 | West Palm Beach | FL | 33401 | 217,748.81 |
| Net Planner Systems, Inc | 3145 Northwoods Parkway, Ste 800 | Norcross | GA | 30071 | 1,756.50 |
| Ogletree Deakins | PO Box 89 | Columbia | SC | 29202 | 9,697.45 |
| Quolit | P.O. Box 6539 | Beaverton | OR | 97007 | 68,940.00 |
| Relx | P.O. Box 733106 | Dallas | TX | 75373 | 7,756.00 |
| RSM US LLP | 5155 Paysphere Circle | Chicago | IL | 60674 | 5,448.13 |
| Sheppard, Mullin, Richter & Hampton | 2200 Ross Avenue Suite 2400 | Dallas | TX | 75201 | 20,786.00 |
| Shumate Mechanical | 2805 Premiere Parkway | Duluth | GA | 30097 | 924.00 |
| Uline | P.O. Box 88741 | Chicago | IL | 60680 | 376.59 |
| TIAA Commercial Finance, Inc | 1700 Lincoln Street Lower Level 3 Dept 1608 | Denver | CO | 80203 | 4,679.35 |
| Life Insurance Company of North America | PO Box 782447 | Philadelphia | PA | 19178-2447 | 984.72 |
| Krohne Tanks and Ponds, LLC | 3069 Mountain Shadow Way | Marietta | GA | 30064 | 285.00 |
| Gingold Law Firm, PLLC | 400 Harborview Drive SE. #237 | Bainbridge Island | WA | 98110-2467 | 8,947.50 |
| Duane Morris LLP | 30 South 17th Street | Philadelphia | PA | 19103-4196 | 743,819.59 |

OIC - 039703

OIC 7702 Hamburger 041958

| | | | | | |
|---|---|---|---|---|---|
| ROC III Fairlead Embassy Row Owner, LLC | Five Concourse Pkwy, Suite 500 | Atlanta | GA | 30328 | 314,971.07 |
| The Advocacy Group at Cardenas Ptr, LLC | 204 South Monroe Street | Tallahassee | FL | 32301 | 50,000.00 |
| Schreimann, Rackers & Francka, LLC | 931 Wildwood Drive, Suite 201 | Jefferson City | MO | 65109 | 1,457.00 |
| ReadyRefresh by Nestle | P.O. Box 856192 | Louisville | KY | 40285-6192 | 10.76 |
| POP Property Owner, LLC | 5901-C Peachtree Dunwoody Road, Ste 155 | Atlanta | GA | 30328 | 5,839.59 |
| Steptoe & Johnson LLP | 1330 Connecticut Avenue, NW | Washington | DC | 20036 | 111,540.94 |
| Bracewell LLP | P.O. Box 207486 | Dallas | TX | 75320-7486 | 9,130.00 |
| Lewis Brisbois Bisgaard & Smith LLP | 633 West 5th Street Suite 4000 | Los Angeles | CA | 90071 | 22,220.00 |
| Cherry Bekaert LLP | P.O. Box 25549 | Richmond | VA | 23260-5500 | 14,000.00 |
| Rath, Young And Pignatelli PC | PO Box 1500 | Concord | NH | 03302-1500 | 223,335.72 |
| Allied Benefit Systems, Inc. | 200 W Adams St | Chicago | IL | 60606 | 273.80 |
| Steve Vermaak | 2477 North Forest Drive | Marietta | GA | 30062 | 378,271.51 |
| James Eddie Black | 811 Holley Drive | Albany | GA | 31705 | 161,395.84 |
| Ray Gutierez | 3905 Briones Street | Austin | TX | 78723 | 161,395.84 |
| Maria Guzman Escobio | 1315 Dresden Dr. West | Charlotte | NC | 28205 | 25,218.10 |
| Wall, McLean & Gallagher, PLLC | 40 W. Lawrence, Ste B Helena MT 59601) PO Box 1713 | Helena | MT | 59624 | 22,348.99 |
| Cigna Dental & Vision | PO BOX 644546 | PITTSBURGH | PA | 15264-4546 | 474.48 |
| David P White | 1706 Swann Street Northwest | Washington | DC | 20009 | 1,462.50 |
| Meadows, Collier, Reed, Cousins, Crouch & Ungerman, L.L.P. | 901 MAIN STREET, Suite 3700 | DALLAS | TEXAS | 75202 | 53,157.93 |
| Kutak Rock LLP | 1650 Farnam Street, PO Box 30057 | Omaha | NE | 68103-1157 | 11,185.00 |
| Nyemaster Goode, PC | 700 Walnut Street, Suite 1600 | Des Moines | IA | 50309 | 70,896.37 |
| Thomson Reuters - West | Payment Center, PO Box 6292 | Carol Stream | IL | 60197-6292 | 5,521.56 |
| GBT US, LLC | 14635 N. Kierland Blvd. 13-01-72 | Scottsdale | AZ | 85254 | 527.71 |
| Jackson, Murdo, Grant PC | 203 North Ewing Street | Helena | MT | 59601 | 2,534.50 |
| Wintrow & Associates, P.C. | P.O.BOX 6398 | Marietta | GA | 30065 | 4,300.00 |
| Eckert Seamans Cherin & Mellott, LLC | PO Box 5405 | Princeton | NJ | 08543 | 18,115.16 |
| American Arbitration Association | 120 Broadway, Floor 21 Attn: Corp Finance | New York | NY | 10271 | 5,000.00 |
| IPFS Corporation | 1122 LADY ST # 1080 | COLUMBIA | SC | 29201 | 41,972.20 |
| Dickman Davenport, Inc. | 3100 S. Trust Tower 420 N 20th St Ste 3400 | Birmingham | AL | 35203 | 553.22 |
| The Royak Group, Inc. | 6455 East Johns Crossing, Suite 265 | Johns Creek | GA | 30097 | 17,920.00 |
| Settlement Creditor | Information under seal, but will be notified | | | | 3,750,000.00 |
| BMO | 111 W. Monroe Street | Chicago | IL | 60603 | 6,074,000.00 |
| **Total** | | | | | **$ 15,308,095.48** |

Notes:

The total amounts due to lessors may be higher than reflected in the accounts payable of the Assignor.

The total amount of PPP loan received from BMO are $6,074,700, which is under review for forgiveness by the SBA.

Amounts due to employees as of 8/31/21 were paid prior to the filing of the Assignment.

## Litigation

Counsel for Plaintiffs in known litigation are listed below for notice purposes.

| Attorney | Firm | Address | City, State, ZIP |
|---|---|---|---|
| John M. Morrison | Morrison, Sherwood, Wilson & Deola, PLLP | 401 N. Last Chance Gulch | Helena, MT 59624 |
| Anne E. Sherwood | Morrison, Sherwood, Wilson & Deola, PLLP | 401 N. Last Chance Gulch | Helena, MT 59624 |
| Patrick J. Bernal | Michael Best & Friedrich LLP | 8300 Arista Place , Suite 200 | Broomfield, CO 800020 |
| Victoria E. Lovato | Michael Best & Friedrich LLP | 8300 Arista Place , Suite 200 | Broomfield, CO 800020 |
| Eleanor Hamburger | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Richard E. Spoonemore | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Michael David Myers | Myers & Company PLLC | 1530 Eastlake Ave. E. | Seattle, WA 98102 |
| Eleanor Hamburger | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Richard E. Spoonemore | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Michael David Myers | Myers & Company PLLC | 1530 Eastlake Ave. E. | Seattle, WA 98102 |
| Nina R. Wasow | Feinberg, Jackson, Worthman and Wasow LLP | 2030 Addison St., Suite 500 | Berkeley, CA 94704 |
| Jay B. Angoff | Mehri & Skalet PLLC | 1250 Connecticut Ave. , Suite 300 | Washington, DC 20036 |
| Chaim E. Bronstein | Mehri & Skalet PLLC | 1250 Connecticut Ave. , Suite 300 | Washington, DC 20036 |
| Cyrus Mehri | Mehri & Skalet PLLC | 1250 Connecticut Ave. , Suite 300 | Washington, DC 20036 |
| Eleanor Hamburger | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Ann E. Merryfield | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Richard E. Spoonemore | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Michael David Myers | Myers & Company PLLC | 1530 Eastlake Ave. E. | Seattle, WA 98102 |
| Jennifer Kathleen Coalson | Parks Chesin & Walbert, P.C. | 75 Fourteenth Street, N.E. | Atlanta, GA 30309 |
| David F. Walbert | Parks Chesin & Walbert, P.C. | 75 Fourteenth Street, N.E. | Atlanta, GA 30309 |
| Stephen J. Fearon, Jr | Squitieri & Fearon, LLP | 424 Madison Avenue, 3rd Floor | New York, NY 10017 |
| Paul V. Sweeny | Squitieri & Fearon, LLP | 424 Madison Avenue, 3rd Floor | New York, NY 10017 |
| Jay B. Angoff | Mehri & Skalet PLLC | 1250 Connecticut Ave. , Suite 300 | Washington, DC 20036 |
| Cyrus Mehri | Mehri & Skalet PLLC | 1250 Connecticut Ave. , Suite 300 | Washington, DC 20036 |
| Eleanor Hamburger | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Richard E. Spoonemore | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Samantha Lin | Myers & Company PLLC | 1530 Eastlake Ave. E. | Seattle, WA 98102 |
| Michael David Myers | Myers & Company PLLC | 1530 Eastlake Ave. E. | Seattle, WA 98102 |
| William A. Anderson | Handley Farah & Anderson, PLLC | 4730 Table Mesa Drive , Suite G-200 | Boulder, CO 80305 |
| Rebecca P. Chang | Handley Farah & Anderson, PLLC | 33 Irving Place | New York, NY 10003 |
| George F. Farah | Handley Farah & Anderson, PLLC | 81 Prospect Street | Brooklyn, NY 11201 |
| William R. Garmer | Garmer & Prather, PLLC | 141 N. Broadway | Lexington, KY 40507 |
| Jerome Park Prather | Garmer & Prather, PLLC | 141 N. Broadway | Lexington, KY 40507 |
| Eleanor Hamburger | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Richard E. Spoonemore | Sirianni Youtz Spoonemore Hamburger PLLC | 3101 Western Avenue, Suite 350 | Seattle, WA 98121 |
| Stephen Pearson | Handley Farah & Anderson, PLLC | 200 Massachusetts Avenue, NW, 7th Floor | Washington, DC 20001 |
| David Todd Varellas | Varellas & Varellas | 249 W. Short Street, Suite 201 | Lexington, KY 40507 |
| James John Varellas, III | Varellas & Varellas | 249 W. Short Street, Suite 201 | Lexington, KY 40507 |

OIC - 039705

OIC 7702 Hamburger 041960

**Regulatory Matters**

For noticing purposes.

| Agency | Contact | Address 1 | Address 2 | City, State, ZIP |
|---|---|---|---|---|
| California Attorney General | Ari Dybnis | California Department of Justice | 300 South Spring Street, Suite 1702 | Los Angeles, CA 90013 |
| California Dept of Insurance | Teresa R. Campbell | California Department of Insurance | 1901 Harrison Street 4th Floor | Oakland, CA 94612 |
| Kansas Attorney General | Lynette Goodman | Office of the Attorney General | 120 S.W. 10th Avenue, Suite 430, | Topeka, Kansas, 66612-1597 |
| Minnesota Dept. of Commerce | Cam Jenkins | Minnesota Department of Commerce | 85 7th Place East, Suite 280 | Saint Paul, MN 55101 |
| Missouri Insurance Market Regulation Division | Rob Tilman | Insurance Market Regulation Division | 301 West High Street, Room 530 | Jefferson City, MO 65101 |
| NY Depr of Financial Services | Alison Passer | Consumer Protection and Financial Enforcement Div. | One State Street, | New York, NY 10004 |
| Pennsylvania Insurance Department | Craig D. Canfield | Bureau of Licensing and Enforcement | 1227 Strawberry Square | Harrisburg, PA 17120 |
| Texas Attorney General | Patrick Sweeten | Office of the Attorney General | P.O. Box 12548 (MC-009) | Austin, Texas 78711-2548 |
| WA. State Office of the Insurance Commissioner | Darryl E. Colman | | PO Box 40255 | Olympia, WA 98504-0255 |
| MI. Department of Insurance & Financial Services | Dustin Simon | Office of Licensing and Market Regulation | 530 W. Allegan St #7 | Lansing, MI 48933 |

The Assignor entered into a settlement agreement with the Washington State Office of the Insurance Commissioner in September, 2021 in the amount of $100,000.

The Assignor entered into a consent order before the Insurance Commissioner of the Commonwealth of Pennsylvania on April 27, 2021 with restitution of $79,785.49.

**TOTAL ESTIMATED CREDITOR LIABILITIES AS OF August 31, 2021:   $15,308,095.48**

### Exhibit A-2 :  Advevo LLC

#### Creditors

#### Secured Creditors

None

#### Taxing Authorities

| Authority | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Fulton County Tax Commissioner | 141 Pryor Street SW | Atlanta | GA | 30303 | $          - |
| Georgia Department of Revenue | 1800 Century Blvd NE | Atlanta | GA | 30345 | $          - |
| Internal Revenue Service | | Ogden | UT | 84201-0002 | $          - |
| Total | | | | | $          - |

#### Unsecured Creditors

| Name | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Bridge Commercial Real Estate | Five Concourse Parkway Suite 500 | Atlanta | GA | 30326 | 620.31 |
| Business Wire | Business Wire, Inc, Dept 34182 | San Francisco | CA | 94139 | 2022 |
| Canon Financial Services, Inc. | 14904 Collections Center Drive | Chicago | IL | 60693 | 103207.44 |
| HB Solutions Inc. | 3600 Schooner Ridge | Alpharetta | GA | 30005 | 1153.86 |
| Life Insurance Company of North America | PO Box 782447 | Philadelphia | PA | 19178-2447 | 40.86 |
| Canon Solutions America, Inc. | 15004 Collections Center Drive | Chicago | IL | 60693-0150 | 2633.03 |
| Quadient Finance USA, Inc. (NeoFunds Inc.) | PO Box 6813 | Carol Stream | IL | 60197-6813 | 120.93 |
| Allied Benefit Systems, Inc. | 200 W Adams St | Chicago | IL | 60606 | 852.06 |
| Cigna Dental & Vision | PO BOX 644546 | PITTSBURGH | PA | 15264-4546 | 79.19 |
| Quadient INC | Dept 3689, PO Box 123689 | Dallas | TX | 75312-3689 | 6953.68 |
| Sippapu Inc. | 3219 E Camelback Road, Suite 552 | Phoenix | AZ | 85018 | 2000 |
| El Toro.com LLC | 552 East Market | Louisville | KY | 40202 | 27810.41 |
| Total | | | | $ | 147,493.77 |

**TOTAL ESTIMATED CREDITOR LIABILITIES AS OF August 31, 2021: $147,493.77**

### Exhibit A-3 : Ensurian Agency LLC

#### Creditors

#### Secured Creditors

None

#### Taxing Authorities

| Authority | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Fulton County Tax Commissioner | 141 Pryor Street SW | Atlanta | GA | 30303 | $ - |
| Georgia Department of Revenue | 1800 Century Blvd NE | Atlanta | GA | 30345 | $ - |
| Internal Revenue Service | | Ogden | UT | 84201-0002 | $ - |
| Total | | | | | $ - |

#### Unsecured Creditors

| Name | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Agent Cubed | 1100 NW Compton Drive | Hillsboro | OR | 97006 | 31,164.51 |
| Bridge Commercial Real Estate | Five Concourse Parkway Suite 500 | Atlanta | GA | 30328 | 89.27 |
| Assurance IQ, Inc. | 920 5th Ave., Ste 3600 | Seattle | WA | 98104 | 264,057.00 |
| Infutor Data Solutions, LLC | 18W140 Butterfield Road, Ste 1020 | Oakbrook Terrace | IL | 60181 | 6,200.00 |
| Life Insurance Company of North America | PO Box 782447 | Philadelphia | PA | 19178-2447 | 727.56 |
| NextGen Leads, LLC | 701 B Street, Suite 1255 | San Diego | CA | 92101 | 4,225.00 |
| Vertafore, Inc | 24431 Network Place | Chicago | IL | 60673-1244 | 174.63 |
| ActiveProspect, Inc. | P.O. Box 151136 | Austin | TX | 78751-1139 | 20,005.40 |
| Allied Benefit Systems, Inc. | 200 W Adams St | Chicago | IL | 60606 | 1,192.03 |
| Cigna Dental & Vision | PO BOX 644546 | PITTSBURGH | PA | 15264-4546 | 648.09 |
| W4 Holding Company LLC | 11833 Mississippi Ave, 2nd Floor | Los Angeles | CA | 90025 | 345.68 |
| Spirit FM | 717 South Dale Mabry Hwy | Tampa | FL | 33609 | 1,100.00 |
| Digital Media Solutions DBA Forte Media Solutions,LLC | 4800 140th Avenue North Ste 101 | Clearwater | FL | 33762 | 7,175.00 |
| Total | | | | | $ 337,104.17 |

#### Regulatory Matters

| Agency | Contact | Address 1 | Address 2 | City, State, ZIP |
|---|---|---|---|---|
| California Dept of Insurance | Teresa R. Campbell | California Department of Insurance | 1901 Harrison Street  4th Floor | Oakland, CA  94612 |

**TOTAL ESTIMATED CREDITOR LIABILITIES AS OF August 31, 2021: $337,104.17**

OIC - 039708

OIC 7702 Hamburger 041963

**Exhibit A-4 :  Tactic Edge Solutions LLC**

**Creditors**

**Secured Creditors**

None

**Taxing Authorities**

| Authority | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Fulton County Tax Commissioner | 141 Pryor Street SW | Atlanta | GA | 30303 | $          - |
| Georgia Department of Revenue | 1800 Century Blvd NE | Atlanta | GA | 30345 | $          - |
| Internal Revenue Service | | Ogden | UT | 84201-0002 | $          - |
| Total | | | | | $          - |

**Unsecured Creditors**

| Name | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Administration123 | 668 N Coast Hwy #167 | Laguna Beach | CA | 92651 | 129,698.79 |
| AppRiver, LLC | 1101 Gulf Breeze Parkway Suite 200 | Gulf Breeze | FL | 32561 | 4,441.83 |
| Bigleaf networks | DEPT LA 24973 | Pasadena | CA | 91185-4973 | 3,245.00 |
| CDI Managed Services | 696 Route 46 West | Teterboro | NJ | 07608 | 4,519.71 |
| Dell Financial Services | Payment Processing Center, PO Box 6547 | Carol Stream | IL | 60197-6547 | 72,194.30 |
| Emids | 318 Seaboard Ln, Suite 110 | Franklin | TN | 37067 | 517,250.50 |
| HealthEdge Software | 30 Corporate Drive | Burlington | MA | 01803 | 90,700.00 |
| Life Insurance Company of North America | PO Box 782447 | Philadelphia | PA | 19178-2447 | 1,306.77 |
| CDW Direct | P.O. Box 75723 | Chicago | IL | 60675-5723 | 3,282.90 |
| OutSystems Inc | 5901 Peachtree Dunwoody Road NE Building C 495 | Atlanta | GA | 30328 | 84,000.00 |
| Allied Benefit Systems, Inc. | 200 W Adams St | Chicago | IL | 60606 | 1,690.25 |
| Amazon Web Services, Inc | PO BOX 84023 | Seattle | WA | 98124-8423 | 123,894.03 |
| Cigna Dental & Vision | PO BOX 644546 | PITTSBURGH | PA | 15264-4546 | 964.59 |
| Quest Software Inc | 4 Polaris Way | Aliso Viejo | CA | 92656 | 4,726.58 |
| Netlink | 999 Tech Row, Suite 100 | Madison Heights | MI | 48071 | 105,600.00 |
| Total | | | | | $ 1,147,515.25 |

**TOTAL ESTIMATED CREDITOR LIABILITIES AS OF August 31, 2021: $1,147,515.25**

OIC - 039709

OIC 7702 Hamburger 041964

**Exhibit A-5 :  USA Benefits & Administrators LLC**

**Creditors**

**Secured Creditors**

None

**Taxing Authorities**

| Authority | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Fulton County Tax Commissioner | 141 Pryor Street SW | Atlanta | GA | 30303 | $     - |
| Georgia Department of Revenue | 1800 Century Blvd NE | Atlanta | GA | 30345 | $     - |
| Internal Revenue Service | | Ogden | UT | 84201-0002 | $     - |
| **Total** | | | | | $     - |

**Unsecured Creditors**

| Name | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|
| Emids | 318 Seaboard Ln, Suite 110 | Franklin | TN | 37067 | 250,842.00 |
| FH Group Corp | 23291 Network Place | Chicago | IL | 60673 | 13,617.00 |
| HealthScope Benefits, Inc | 27 Coporate Hll Drive | Little Rock | AR | 72211 | 82,616.86 |
| Jack Henry & Associates Inc | 663 W Hwy 60, Treasury Services | Monett | MO | 65708 | 45.00 |
| MultiPlan, Inc. | P.O. Box 29380 | New York | NY | 10087 | 96,727.75 |
| Life Insurance Company of North America | PO Box 782447 | Philadelphia | PA | 19178-2447 | 37.58 |
| WAYSTAR | ZIRMED INC, 1311 Solutions Center | CHICAGO | IL | 60677-1311 | 3,326.58 |
| Zelis | 744 Office Parkway | St Louis | MO | 63141 | 12,921.36 |
| Medical Evaluation Specialists, Inc | 100 Morse Street | Norwood | MA | 02062 | 21,615.00 |
| MedValue Offshore Solutions Inc | 1415 W. 22nd Street | Oak Brook | IL | 60523 | 11,140.00 |
| Dentemax LLC | 75 Remittance Drive Suite 1195 | Chicago | IL | 60675-1195 | 6,925.50 |
| **Total** | | | | | 499,814.63 |

**TOTAL ESTIMATED CREDITOR LIABILITIES AS OF August 31, 2021: $499,814.63**

OIC - 039710

OIC 7702 Hamburger 041965

Deed Book 64630 Page 539

**Exhibit B-1 : The Aliera Companies, Inc.**

Assets (as of 8/31/21)

**Cash**

None

**Accounts Receivable**

None

**Inventory**

None.

**Property, Plant and Equipment**

| Description | Estimated Recovery |
|---|---|
| Computers and Hardware | $    10,000.00 |
| Software | $            - |
| Furniture and Fixtures | $    10,000.00 |
| Equipment | $     2,000.00 |
| Total | $    22,000.00 |

**Intellectual Property**

The Assignor has miscellaneous trademarks with little or no value.

The Assignor has proprietary software with an unknown value.

**Other Personal Property**

| Description | Estimated Amount |
|---|---|
| Equity Interests in Subsidiaries | $   735,000.00 |
| Shareholder Loans | $ 6,637,308.00 |
| NOL Tax Benefit 2016 / 2017 | $ 1,671,435.00 |
| Miscellaneous Books and Records | $            - |
| Total | $ 9,043,743.00 |

In addition, the Assignor has an NOL tax benefit for 2018 that is under review.  The amount has not yet been finalized.

**Real Property**

None owned.

OIC - 039711

**Exhibit B-2: Advevo LLC**

**Assets (as of 8/31/21)**

**Cash**

Amount of cash held in bank accounts:        $4,668.00

**Accounts Receivable**

| Name | Address | Amount |
|------|---------|--------|
| Spring Leaf Marketing, LLC | | $    9,339 |
| Sharity Ministries * | 821 Atlanta Street, Suite 124 Roswell GA 30075 | $  375,149 |
| Total | | $  384,488 |

\* Accounts Receivable.  Sharity Ministries is in bankruptcy.

**Inventory**

None.

**Property, Plant and Equipment**

None

**Intellectual Property**

None

**Other Personal Property**

| Description | Estimated Amount |
|-------------|------------------|
| Breach of contract against Sharity Ministries | UNKNOWN |
| Miscellaneous Books and Records | $          - |
| Total | UNKNOWN |

**Real Property**

None owned.

OIC - 039712

**Exhibit B-3 : Ensurian Agency LLC**

**Assets (as of 8/31/21)**

**Cash**

Amount of cash held in bank accounts:       $6,814.00

**Accounts Receivable**

| Name | Address | Amount |
|------|---------|--------|
| Complete Health Options | | $      8,300 |
| Quantum Digital Media | 740 E. Main St., Suite 620 Stamford CT 06902 | $      4,005 |
| Sharity Ministries * | 821 Atlanta Street, Suite 124 Roswell GA 30075 | $   2,831,406 |
| Sharity Ministries ** | 821 Atlanta Street, Suite 124 Roswell GA 30075 | $      88,347 |
| Total | | $   2,932,058 |

\* Accounts Receivable.  Sharity Ministries is in bankruptcy.
\*\* Due From.  Sharity Ministries is in bankruptcy.

**Inventory**

None.

**Property, Plant and Equipment**

None

**Intellectual Property**

None

**Other Personal Property**

| Description | Estimated Amount |
|-------------|------------------|
| Miscellaneous Books and Records | $           - |
| Total | $           - |

**Real Property**

None owned.

OIC - 039713

OIC 7702 Hamburger 041968

### Exhibit B-4 : Tactic Edge Solutions LLC

#### Assets (as of 8/31/21)

#### Cash

Amount of cash held in bank accounts:        $9,668.00

#### Accounts Receivable

| Name | Address | Amount | |
|------|---------|--------|---|
| Humetics, LLC | PO Box 250168 Atlanta GA 30325 | $ | 8,008 |
| Sylexible, LLC | 8175 S. Virginia St. Ste 850-350 Las Vegas NV 89511 | $ | 42,453 |
| Sharity Ministries * | 821 Atlanta Street, Suite 124 Roswell GA 30075 | $ | 1,926,177 |
| Total | | $ | 1,976,638 |

* Accounts Receivable.  Sharity Ministries is in bankruptcy.

#### Inventory

None

#### Property, Plant and Equipment

| Description | Estimated Amount |
|-------------|------------------|
| | |
| Software | UNKNOWN |
| Miscellaneous Books and Records | $          - |
| Total | UNKOWN |

#### Intellectual Property

None

#### Other Personal Property

| Description | Estimated Amount |
|-------------|------------------|
| | |
| Payroll Loan for Former Employee | $          - |
| Miscellaneous Books and Records | $          - |
| Total | $          - |

#### Real Property

None owned.

OIC - 039714

**Exhibit B-5 : USA Benefits & Administrators LLC**

Assets (as of 8/31/21)

**Cash**

Amount of cash held in bank accounts:        $11,713.00

**Accounts Receivable**

| Name | Address | Amount |
|------|---------|--------|
| Sharity Ministries * | 821 Atlanta Street, Suite 124 Roswell GA 30075 | $   1,270,344 |
| Sharity Ministries ** | 821 Atlanta Street, Suite 124 Roswell GA 30075 | $      44,174 |
| Total | | $   1,314,518 |

\* Accounts Receivable.  Sharity Ministries is in bankruptcy.
\*\* Due From.  Sharity Ministries is in bankruptcy.

**Inventory**

None

**Property, Plant and Equipment**

None

**Intellectual Property**

None

**Other Personal Property**

| Description | Estimated Amount |
|-------------|------------------|
| Third Party Administrator License with Value TBD | UNKNOWN |
| Miscellaneous Books and Records | $            - |
| Total | UNKOWN |

**Real Property**

None owned

OIC - 039715

OIC 7702 Hamburger 041970

**STATE OF GEORGIA**
**COUNTY OF FULTON**

### AFFIDAVIT OF ASSIGNOR

### THE ALIERA COMPANIES INC.

And now comes The Aliera Companies, Inc., by and through Shelley Steele, its CEO, Assignor named in the foregoing Deed of Assignment, and on oath says that (i) the said assignment conveys all property held, claimed or owned by Assignor at the time of making the assignment; (ii) all recitals and all estimates of totals and values therein and all listed creditors are true to the best of Assignor's knowledge and belief; (iii) the debts set out as due to the secured and general unsecured creditors are bona fide, just, true, and unpaid; and (iv) this assignment is not made for the purpose of hindering, delaying, or defrauding creditors.

In witness whereof Assignor has hereunto set its hand hereto this _____ day of October, 2021.

THE ALIERA COMPANIES INC.,
a Delaware corporation

By: _____
Name:   Shelley Steele
Its:    CEO

Signed, sealed and delivered
in the presence of:

_Chelsea Beard_
Notary Public
My commission expires: _January 23, 2024_

_____
Unofficial Witness

OIC - 039716

**STATE OF GEORGIA**
**COUNTY OF FULTON**

### AFFIDAVIT OF ASSIGNOR

### ADVEVO LLC

And now comes **Advevo LLC**, by and through Shelley Steele, its Manager, Assignor named in the foregoing Deed of Assignment, and on oath says that (i) the said assignment conveys all property held, claimed or owned by Assignor at the time of making the assignment; (ii) all recitals and all estimates of totals and values therein and all listed creditors are true to the best of Assignor's knowledge and belief; (iii) the debts set out as due to the secured and general unsecured creditors are bona fide, just, true, and unpaid; and (iv) this assignment is not made for the purpose of hindering, delaying, or defrauding creditors.

In witness whereof Assignor has hereunto set its hand hereto this 4th day of October, 2021.

ADVEVO LLC,
a Delaware limited liability company

By: _____
Name:   Shelley Steele
Its:    Manager

Signed, sealed and delivered
in the presence of:

_____
Notary Public
My commission expires: January 23, 2024

_____
Unofficial Witness

CHELSEA BEARD
NOTARY
EXPIRES
GEORGIA
January 23, 2024
PUBLIC
PAULDING COUNTY

OIC - 039717

OIC 7702 Hamburger 041972

STATE OF GEORGIA
COUNTY OF FULTON

### AFFIDAVIT OF ASSIGNOR

### ENSURIAN AGENCY LLC

And now comes **Ensurian Agency LLC**, by and through Shelley Steele, its Manager, Assignor named in the foregoing Deed of Assignment, and on oath says that (i) the said assignment conveys all property held, claimed or owned by Assignor at the time of making the assignment; (ii) all recitals and all estimates of totals and values therein and all listed creditors are true to the best of Assignor's knowledge and belief; (iii) the debts set out as due to the secured and general unsecured creditors are bona fide, just, true, and unpaid; and (iv) this assignment is not made for the purpose of hindering, delaying, or defrauding creditors.

In witness whereof Assignor has hereunto set its hand hereto this 7th day of October, 2021.

ENSURIAN AGENCY LLC,
a Delaware limited liability company

By: _____
Name: Shelley Steele
Its:    Manager

Signed, sealed and delivered
in the presence of:

_Chelsea Beard_____
Notary Public
My commission expires: _January 23, 2024_

_____
Unofficial Witness

**STATE OF GEORGIA**
**COUNTY OF FULTON**

### AFFIDAVIT OF ASSIGNOR

### TACTIC EDGE SOLUTIONS LLC

And now comes **Tactic Edge Solutions LLC**, by and through Shelley Steele, its Manager, Assignor named in the foregoing Deed of Assignment, and on oath says that (i) the said assignment conveys all property held, claimed or owned by Assignor at the time of making the assignment; (ii) all recitals and all estimates of totals and values therein and all listed creditors are true to the best of Assignor's knowledge and belief; (iii) the debts set out as due to the secured and general unsecured creditors are bona fide, just, true, and unpaid; and (iv) this assignment is not made for the purpose of hindering, delaying, or defrauding creditors.

In witness whereof Assignor has hereunto set its hand hereto this 4th day of October, 2021.

TACTIC EDGE SOLUTIONS LLC,
a Delaware limited liability company

By: _____
Name: Shelley Steele
Its:    Manager

Signed, sealed and delivered
in the presence of:

_Chelsea Beard_
Notary Public
My commission expires: January 23, 2024

_____
Unofficial Witness

STATE OF GEORGIA
COUNTY OF FULTON

### AFFIDAVIT OF ASSIGNOR

### USA BENEFITS & ADMINISTRATORS LLC

And now comes **USA Benefits & Administrators LLC,** by and through Shelley Steele, its Manager, Assignor named in the foregoing Deed of Assignment, and on oath says that (i) the said assignment conveys all property held, claimed or owned by Assignor at the time of making the assignment; (ii) all recitals and all estimates of totals and values therein and all listed creditors are true to the best of Assignor's knowledge and belief; (iii) the debts set out as due to the secured and general unsecured creditors are bona fide, just, true, and unpaid; and (iv) this assignment is not made for the purpose of hindering, delaying, or defrauding creditors.

In witness whereof Assignor has hereunto set its hand hereto this 4th day of October, 2021.

USA BENEFITS & ADMINISTRATORS LLC,
a New Mexico limited liability company

By: _____
Name:   Shelley Steele
Its:   Manager

Signed, sealed and delivered
in the presence of:

_____
Notary Public
My commission expires: January 23, 2024

_____
Unofficial Witness

CHELSEA BEARD
NOTARY
GEORGIA
EXPIRES
January 23, 2024
PUBLIC
PAULDING COUNTY

OIC - 039720

Deed Book 64630 Page 549
CATHELENE ROBINSON
Clerk of Superior Court

STATE OF GEORGIA
COUNTY OF FULTON

### AFFIDAVIT AND ACCEPTANCE OF ASSIGNEE

And now comes Asset Recovery Associates Aliera, LLC, by and through Katie S. Goodman, its **Member**, Assignee named in the foregoing Deed of Assignment, and on oath says that (i) Assignee has examined the books and other papers of each of the Assignors; (ii) each of the Assignors assisted in the preparation of the list of such Assignor's assets as set forth in Exhibits B-1, B-2, B-3, B-4 and B-5 to said Deed of Assignment as far as possible; (iii) to the best of Assignee's knowledge, information and belief each such list is correct; and (iv) this assignment is not made for the purpose of hindering, delaying, or defrauding creditors.

Asset Recovery Associates Aliera, LLC, Assignee, as Assignee, hereby accepts the trust created by the foregoing Deed of Assignment and agrees that it will faithfully and without delay perform the conditions thereof and satisfy the duties imposed therein.

In witness whereof Assignee has hereunto set its hand hereto this 4 day of October, 2021.

ASSET RECOVERY ASSOCIATES ALIERA,
LLC, a Georgia limited liability company

By: _____
Name: Katie S. Goodman
Its:   Manager

Signed, sealed and delivered
in the presence of:

_____
Notary Public

My commission expires: 5 13 25

_____
Unofficial Witness

OIC - 039721

OIC 7702 Hamburger 041976

**Exhibit F**

OIC - 039722

OIC 7702 Hamburger 041977



Home        What We Do        Who We Are        Why Us        Case Studies        Contact

# ASSIGNMENT FOR THE BENEFIT OF CREDITORS

An ABC is a mechanism used to monetize the assets of a business under state law. It commences with the execution of a "Deed of Assignment," between a representative of the company in which all corporate assets are transferred to an "assignee." The assignee, in accordance with the Deed, must monetize the assets of the business and distribute the proceeds to creditors. In certain states, including Georgia, ABCs do not require court action or supervision. In other states, such as New York, ABCs are statutory and require court supervision.

**Some Advantages of an ABC:**

- An ABC can be achieved very quickly and with lower expense than a bankruptcy proceeding, increasing proceeds available to stakeholders.

What We Do

Turnaround and Restructuring Advisor

Chief Restructuring Officer

Financial Advisor

Chapter 11 Trustee

Assignment for the Benefit of Creditors

OIC - 039723

OIC 7702 Hamburger 041978

- The troubled company chooses the assignee who will maximize recovery and has experience marketing similar assets.
- An assignee often sells the assets of the business as a going concern and can operate the business prior to a sale.
- An ABC is an effective method to communicate with creditors and other stakeholders in the closing of a business.

## LET'S WORK TOGETHER

_____

We can resolve your challenges quickly, so give us a call and let's get started.

GET STARTED

OIC - 039724

OIC 7702 Hamburger 041979

Assignment for the Benefit of Creditors | GGG Partners

**CALL OUR EXPERTS TODAY (404) 256-0003**

3155 Roswell Rd NE, Suite 120, Atlanta, GA 30305    |    © Copyright 2020

|   All Rights Reserved   | Created by TwentySix2



OIC - 039725

OIC 7702 Hamburger 041980

**Exhibit G**

OIC - 039726

OIC 7702 Hamburger 041981

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF GEORGIA

Case number *(if known)* _____   Chapter __11__

☐ Check if this an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy     04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | Debtor's name | **The Aliera Companies, Inc.** |
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | **DBA  Aliera Healthcare, Inc.** |
| 3. | Debtor's federal Employer Identification Number (EIN) | **81-1019555** |

4. Debtor's address

**Principal place of business**

**990 Hammond Drive, Suite 700**
**Atlanta, GA 30328**
Number, Street, City, State & ZIP Code

**Fulton**
County

**Mailing address, if different from principal place of business**

**3155 Roswell Road, NE, Suite 120**
**Atlanta, GA 30305**
P.O. Box, Number, Street, City, State & ZIP Code

**Location of principal assets, if different from principal place of business**

Number, Street, City, State & ZIP Code

5. Debtor's website (URL)   **www.alieracompanies.com**

6. Type of debtor

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

OIC - 039727

OIC 7702 Hamburger 041982

Debtor  **The Aliera Companies, Inc.** _____  Case number (*if known*) _____
    Name

| | |
|---|---|
| **7.** | **Describe debtor's business** |

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

   \_\_\_\_\_

| | |
|---|---|
| **8.** | **Under which chapter of the Bankruptcy Code is the debtor filing?** |

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| | |
|---|---|
| **9.** | **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?** If more than 2 cases, attach a separate list. |

☐ No.

■ Yes.

| | | | | | |
|---|---|---|---|---|---|
| District | **Delaware** | When | **12/03/21** | Case number | **21-11548-jtd** |
| District | | When | | Case number | |

OIC - 039728

OIC 7702 Hamburger 041983

Debtor    **The Aliera Companies, Inc.**                                    Case number (*if known*) _____
Name

| | | | |
|---|---|---|---|
| **10.** | **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?** | ☐ No | |
| | | ☑ Yes. | |

List all cases. If more than 1, attach a separate list

| | | | | | |
|---|---|---|---|---|---|
| Debtor | **See Attachment** | | | Relationship | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11. Why is the case filed in *this district*?**    *Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes.    Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency _____
Contact name _____
Phone _____

---

█ **Statistical and administrative information**

**13. Debtor's estimation of available funds**    .    *Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☑ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☑ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☑ $500,000,001 - $1 billion |

**OIC - 039729**

OIC 7702 Hamburger 041984

Debtor   **The Aliera Companies, Inc.**                                    Case number (*if known*) _____
         Name

| | | |
|---|---|---|
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

OIC - 039730

OIC 7702 Hamburger 041985

Debtor    **The Aliera Companies, Inc.**                                                Case number (*if known*) _____
            Name

| | **Request for Relief, Declaration, and Signatures** |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature**
**of authorized**
**representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December 21, 2021**
                MM / DD / YYYY

X **/s/ Katie Goodman**                                        **Katie Goodman**
Signature of authorized representative of debtor              Printed name

Title    **Authorized Officer**

---

**18. Signature of attorney**

X **/s/ J. Robert Williamson**                    Date    **December 21, 2021**
Signature of attorney for debtor                          MM / DD / YYYY

**J. Robert Williamson 765214**
Printed name

**Scroggins & Williamson, P.C.**
Firm name

**4401 Northside Parkway**
**Suite 450**
**Atlanta, GA 30327**
Number, Street, City, State & ZIP Code

Contact phone    **404-893-3880**    Email address    **centralstation@swlawfirm.com**

**765214 GA**
Bar number and State

---

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy

OIC - 039731
page 5

OIC 7702 Hamburger 041986

Debtor    **The Aliera Companies, Inc.**                                    Case number (*if known*) _____
Name

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF GEORGIA

Case number (*if known*) _____    Chapter ___**11**___

☐ Check if this an
   amended filing

## FORM 201. VOLUNTARY PETITION

### Pending Bankruptcy Cases Attachment

| | | | | | | |
|---|---|---|---|---|---|---|
| Debtor | **Advevo LLC** | | | Relationship to you | | **Subsidiary** |
| District | **N.D. Georgia** | When | **12/21/21** | Case number, if known | | |
| Debtor | **Ensurian Agency, LLC** | | | Relationship to you | | **Subsidiary** |
| District | **N.D. Georgia** | When | **12/21/21** | Case number, if known | | |
| Debtor | **Tactical Edge Solutions, LLC** | | | Relationship to you | | **Subsidiary** |
| District | **N.D. Georgia** | When | **12/21/21** | Case number, if known | | |
| Debtor | **USA Benefits & Administrators, LLC** | | | Relationship to you | | **Subsidiary** |
| District | **N.D. Georgia** | When | **12/21/21** | Case number, if known | | |

OIC - 039732

OIC 7702 Hamburger 041987

### ACTION OF THE BOARD OF DIRECTORS
### OF THE ALIERA COMPANIES INC.
### TAKEN BY UNANIMOUS WRITTEN CONSENT
### IN LIEU OF A MEETING

The undersigned, constituting the sole member of the Board of Directors (the "**Board**")

and the Majority Stockholder of The Aliera Companies Inc., a Delaware corporation (the

"**Company**") with its principal place of business in Atlanta, Georgia, does hereby consent to and

adopt the following resolutions by unanimous written consent in lieu of a meeting, and does

hereby direct that this written consent to such action be filed with the minutes of the proceedings

of the Company:

WHEREAS, the Company is indebted to various persons, corporations and/or other
entities, and is unable to pay its debts in full; and

WHEREAS, in an effort to provide an efficient process to liquidate the remaining assets
of the Company and provide for the payment of the Company's debts, so far as possible, on or
about October 4, 2021, the Company transferred all of its assets to Asset Recovery Associates
Aliera, LLC as assignee for the benefit of creditors (the "**Assignee**") under a Deed of
Assignment, to be administered by the Assignee through its managing member, Katie S.
Goodman, pursuant to an assignment for benefit of creditors (the "**ABC**") proceeding established
pursuant to the provisions of O.C.G.A. §§ 18-2-40, *et seq*., and the Assignee has since that date
been responsible for communicating with the Company's creditors and overseeing the
liquidation of the Company's remaining assets for the benefit of its creditors; and

WHEREAS, the Deed of Assignment, *inter alia*, vests the Assignee with full power and
authority to do all acts and things that may be necessary to execute the assignment and to
execute, acknowledge, and deliver all necessary deeds, instruments, and conveyances; and

WHEREAS, on December 2, 2021, an involuntary petition (the "**Involuntary Petition**")
for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"), was
filed against the Company in the United States Bankruptcy Court for the District of Delaware,
Case No. 21-11548-JTD (the "**Involuntary Case**"), and an order for relief has not yet been
entered in the Involuntary Case; and

WHEREAS, based on its assessment of relevant factors, including, without limitation, the
fact that (a) the ABC has been pending in Atlanta, Georgia, (b) a substantial majority of the
Company's assets, including books and records, are located in Atlanta, Georgia, (c) many if not
all witnesses which would be needed to administer a Chapter 11 case for the Company are
located in the Atlanta area, and (d) a substantial number of the Company's creditors are located
in and/or have counsel in Georgia, the Board has determined that the Northern District of

OIC - 039733

OIC 7702 Hamburger 041988

Georgia would be the most convenient and efficient forum in which to prosecute a Chapter 11 case on behalf of the Company; and

WHEREAS, that, in the judgment of the Board, under existing circumstances it is desirable and in the best interests of the Company, its creditors, equity holders, and other interested parties that a petition be filed by the Company seeking relief under the provisions of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for Northern District of Georgia, and that the Company take necessary steps to dismiss the Involuntary Case and/or seek to transfer venue of the Involuntary Case to the United States Bankruptcy Court for Northern District of Georgia; and

WHEREAS, in the judgment of the Board it is desirable and in the best interests of the Company, its creditors, equity holders, and other interested parties, to have the Company's Chapter 11 case and the administration of its bankruptcy estate proceed under the management of GGG Partners, LLC, through its managing member, Katie S. Goodman and/or other members and employees of the firm, to ensure continuity in the completion of the liquidation process initiated with the filing of the ABC; and

WHEREAS, as shown by its signature below, the Assignee consents to the Company taking actions as authorized by these resolutions.

NOW, THEREFORE, BE IT

RESOLVED, that the Company is authorized to engage and retain the firm of GGG Partners, LLC, by and through its designee, Katie S. Goodman (the "**Authorized Officer**"), to act as chief liquidation officer for the Company in prosecuting a Chapter 11 case on behalf of the Company, on such terms and conditions as shall be deemed appropriate by the Board, subject to any required bankruptcy court approval; and

RESOLVED, that the Authorized Officer is hereby authorized and empowered on behalf of, and in the name of, the Company to execute and verify or certify a petition under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Northern District of Georgia, (the "**Georgia Bankruptcy Court**"), at such time as said officer executing the same shall determine and in such form as such Authorized Officer may approve (such approval to be conclusively evidenced by the execution of the petition); and

RESOLVED, that the Authorized Officer is authorized to cause the Company to file one or more motions, answer and/or other response to the involuntary petition as deemed appropriate after consultation with counsel, in an effort to dismiss the Involuntary Case and/or seek to transfer venue of the Involuntary Case to the Georgia Bankruptcy Court; and

RESOLVED, that the firm of Scroggins & Williamson, P.C., with an office currently located in Atlanta, Georgia, be, and it hereby is, employed as general bankruptcy counsel for the Company under a general retainer in connection with the prosecution of the Company's case under Chapter 11 of the Bankruptcy Code, and the Company is authorized to pay to Scroggins & Williamson, P.C. reasonable compensation for services rendered in connection with such engagement; and

OIC - 039734

OIC 7702 Hamburger 041989

RESOLVED, that the Company is authorized to employ and retain other attorneys, consultants, investment bankers, accountants and other professionals in connection with the Company's Chapter 11 case on such terms as the Authorized Officer deems necessary or proper, and to pay to such professionals reasonable compensation for such services; and

RESOLVED, that the Authorized Officer, or their designate, be, and each of them hereby is, authorized to execute and file any and all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to take any and all such other and further actions which the Authorized Officer or the Company's legal counsel may deem necessary or appropriate in connection with the Chapter 11 case, including, but not limited to, motions to obtain authority to use cash collateral and/or to incur debtor in possession financing; the assumption or rejection of executory contracts and unexpired leases; proposing one or more chapter 11 plans; the sale or other disposition of all or a portion of the Company's assets; entering into new contracts, leases or other agreements; the prosecution of claims held by the Company and the defense of claims asserted against the Company, including the continuation of any litigation pending at the time of the Chapter 11 filing, and related appeals; the negotiation and consummation of settlements and compromises; and the performance of any and all further acts and deeds which the Authorized Officer, or their designate, deem necessary, proper and desirable in connection with the Chapter 11 case, with a view to the successful prosecution of such case;

**RESOLVED**, that to the extent that any of the actions authorized by any of the foregoing Resolutions have been taken by the Authorized Officer of the Company on its behalf, such actions are hereby ratified and confirmed in their entirety.

This written consent may be executed in counterparts and shall become effective when each signatory has signed at least one counterpart hereof. Any signature pages of any counterpart may be appended to any other counterpart to form a complete executed counterpart hereof. Delivery of the signature page to this written consent by facsimile, PDF, or other electronic transmission, and each such signature delivered by facsimile, PDF, or other electronic transmission shall be deemed to be an original signature.

[Signatures on following pages]

OIC - 039735

OIC 7702 Hamburger 041990

IN WITNESS WHEREOF, the undersigned has executed this Consent without a meeting this ___ day of December, 2021.

Board of Directors

Snellen Steele, as Sole Director and
Majority Shareholder

OIC - 039736

OIC 7702 Hamburger 041991

## Consent by Assignee

Asset Recovery Associates Aliera, LLC, as Assignee in the Company's ABC, does hereby consent to and authorize, to the extent necessary, the Company taking actions described and authorized in the foregoing resolutions.

ASSET RECOVERY ASSOCIATES ALIERA, LLC,
a Georgia limited liability company

By: _____

Name: Katie S. Goodman
Its:   Manager

OIC - 039737

OIC 7702 Hamburger 041992

**Fill in this information to identify the case:**

Debtor name    **The Aliera Companies, Inc.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF GEORGIA

Case number (if known)   _____

☐ Check if this is an
amended filing

Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐ *Schedule H: Codebtors* (Official Form 206H)
☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule*
☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    12-21-2021          X **/s/ Katie Goodman**
                                   Signature of individual signing on behalf of debtor

                                   **Katie Goodman**
                                   Printed name

                                   **Authorized Officer**
                                   Position or relationship to debtor

OIC - 039738

OIC 7702 Hamburger 041993

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **THE ALIERA COMPANIES, INC.** |
| United States Bankruptcy Court for the: | **NORTHERN DISTRICT OF GEORGIA** |
| Case number (if known): | |

☐ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders
**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Sharity Ministries, Inc. 821 Atlanta Street Suite 124 Roswell, GA 30075 | Joseph Huston joseph.huston@stevenslee.com 302-425-2608 | Adversary Proceeding | Disputed | | | $574,736,000.00 |
| Gerald Jackson, Roslyn Jackson c/o Sirianni Youtz Spoonemore 3101 Western Ave., Ste 350 Seattle, WA 98121 | Eleanor Hamburger ehamburger@sylaw.com 206-223-0303 | Default Judgment | Disputed | | | $21,352,827.08 |
| Hanna Albina & Austin Willard c/o Sirianni Youtz Spoonemore 3101 Western Ave., Ste 350 Seattle, WA 98121 | Eleanor Hamburger ehamburger@sylaw.com 206-223-0303 | Default Judgment | Disputed | | | $4,679,868.46 |
| One Share Health LLC 3701 Regent Blvd, Ste 100 Attn: Buddy Combs, Esq. Irving, TX 75063 | Kyle Wallace kwallace@shiverhamilton.com 470-990-7166 | Contract | | | | $3,750,000.00 |
| Burr Forman LLP 420 North 20th Street Suite 2400 Birmingham, AL 35203 | Jennifer Moseley jmoseley@burr.com 404-685-4322 | Legal Services | | | | $1,518,422.06 |
| Emids 318 Seabord Ln Suite 110 Franklin, TN 37067 | Matthew Martin matt.martin@dentons.com 404-527-8478 | Trade Debt | | | | $768,092.50 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

OIC - 039739

OIC 7702 Hamburger 041994

Debtor    **THE ALIERA COMPANIES, INC.**                          Case number *(if known)* _____
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Duane Morris LLP 30 South 17th Street Philadelphia, PA 19103-4196** | **Alex Gonzales** **ajgonzales@duane morris.com 512-277-2251** | **Legal Services** | | | | $743,819.59 |
| **Bondurant Mixon & Elmore LLP 1201 W. Peachtree St., NW Suite 3900 Atlanta, GA 30309** | **Ronan Doherty** **doherty@bmelaw.c om 404-881-4100** | **Legal Services** | | | | $736,239.16 |
| **BMO 111 W. Monroe Street Chicago, IL 60603** | | **PPP Loan** | **Contingent** | | | $638,453.00 |
| **Steve Vermaak 2477 North Forest Drive Marietta, GA 30062** | | **Former Shareholder** | | | | $378,271.51 |
| **ROC III Fairlead Embassy Row Owner LLC Five Councouse Pkwy, Ste 500 Atlanta, GA 30328** | **Geremy Gregory ggregory@balch.c om 404-962-3561** | **Landlord** | | | | $314,971.07 |
| **Assurance IQ Inc. 920 5th Ave., Ste 3600 Seattle WA 98104** | | **Trade Debt** | | | | $264,057.00 |
| **Rath Young & Pignatelli PC P.O. Box 1500 Concord, NH 03302-1500** | | **Legal Services** | | | | $223,335.72 |
| **Nelson Taplin Goldwater Inc 1555 Palm Beach Lakes Blvd Suite 1510 West Palm Beach, FL 33401** | | **Consulting Services** | | | | $217,748.81 |
| **HealthScope Benefits, Inc. 27 Corporate Hill Drive Little Rock AR 72211** | | **Contract** | | | | $188,817.69 |
| **Ray Guiterez 3905 Briones Street Austin, TX 78723** | | **Former Shareholder** | | | | $161,395.84 |
| **James Eddie Black 811 Holley Drive Albany, GA 31705** | | **Former Shareholder** | | | | $161,395.84 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

OIC - 039740

OIC 7702 Hamburger 041995

Debtor __THE ALIERA COMPANIES, INC.__       Case number *(if known)* _____
    Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Administration123 668 N. Coast Hwy #167 Austin, TX 78723 | | Contract | Disputed | | | $129,698.79 |
| Amazon Web Services Inc. P.O. Box 84023 Seattle, WA 98124-8423 | | Trade Debt | | | | $123,894.03 |
| Five 9, Inc. 4000 Executive Parkway Suite #400 San Ramon, CA 94583 | | Trade Debt | | | | $115,181.31 |
| Steptoe & Johnson LLP 1330 Connecticut Avenue NW Washington, DC 20036 | | Legal Services | | | | $111,540.94 |
| Netlink 999 Tech Row, Ste 100 Madison Heights, MI 48071 | | Consulting Services | | | | $105,600.00 |
| Canon Financial Svcs, Inc. 14904 Collections Ctr Dr. Chicago, IL 60693 | Karen Anghelescu customercare@csa .canon.com 800-613-2228 | Equipment Lease | | | | $103,207.44 |
| MultiPlan, Inc. P.O. Box 29380 New York, NY 10087 | | Contract | | | | $96,727.75 |
| HealthEdge Software 30 Corporate Drive Burlington, MA 01803 | John D. Elrod ElrodJ@gtlaw.com 678-553-2259 | Trade Debt | | | | $90,700.00 |
| OutSystems, Inc. 5901 Peachtree Dunwoody Rd NE Bldg C495 Atlanta, GA 30328 | | Contract | | | | $84,000.00 |
| Dell Financial Svcs Payment Processing Center P.O. Box 6547 Carol Stream, IL 60197-6547 | Kim Vodicka | Equipment Lease | | | | $72,194.30 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

OIC - 039741

OIC 7702 Hamburger 041996

Debtor    **THE ALIERA COMPANIES, INC.**                                    Case number *(if known)* _____
                Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Nyemaster Goode PC**<br>**700 Walnut Street**<br>**Suite 1600**<br>**Des Moines, IA 50309** | | **Legal Services** | | | | **$70,896.37** |
| **Quotit**<br>**P.O. Box 6539**<br>**Beaverton, OR 97007** | | **Services** | **Disputed** | | | **$68,940.00** |
| **Meadows, Collier, Reed, Cousins, Crouch & Ungerman LLP**<br>**901 Main Street**<br>**Suite 3700**<br>**Dallas, TX 75202** | | **Legal Services** | | | | **$53,157.93** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

OIC - 039742

OIC 7702 Hamburger 041997

# United States Bankruptcy Court
## Northern District of Georgia

In re   __The Aliera Companies, Inc.__                                                    Case No.
                                    Debtor(s)                     Chapter   __11__

# VERIFICATION OF CREDITOR MATRIX

I, the Authorized Officer of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:   __December 21, 2021__                __/s/ Katie Goodman__
                                    __Katie Goodman__/__Authorized Officer__
                                    Signer/Title

OIC - 039743

OIC 7702 Hamburger 041998

AAA Security Shredding Inc
1426 Briarcliff Drive
Woodstock, GA 30189


ADP LLC
P.O. Box 842875
Boston, MA 02284-2875


Allied Benefit Systems, Inc.
200 W. Adams St.
Chicago, IL 60606


American Arbitration Associati
120 Broadway, Floor 21
Attn: Corp Finance
New York, NY 10271


Aramark
P.O. Box 21971
New York, NY 10087-1971


Austin Willard
c/o Sirianni Youtz Spoonemore
3101 Western Ave, Ste 350
Seattle, WA 98121


BMO
111 W. Monroe Street
Chicago, IL 60603


Bondurant Mixon & Elmore LLP
1201 W. Peachtree St., NW
Suite 3900
Atlanta, GA 30309


Bracewell LLP
P.O. Box 207486
Dallas, TX 75320-7486

Bridge Commercial Real Estate
Five Concourse Parkway
Suite 500
Atlanta, GA 30328


Burr Forman LLP
420 North 20th Street
Suite 2400
Birmingham, AL 35203


CA Atty Gen Attn: A. Dybris
California Dept of Justice
300 S. Spring Street, Ste 1702
Los Angeles, CA 90013


California Dept of Insurance
Attn: Teresa R. Campbell
1901 Harrison St, 4th Floor
Oakland, CA 94612


Cherry Bekaert LLP
P.O. Box 25549
Richmond, VA 23260-5500


Cigna Dental & Vision
P.O. Box 644546
Pittsburgh, PA 15264-4546


CIT
21146 Network Place
Chicago, IL 60673


CT Corporation
P.O. Box 4349
Carol Stream, IL 60197-4349


David P. White
1706 Swann Street Northwest
Washington, DC 20009

OIC - 039745

OIC 7702 Hamburger 042000

Dean Mellom
c/o Sirianni Youtz Spoonemore
3101 Western Ave., Ste 350
Seattle, WA 98121


Dickman Davenport Inc.
3100 S. Trust Tower
420 N. 20th, Ste 3400
Birmingham, AL 35203


Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196


Eagle Resource Group Inc.
5755 Glenridge Drive
Atlanta, GA 30328


Eckert Seamans Cherin & Mellot
P.O. Box 5405
Princeton, NJ 08543


Edgewood Partners Ins. Center
P.O. Box 734005
Chicago, IL 60673


Five 9, Inc.
4000 Executive Parkway
Suite #400
San Ramon, CA 94583


FPG Colonnade LP
45 Main Street
Suite 800
Brooklyn, NY 11201


Fulton County Tax Commissioner
141 Pryor Street
Atlanta, GA 30303

OIC - 039746

OIC 7702 Hamburger 042001

GBT US, LLC
14635 N. Kierland Blvd
13-01-72
Scottsdale, AZ 85254


Georgia Department of Labor
148 Andrew Young Int'l Blvd.
Suite 826
Atlanta, GA 30303


Georgia Department of Revenue
1800 Century Boulevard, NE
Atlanta, GA 30345


Gerald & Roslyn Jackson
c/o Sirianni Youtz Spoonemore
3101 Western Ave., Ste 350
Seattle, WA 98121


Gerald Jackson, Roslyn Jackson
c/o Sirianni Youtz Spoonemore
3101 Western Ave., Ste 350
Seattle, WA 98121


Gingold Law Firm PLLC
400 Harborview Drive SE
#237
Bainbridge Island, WA 98110-2467


GreatAmerica Financial Svcs
P.O. Box 660831
Dallas, TX 75266-0831


Hanna Albina & Austin Willard
c/o Sirianni Youtz Spoonemore
3101 Western Ave., Ste 350
Seattle, WA 98121


OIC - 039747

HealthScope Benefits Inc.
27 Corporate Hill Drive
Little Rock, AR 72211


Internal Revenue Service
Department of Treasury
Ogden, UT 84201


Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346


Internal Revenue Service
401 W. Peachtree St., NW
Stop 334-D
Atlanta, GA 30308


IPFS Corporation
1122 Lady St.
#1080
Columbia, SC 29201


Jackson Murdo Grant PC
203 North Ewing Street
Helena, MT 59601


James Eddie Black
811 Holley Drive
Albany, GA 31705


Kansas Attorney General
Attn: Lynette Goodman
120 S.W. 10th Ave., Ste 430
Topeka, KS 66612-1597


Krohne Tanks and Ponds LLC
3069 Mountain Shadow Way
Marietta, GA 30064

OIC - 039748

OIC 7702 Hamburger 042003

Kutak Rock LLP
1650 Farnam Street
P.O. Box 30057
Omaha, NE 68103-1157


Lewis Brisbois Bisgaard Smith
LLP
633 West 5th St., Ste 4000
Los Angeles, CA 90071


Life Insurance Company of
North America
P.O. Box 782447
Philadelphia, PA 19178-2447


Maria Guzman Escobio
1315 Dresden Dr. West
Charlotte, NC 28205


McGuire Woods Consulting
800 E. Canal Street
23219-3916
Richmond, VA 23219-3916


Meadows Collier Reed Cousins
Crouch & Ungerman LLP
901 Main Street, Ste 3700
Dallas, TX 75202


MI Dept of Ins & Fin Svcs
Attn: Dustin Simon
530 W. Allegan St #7
Lansing, MI 48933


Minnesota Dept of Commerce
Attn: Cam Jenkins
85 7th Place East, Ste 280
Saint Paul, MN 55101

Missouri Ins Mrkt Reg Division
Attn: Rob Tilman
301 West High St., Rm 530
Jefferson City, MO 65101


Nelson Taplin Goldwater Inc
1555 Palm Beach Lakes Blvd
Suite 1510
West Palm Beach, FL 33401


Net Planner Systems Inc.
3145 Northwoods Parkway
Ste 800
Norcross, GA 30071


NY Dept of Financial Svcs
Attn: Alison Passer
One State Street
New York, NY 10004


Nyemaster Goode PC
700 Walnut Street
Suite 1600
Des Moines, IA 50309


Offl Comm. of Sharity Members
Stevens & Lee; Attn: J. Huston
919 N. Market St., Ste 1300
Wilmington, DE 19801


Ogletree Deakins
P.O. Box 89
Columbia, SC 29209


One Share Health LLC
3701 Regent Blvd, Ste 100
Attn: Buddy Combs, Esq.
Irving, TX 75063


OIC - 039750

OIC 7702 Hamburger 042005

PA Ins. Dept. Bur of Licensing
Attn: Craig D. Canfield
1227 Strawberry Square
Harrisburg, PA 17120


POP Property Owner LLC
5901-C Peachtree Dunwoody Rd
Ste 155
Atlanta, GA 30328


Quotit
P.O. Box 6539
Beaverton, OR 97007


Rath Young & Pignatelli PC
P.O. Box 1500
Concord, NH 03302-1500


Ray Guiterez
3905 Briones Street
Austin, TX 78723


ReadyRefresh by Nestle
P.O. Box 856192
Louisville, KY 40285-6192


Relx
P.O. Box 733106
Dallas, TX 75373


ROC III Fairlead Embassy Row
Owner LLC
Five Councouse Pkwy, Ste 500
Atlanta, GA 30328


RSM US LLP
5155 Paysphere Circle
Chicago, IL 60674

Schreimann Rackers & Francka L
931 Wildwood Drive
Suite 201
Jefferson City, MO 65109


Sharity Ministries, Inc.
821 Atlanta Street
Suite 124
Roswell, GA 30075


Sheppard Mullin Richter &
Hampton
2200 Ross Ave., Ste 2400
Dallas, TX 75201


Shumate Mechanical
2805 Premiere Parkway
Duluth, GA 30097


Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, DC 20036


Steve Vermaak
2477 North Forest Drive
Marietta, GA 30062


Texas Attorney General
Attn: Patrick Sweeten
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548


Texas Comptroller of Pub Acct
P.O. Box 149348
Austin, TX 78714-9348


OIC - 039752

The Advocacy Group at
Cardenas Ptr LLC
204 South Monroe Street
Tallahassee, FL 32301


The Royak Group, Inc.
6455 East Johns Crossing
Ste 285
Duluth, GA 30097


Thomson Reuters-West
Payment Center
P.O. Box 6292
Carol Stream, IL 60197


TIAA Commercial Finance Inc
1700 Lincoln St, Lower Level 3
Dept 1608
Denver, CO 80203


U.S. Attorney N.D. Ga
Attn: Alex R. Sistla, AUSA
75 Ted Turner Dr SW., Ste 600
Atlanta, GA 30303


U.S. Dept. of Labor Atlanta
Reg Ofc, Attn: Holley Morris
61 Forsyth St., Ste 7B54
Atlanta, GA 30303


Uline
P.O. Box 88741
Chicago, IL 60680-1741


Utah Department of Labor
60 E. South Temple Street
Salt Lake City, UT 84111-1016

```
Utah Department of Revenue
210 N. 1950 W.
Salt Lake City, UT 84134


WA State Off of the Ins Comm
Attn: Darryl E. Colman
P.O. Box 40255
Olympia, WA 98504-0255


Wall McLean & Gallagher PLLC
40 W. Lawrence, Ste. B
P.O. Box 1713
Helena, MT 59601


Wintrow & Associates PC
P.O. Box 6398
Marietta, GA 30065
```

OIC - 039754

OIC 7702 Hamburger 042009

**Exhibit H**

OIC - 039755

OIC 7702 Hamburger 042010

***State of Washington***
***Office of the Insurance Commissioner***
***Legal Affairs Division***
***Investigations Unit***



## Final Investigative Report
## Cover Page Synopsis

**OIC Case #:** 1589861          **Final Report Date:** 04/08/2019
**Related Cases:** None          **Date Complaint Received:** 09/11/2018

**Name of Person or Entity under Investigation:**   (1) Aliera Healthcare, 5901 Peachtree Dunwoody Rd., Ste. 200, Atlanta, GA 30328. (2) Trinity Healthshare, 5901 Peachtree Dunwoody Rd., Ste 160, Atlanta, GA 30328

**WAOIC License Number and Status:**  None

**Representative for Person or Entity under Investigation:**   (1a) Aliera: Reba Leonard, Vice President Compliance and Regulatory Affairs (rleonard@alierahealthcare.com / 404-618-0602), 15301 Dallas Parkway, Ste 920, Addison, TX 75001; (1b) Aliera: Dwight Francis (Sheppard, Mullin, Richter & Hampton LLP), 2200 Ross Ave, Ste. 2400, Dallas, TX 75201; 430-391-7400, dfrancis@sheppardmullin.com; (2) Trinity: J. Joseph Guilkey (BakerHostetler), 200 Civic Center Drive, Ste. 1200, Colombus, OH 43215; 614-462-2697, jguilkey@bakerlaw.com

**Complainant:**  Zack Snyder, Director of Government Affairs at Cambia Health Solutions; 1800 9th Ave, Seattle, WA 98101 (zach.snyder@cambiahealth.com, 206-332-5060).

**Name of Insured (if different from complainant):**  N/A

**Relationship to Insured:**  N/A

**Allegation(s):**  (1) Trinity Healthshare does not meet the statutory definition of a HCSM under RCW 48.43.009 and Federal statute. If proven true, Trinity may be acting as an unauthorized insurer, in violation of RCW 48.05.030. (2) Aliera Healthcare's various advertisements on behalf of Trinity are deceptive and have the capacity and tendency to mislead or deceive consumers to believe they are purchasing insurance rather than a HCSM membership. If proven true, these could be violations of RCW 48.30.040, WAC 284-50-050 and 284-50-060.

_____

**Investigative Findings:**  Substantiated

**Potential RCW's or WAC's Violated:**  RCW 48.05.030, RCW 48.30.040, WAC 284-50-050 and WAC 284-50-060

**State of Washington**
**Office of Insurance Commissioner**
**Legal Affairs Division**
**Regulatory Investigations Unit**



### Final Investigative Report
### Executive Summary

This investigation determined the following:

1. The allegation that Trinity Healthshare ("Trinity") does not meet the statutory definition of a HCSM under RCW and Federal statute is substantiated. Trinity is therefore acting as an unauthorized insurer, in violation of RCW 48.05.030.

2. The allegation that Aliera Healthcare's ("Aliera") various advertisements on behalf of Trinity are deceptive and have the capacity and tendency to mislead or deceive consumers to believe they are purchasing insurance rather than a HCSM membership, in violation of RCW 48.30.040, WAC 284-50-050 and 284-50-060, is substantiated.

RIU opened the investigation based on a complaint from an insurer, which forwarded an Aliera Healthcare ("Aliera") solicitation it obtained which sought to recruit agents to sell "healthcare" products. From previous RIU investigations, OIC is aware Aliera has acted as a marketer for health care sharing ministries ("HCSM"). A HCSM is an organization that is exempt from insurance regulation in Washington State (see RCW 48.43.009, which defers to 26 USC §5000A(d)(2)(B)(ii)) and exists to facilitate medical cost sharing between members in accordance with a specific set of religious and/or ethical beliefs.

During the course of the investigation the RIU gathered information regarding Aliera, Trinity and three other legal entities with a nexus to the Trinity-Aliera relationship. Based on this information, the RIU concluded:

1. The evidence indicates Trinity does not meet the definition of a HCSM because (1) its representations about the nature of its religious convictions to consumers, State

and Federal regulators are contradictory and in conflict with its own bylaws, (2) it has not been operating as a 501(c)(3) legal entity and sharing member medical needs continuously since December 31, 1999, and (3) evidence indicates Trinity was formed in 2018 for the express purpose of entering into a marketing agreement with Aliera.

Because the evidence indicates Trinity is not a HCSM, as defined by RCW and Federal statute, the laws concerning advertising for disability insurance likely apply to Trinity's HCSM products. Regardless of this finding, because these HCSM products mirror disability policies in their *function* (not the legal structure of the entity offering them), it is prudent to use disability advertising statutes to determine whether Trinity and Aliera are providing misleading or deceptive advertisements regarding HCSM products. Therefore, RIU determined the following:

2. The evidence indicates Aliera (1) failed to represent Trinity's actual Statement of Faith, as defined by Trinity's bylaws, (2) provided misleading training to prospective agents about the nature of the HCSM products, and (3) provided misleading advertisements to the general public and potential consumers that have the capacity or tendency to mislead or deceive consumers, based on the overall impression that these advertisements may be reasonably expected to create upon a person of average education.

**State of Washington**
**Office of Insurance Commissioner**
**Legal Affairs Division**
**Regulatory Investigations Unit**



### Final Investigative Report
### Investigative Findings

1. **ALLEGATION**

The Regulatory Investigations Unit ("RIU"), Office of the Insurance Commissioner ("OIC") opened this investigation after receiving a communication from Cambia Health Solutions "(Cambia") which expressed concerns that Aliera Healthcare ("Aliera") may be misrepresenting its products as insurance (Exhibit 1). Cambia provided a copy of a communication Aliera sent to prospective brokers, which read (in part):

> *This is an excellent opportunity for Aliera Healthcare to develop long-term, mutually-beneficial relationships with new brokers and agencies in the state of Washington and to build a strong Aliera presence in both the Group and Individual markets ... Aliera makes affordable quality healthcare accessible to those who are priced out of the current markets. Whether you're a business looking for affordable ACA-compliant plans, or an individual looking for ACA alternatives, Aliera Healthcare puts the power of choice back in your hands.*

From previous RIU investigations, OIC is aware Aliera has acted as a marketer for health care sharing ministries ("HCSM"). A HCSM is an organization that is exempt from insurance regulation in Washington State (see RCW 48.43.009) and exists to facilitate medical cost sharing between members in accordance with a specific set of religious and/or ethical beliefs. The Washington State insurance code defers to the Federal statute to define a HCSM [see RCW 48.43.009; cf. 26 USC §5000A(d)(2)(B)(ii)]. The Federal statue lists five criteria:

- *the term "health care sharing ministry" means an organization—*
  - *(I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),*

OIC - 039727

OIC - 039759

OIC 7702 Hamburger 041900
OIC 7702 Hamburger 042014

- o *(II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,*
- o *(III) members of which retain membership even after they develop a medical condition,*
- o *(IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and*
- o *(V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request.*

The OIC opened an investigation into both (1) Trinity Healthshare ("Trinity"), the HCSM behind many of Aliera's products, and (2) Aliera, Trinity's marketer. This investigation had two objectives:

- Does Trinity meets the statutory definition of a HCSM under WA law (RCW 48.43.009)? If it does not, it may be operating as an unauthorized insurer in violation of RCW 48.05.030.
- Do Aliera's various advertisements on behalf of Trinity mislead consumers to believe they are purchasing insurance, rather than a HCSM membership? If proven to be true, this could be a violation of RCW 48.30.040 and WAC 284-50-050 and 284-50-060.

The case was assigned to Investigator ("INV") Tyler Robbins.

## 2. **LICENSING REVIEW**

INV Robbins conducted a licensing check on Aliera through the National Association of Insurance Commissioners ("NAIC"), which disclosed Aliera has active producer's licenses in 36 states. It does not have a license in Washington (Exhibit 2). Trinity is not licensed with the NAIC or the OIC, because it purports to be a HCSM exempt from insurance regulation.

OIC - 039728

OIC - 039760
OIC 7702 Hamburger 041903
OIC 7702 Hamburger 042015

3. **NOTIFICATION OF INVESTIGATION**

On 10/01/2018, INV Robbins sent formal notices of investigation to both Aliera and Trinity, requesting a response to the allegations (Exhibit 3a). Throughout the course of the investigation, INV Robbins sent a follow-up notices to both Trinity (Exhibits 3b – 3c) and Aliera (Exhibit 3d), requesting further information.

4. **INVESTIGATION OF AND RESPONSE FROM PARTIES**

During the course of this investigation, RIU gathered information regarding five entities; Aliera, Trinity, Anabaptist Healthshare, Unity Healthshare and HealthPass USA. The relationship between these entities and a relevant timeline is below:



OIC - 039729

OIC - 039761

OIC 7702 Hamburger 041902
OIC 7702 Hamburger 042016

a. <u>ALIERA HEALTHCARE</u>

i. **<u>Background</u>**

The entity known as Aliera appears to have begun as a domestic stock corporation in the State of Delaware on 09/29/11 as an entity called, "OnSite Health Management, Inc." (Exhibit 7b). Approximately 14 months later, it filed an amendment and changed its name to Aliera Healthcare, Inc. (Exhibit 7b, pg. 4). This Aliera entity ("Aliera #2") appears to remain an active business entity in Delaware (Exhibit 7c), and has never registered in Georgia.

The Aliera entity that is the focus of this investigation ("Aliera") was incorporated in the State of Delaware on 12/18/15 (Exhibits 4a and 4b) by Shelley Steele (Exhibit 4b, pg. 7). Its scope of business was "to engage in the business of providing all models of Health Care to the general public" and "to cultivate, generate or otherwise engage in the development of ideas or other businesses. To buy, own or acquire other businesses, to market and in any way improve the commercial application to the betterment and pecuniary gain of the corporation and its stockholders …" (Exhibit 4b, pg. 8). In 2017, the most recent year Delaware has on file, a man named Chase Moses appears on record as a director of the corporation (Exhibit 4b, pg. 9).

Aliera registered as a foreign corporation in the State of Georgia approximately four months later, on 04/28/16, with Shelley Steele as the CFO and CEO (Exhibit 4c). The business remains active in Georgia, where it maintains its offices (Exhibits 4d – 4e). In addition, an entity named "Aliera Healthcare of Georgia" registered as a domestic LLC in that state on 03/13/17 (Exhibit 4f) and remains active (Exhibit 4g). Shelley Steele was also the CEO of this entity.

On 07/25/17, a domestic Georgia entity named HealthPassUSA, LLC ("HealthPass") merged with Aliera, which remained the surviving corporation (Exhibit 4h). HealthPass was organized as a domestic LLC on 05/14/15 by Shelley Steele (Exhibit 6a), the same individual who founded both Aliera entities (above). HealthPass also occupied the very

same address as Aliera later did throughout 2016 and 2017, until its merger (Exhibits 6b – 6c; compare to address in Exhibit 4b).[1]

## ii. **Agent Training**

The Federal exemption for HCSMs is religious in nature. Indeed, the exemption is under a heading marked "religious exemptions."[2] However, Aliera's promotional material for consumers and its training material for new and prospective brokers fails to emphasize this point. The majority of the material never mentions the religious motivations that the Federal HCSM statute envisions prospective consumers would have. This potentially misleads both consumers *and* the prospective brokers who will market, solicit and sell the products to the religiously-motivated individuals whom the Federal statute envisions to be the HCSM's intended market.

### 1.  Advertisements for prospective agents:

Aliera's advertisements for recruiting prospective agents to sell the HCSM products offer them the opportunity to sell "the next generation of Healthcare products" and suggests they can offer employers "a healthcare plan that saves money," (Exhibit 4i). The terms "healthcare" and "health plan" are insurance-specific terminology, defined by statute (see RCW 48.43.005 [26]). Moreover, the advertisement does not mention a religious or ethical component for the consumers.

Aliera's agent training portal[3] requires prospective agents to watch a series of three training videos, then take an assessment (Exhibit 4j). INV Robbins obtained both mp3 and mp4 copies of each video from the portal:

---

1. The address is 5901 Peachtree Dunwoody Road, Building B, Suite 200, Atlanta, GA, 30328.
2. See 26 USC 5000A(d)(2).
3. At the time of this report, the prospective agent portal was located at https://www.alierahealthcare.com/training-center/brokers-agents/ and accessed using the password "aliera2017."

2.  Video #1:

The first video, entitled "Training Modules Aliera," is linked on the training site and hosted in an unlisted status on YouTube.[4] It consists of a narrator explaining four different plans; AlieraCare, PrimaCare, InterimCare and CarePlus, accompanied by informational charts. However, as Aliera disclosed (see response Exhibit 5a, below), each of these plans are Trinity HCSM products. However, this training video never mentions a religious motivation or caveat to agents-in-training (Exhibits 4k and 4l).

3.  Video #2

The second video, entitled "Aliera Healthcare – Your ACA Solution,"[5] is just over four minutes long and is an advertisement oriented to consumers, even though it is an agent training tool. The narrator asks, "what if there was a way to get healthcare coverage that was affordable, and provides actual health care that you can use, without the added cost of co-pays, deductibles, and the high cost of insurance?" The narrator said "you bet there is!" and proclaimed, "Welcome to HealthPassUSA, from Aliera Healthcare!" It explains it's a "nationwide healthcare membership that provides you the minimum essential coverage required by the affordable care act," (Exhibits 4m and 4n, 00:10 – 00:45).

There is no mention of a religious component or motivation associated with the product. Indeed, the video specifically refers to the product as "HealthPassUSA," which is the non-HCSM entity Aliera acquired in 2017 (see Exhibit 4h). The narrator frames the product as a lower-cost alternative. He provides a hypothetical consumer named "Joe," who "can't afford traditional health insurance, but he needs healthcare for himself and his family," (Exhibit 4m, 1:40 – 1:50).  The term "healthcare" is insurance language defined by statute.

---

4. The video is hosted at https://www.youtube.com/watch?v=ecEmZffiR-M/. If a video is "unlisted," it means it cannot be found unless the viewer has the link. This process is often used by video creators who want a video to remain confidential, disclosed only to certain viewers.
5. This video is also available at the Aliera training portal (see footnote #3, above), and on YouTube at https://www.youtube.com/watch?v=BaL1SH5jQ30.

### 4.  Video #3:

The third video, entitled "Aliera Healthcare – How to Use Your Membership,"[6] is geared to consumers, not agents, even though it is an agent training tool. The narrator explains what "your myHealthPass membership" will cover, and explains how to decipher "your myHealthPass membership card." Again, this refers to a non-HCSM company Aliera acquired in 2017 (see Exhibit 4h). The narrator explains the card provides access to "healthcare services," and assures the viewer Aliera is his first stop for "your healthcare needs," (Exhibits 4o and 4p). Again, this is insurance language defined by statute.

### 5.  Video #4:

The fourth video, entitled "How to Activate Your Membership," explains to a consumer how to activate his HealthPass membership.[7] Once again, this video is training for prospective agents on how to market, solicit and sell an HCSM product, yet Aliera brands the product after a non-HCSM company it acquired in 2017 (Exhibits 4q and 4r).

### 6.  Assessment:

The Aliera agent training assessment, which all prospective brokers must successfully pass, asks a series of detailed questions about various Trinity HCSM products – none of which mention a religious motivation (Exhibit 4s). There is text at the end of the assessment, just above the "submit assessment" button, which expresses Trinity's five faith statements. The producer must attest he will be held responsible for communicating to consumers that the Trinity products are not insurance. However, the assessment *does not* require the producer to explain or advise the consumer of the alleged religious motivations behind the HCSM product.

---

6. This video is available at Aliera's prospective agent training portal (see footnote #3, above) or on Vimeo at https://vimeo.com/177624500.

7. This video is also available at the Aliera training portal, or on Vimeo at https://vimeo.com/177625744.

OIC - 039733

OIC - 039765

OIC 7702 Hamburger 041965
OIC 7702 Hamburger 042020

### 7. Prospective Agent Training Video:

On 10/25/18, an unidentified Aliera trainer conducted a video seminar for prospective agents. The trainer apparently conducted this seminar for a marketer named America's Health Care Plan ("AHCP"),[8] which then posted the video to YouTube on 10/29/18 with the title "Aliera Healthcare Product Overview."[9] INV Robbins obtained mp3 and mp4 copies of this video (Exhibits 4t and 4u).

The trainer explained Aliera fills a need, because the market "doesn't really have anything that's affordable, and truly comprehensive. Our plans are very similar to what was in effect before the ACA came around. And so, all we did is take that wheel, make it a little bit better, and we put that back out in the market," (Exhibits 4t and 4u, 1:32 – 1:48).

The narrator discussed various group coverage options, then transitioned to the "individual alternative market," which he described as "our bread and butter" which accounted for over 70% of Aliera's sales. Each of the branded plans in this category (below) are actually HCSM plans which Aliera markets on behalf of Trinity.[10]



---

8. See AHCP's website at http://www.ahcpsales.com/about-us/.
9. See the video at https://youtu.be/OjI5Ff1I2Ck.
10. See the signed agreement between Trinity and Aliera (Exhibit 5g, pgs. 3-18) and Aliera's response to the OIC (Exhibit 5a), discussed below.

The narrator said Aliera's "comprehensive plans" (which are HCSM products marketed by Aliera) "not only mirrors traditional insurance, but truly provide comprehensive healthcare for an individual," (Exhibits 4t and 4u, 8:20 – 8:33). The trainer referred to "InterimCare" as "our short-term medical plan," (Exhibits 4t and 4u, 10:50 – 11:05). The following graphic from the video (see Exhibit 4t, 08:36) captures the ambiguity in Aliera's representations:



The term "healthcare" is insurance language defined by statute, and the terms "comprehensive coverage," "short-term medical" and "individual market" are colloquial insurance terms widely used in the disability market and discussed in that context during Washington producer licensing training.

The graphic below, from the AHCP video, confirms this investigative report has now summarized the entire training pipeline for prospective Aliera agents who market, solicit and sell Trinity's HCSM plans to consumers. At no time during the entire training process for prospective agents is a religious motivation, ethic or caveat emphasized:

OIC - 039735

OIC - 039767

OIC 7702 Hamburger 041993

OIC 7702 Hamburger 042022



8.  "Back Office" Enrollment Training for Agents

On 11/01/18, an unidentified Aliera trainer conducted a seminar for new or prospective agents about the "back office" functions of Aliera's agent portal. AHCP posted this video on YouTube the same day, with the title "Aliera Healthcare Enrollment Process."[11] INV Robbins obtained both mp3 and mp4 copies of this video (Exhibits 4v – 4w).

The trainer walks the viewer through how to enroll a new customer for an Aliera product, and eventually comes to a series of questions the agent must ask before completing the application. The trainer explains (Exhibits 4v and 4w, 11:45 – 12:05).

> *Then, of course, there's going to be questions. Now, it's guaranteed issue, so these questions are not knockout questions. They're not going to at all make it where you're not possible to, you know, become a member of the plan. So, there's no worries about that. Make sure to let the members know that.*

The consumer must respond positively to each question, and the first includes Trinity's statement of faith:

---

11. The video is available at https://youtu.be/PiwoaXt8Z78.



The trainer explains to the viewer what this means (Exhibits 4v and 4w, 12:25 – 13:25):

> *Just to give you a general overall synopsis of what it's saying … It basically is saying that you believe in a higher power. It doesn't necessarily have to be a Christian God, or a Buddhist God, or a Jewish God. It doesn't … it doesn't matter as long as we all believe that there is a higher power and we're all living our life that the best way that we possibly can. We're maintaining a healthy lifestyle. We're trying to avoid those types of foods, behaviors, habits - things that, you know, cause us illness that are in our control.*
>
> *As long as we're doing those types of things, we're all like-minded individuals. So if you feel that way, and you are a like-minded individual, that's all we're trying to find out. And, if you are, you're gonna say, "Yes," you believe in the five same statement of beliefs that we all do.*

This is at odds with the Statement of Faith Trinity requires members to abide by, according to its own bylaws (see discussion, below).

    iii.  **Marketing**

OIC - 039737

OIC - 039769

OIC 7702 Hamburger 041904
OIC 7702 Hamburger 042024

### 1.  Consumer Video

On 09/19/18, Aliera published a short promotional video on YouTube entitled, "Aliera Healthcare – A New Era in Healthcare Choices."[12] The video encourages the viewer to consider Aliera as a substitute for traditional medical insurance. The narrator explains Aliera is "redefining the healthcare experience" by "putting the power of choice back in your hands." The narrator never mentions a religious motivation, prerequisite or caveat in the advertisement. The video description reads, "Aliera is committed to redefining the healthcare experience for individuals, families, and employers, with innovative services and solutions that simplify the complexities of healthcare and unlock the freedom and power of choice." INV Robbins obtained both mp3 and mp4 copies of the video (Exhibits 4x and 4y).

### 2.  "The Balancing Act"

On 10/01/18, Aliera published a video of an appearance its Executive Vice President, Chase Moses ("Moses"), made on a Lifetime morning television program called *The Balancing Act*.[13] INV Robbins obtained mp3 and mp4 copies of the video (Exhibits 4z and 4aa). Moses explains, "Aliera has thrived in creating simple, affordable, quality healthcare solutions for anyone and everyone. And, whether you're an individual, whether you're family, or whether you're an employer, and we've done that through innovation," (Exhibits 4z and 4aa, 1:05 – 1:20). Moses went on to briefly describe each Trinity HCSM plan, and never mentioned the religious motivation or emphasis in the interview. He demonstrated the ease with which consumers can sign up for "individual plans" (i.e. HCSM plans) on the website.

### 3.  Literature:

---

12. The video is available at https://youtu.be/q8FyZmOla6c.
13. According to its website, *The Balancing Act* is "a daily morning show that brings cutting-edge ideas to today's on-the-go, modern woman to help balance and enrich her life every day," (retrieved from https://thebalancingact.com/about/). The video is available at https://youtu.be/I7aobwe3kZ4.

OIC - 039738

OIC - 039770

OIC 7702 Hamburger 041909
OIC 7702 Hamburger 042025

INV Robbins obtained brochures from Aliera's website regarding the various Trinity HCSM plans which Aliera offers (Exhibits 4ab – 4ae). Each brochure features a disclaimer which reads "This is NOT Insurance." A representative first paragraph, below, describes the nature of the plans (Exhibit 4ab, pg. 1):



The brochure also explains the following (Exhibit 4ab, pgs. 3, 11):

> • **Healthshare Membership** – Trinity HealthShare, Inc. is a Health Care Sharing Ministry (HCSM) which acts as an organizational clearing house to administer sharing of healthcare needs for qualifying members. The membership is based on a religious tradition of mutual aid, neighborly assistance, and burden sharing. The membership does not subsidize self-destructive behaviors and lifestyles, but is specifically tailored for individuals who maintain a healthy lifestyle, make responsible choices regarding health and care, and believe in helping others. The HCSM Healthshare membership is NOT health insurance. See legal notices page.

**STATEMENT OF BELIEFS**
Because Trinity HealthShare, Inc. is a religious organization, members are required to agree with the organization's Statement of Beliefs:
1. We believe that our personal rights and liberties originate from God and are bestowed on us by God.
2. We believe every individual has a fundamental religious right to worship God in his or her own way.
3. We believe it is our moral and ethical obligation to assist our fellow man when they are in need, according to our available resources and opportunity.
4. We believe it is our spiritual duty to God and our ethical duty to others to maintain a healthy lifestyle and avoid foods, behaviors, or habits that produce sickness or disease to ourselves or others.
5. We believe it is our fundamental right of conscience to direct our own healthcare, in consultation with physicians, family, or other valued advisor.

**LEGAL NOTICES**
The following legal notices are the result of discussions by Trinity HealthShare, Inc. or other healthcare sharing ministries with several state regulators and are part of an effort to ensure that Sharing Members understand that Trinity HealthShare, Inc. is not an insurance company and that it does not guarantee payment of medical costs. Our role is to enable self-pay patients to help fellow Americans through voluntary financial gifts.

The "short-term healthcare" plan apparently mirrors "short-term medical" plans available in the disability market in certain jurisdictions. Aliera's literature describes it as "a short-term comprehensive healthcare plan" (Exhibit 4ad, pg. 1) and does not mention a religious/ethical conviction. The dental and vision plan "gives you exactly what you need to maintain your overall dental health, whatever your budget or lifestyle" (Exhibit 4ae) and likewise does not mention a religious/ethical ethos. Aliera's informational brochure for the CarePlus Advantage product explains it is "a catastrophic health plan that offers assistance with the cost of major medical expenses," (Exhibit 4ac, pg. 1). It, too, does not mention a religious or ethical conviction. Each brochure contains legal disclaimers at the end which explain these are not insurance products; "[o]ur role is to enable self-pay patients to help fellow Americans through voluntary financial gifts."

iv.  **Responses from Aliera**:

On 10/22/2018, Aliera responded to the OIC on behalf of itself and Trinity (Exhibit 5a). The company explained (pg. 1):

> *Aliera is not a health care sharing ministry. Aliera is best described as an innovative healthcare organization offering members a comprehensive model of care. Aliera has entered into an exclusive agreement with Trinity Healthshare, Inc. to provide operational and marketing support in order that Trinity might grow to include people of faith from throughout the United States. Trinity's board directs the activities of the sharing ministry through the issuance of sharing guidelines and through oversight of the servicing that Aliera provides to the sharing members on their behalf.*

The company related (Exhibit 5a, pg. 5):

> *Aliera provides exclusive operational and marketing support for Trinity. Trinity directs the activities of Aliera through the administration of the signed agreement, as well as the spiritual guidance for the ministry and its members.*

Aliera provided a copy of Trinity's 501(c)(3) certificate, showing it is a non-profit entity (Exhibit 5b). It provided a list of five statements "that members must attest they agree with before they can be enrolled in a health care sharing plan offered by Aliera on behalf of

Trinity." Aliera explained consumers must attest they share in these beliefs, either in a recorded verification call or by electronic signature as part of the application process (Exhibit 5a, pg. 2).[14]

Regarding the WA state requirement that a HCSM must have been in continuous existence and sharing expenses since December 31, 1999, Aliera stated it disagreed with an interpretation that understood this language literally. The company explained (Exhibit 5a, pg. 3):

> *it seems reasonable that the* [Washington state] *definition would be applied in the same context as the U.S. Code, in that the five (5) elements described in the Code as the definition for Minimum Essential Coverage and the Individual Shared Responsibility Payment, not for the existence of the health care sharing ministry outside of that context, or to negate the fact that health care sharing ministry plans do not meet the definition of insurance.*

However, Aliera went on to state (Exhibit 5a, pg. 3):

> *Trinity derives its existence from the Baptist association of churches which have been in existence and continually sharing since the 1600 … The health care needs of the members of Trinity Healthshare, Inc., through its historical predecessor church association, have been shared for years ahead of the statutory demarcation point of December 31, 1999.*

The OIC asked for documents to support the contention that Trinity, or a predecessor organization, had been sharing expenses as a HCSM since at least December 31, 1999. Aliera replied, "Neither Aliera nor Trinity have access to predecessor Baptist association records, but the role of the Baptist church and its association of churches in assisting members has been documented historically since the 1600's," (Exhibit 5a, pg. 4).

Aliera explained that, in addition to the HCSM component it administers for Trinity, "Aliera also manages small employer self-funded health benefit plans," (Exhibit 5a, pg. 5). Aliera

---

14. See this process explained by a trainer in Exhibits 4v and 4w (discussed above).

bundles several non-insurance products with the HCSM elements to form different plans:[15]

| Trinity product | | Aliera product |
|---|---|---|
| *AlieraCare* | + | Telemedicine, discount prescription drugs, concierge services to locate "in-network" providers |
| *PrimaCare* | + | Telemedicine, discount prescription drugs, concierge services to locate "in-network" providers |
| *InterimCare* | + | Telemedicine, discount prescription drugs, concierge services to locate "in-network" providers |
| *CarePlus* | + | Telemedicine, discount prescription drugs, concierge services to locate "in-network" providers |

The OIC inquired about Unity Healthshare ("Unity"), a HCSM for which Aliera had previously acted as a marketer and administrator. Aliera explained the Unity board "exercised its rights to terminate the administrative agreement with Aliera and transition their membership to another administrator," (Exhibit 5a, pg. 5).

The OIC asked Aliera to explain references to "in-network" in its plan materials, and the company explained it uses a MultiPlan network. "The MultiPlan PHCS network is managed by MultiPlan, and Trinity members who are seeking medical services are requested to utilize in-network providers in an attempt to manage the cost of health care expenses that will be requested for sharing," (Exhibit 5a, pg. 6). Aliera also provided copies of member guidelines for the four plans it offers (Exhibits 5c – 5f).

v.  **Agreement Between Trinity and Aliera**

On 11/16/18, Aliera provided a copy of the signed agreement between itself and Trinity (Exhibit 5g) dated effective 08/13/18, which is approximately six weeks after Trinity incorporated as a domestic corporation in the State of Delaware. The agreement was signed by Moses (Aliera's Executive Vice President) and Trinity's CEO. The agreement explains (Exhibit 5g, §2-3):

---

15. The OIC created the following table from a written description Aliera provided.

> **WHEREAS**, Aliera develops and markets healthcare products as an alternative to traditional health insurance, with some products containing a health care sharing ministry component;
>
> **WHEREAS**, Aliera is a program manager for health care sharing ministry plans, responsible for the development of plan designs, pricing, and marketing materials, vendor management, and recruitment and maintenance of a national sales force to market plans, including accounting and management of sales commissions to authorized marketing representatives on behalf of the ministry;

The agreement states Trinity had filed to become a 501(c)(3) entity, and wanted Aliera to offer its HCSM plans (Exhibit 5g, pg. 3). Aliera was granted "exclusive license to **develop**, **market** and **sell** the HCSM plans to individuals in the public markets who will acknowledge the standard of beliefs and other requirements as deemed necessary by Trinity, and agreed upon by Aliera," (Exhibit 5g, pg. 4, §1a).[16] In addition, Aliera will "provide enrollment and other administrative services relating to the HCSM and to market the Plans, which Plans will not include insurance products and cannot be bundled with insurance," (Exhibit 5g, pg. 1).

The agreement also noted, "Trinity currently has no members in its HCSM, and the Parties intend that the members who enroll in the Plans become 'customers' of Aliera, and that Aliera maintain ownership over the 'Membership Roster,'" (Exhibit 5g, pg. 1; see also pg. 4, 1d). Aliera "may only accept subscriptions from members who will acknowledge the standard of beliefs and other requirements as deemed necessary by Trinity and agreed upon by Aliera," (Exhibit 5g, pg. 4, 1d).

Trinity delegates all financial accounting functions to Aliera (Exhibit 5g, pg. 5, 1h). No more than one-third of Trinity's board may be affiliated with Aliera (Exhibit 5g, pg. 5, 1k). In addition to the normal apportionment of fees, Trinity receives $25 for each application (Exhibit 5g, pg. 7, 3a). Aliera forwards all allotted fees to Trinity monthly, and controls a bank account established for that purpose (Exhibit 5g, pg. 7, §3c-d).

16. Emphasis mine.

OIC - 039743

OIC 7702 Hamburger 041903 OIC - 039775
OIC 7702 Hamburger 042030

The fee schedule shows Trinity retains virtually no funds; they largely return to Aliera for various purposes. One representative example follows (Exhibit 5g, pg. 16):

---

### AlieraCare & InterimCare

Trinity acknowledges and agrees that Aliera will receive and retain 65% of the total member share contribution for each primary member of each of the AlieraCare and Interim Care plans (the "**Total Side by Side MSC**") for the Aliera components of each plan and as payment for the Services.

Trinity will receive 35% of the Total Side by Side MSC (the "**Trinity MSC**"). Trinity will reimburse Aliera, from such amount, the following fees in the following percentages for Aliera's payment of vendor cost for the AlieraCare and Interim Care plans, as well as distribute the following amounts to the ShareBox account to be used solely for member medical expense payments.

| Program Expenses<br>Side by Side Products | % of Trinity MSC |
|---|---|
| Aliera Mgmt Fee/General Overhead/Ops Labor/Internal Sales | 19.6% |
| Commissions | 30.0% |
| TPA Fees | 2.6% |
| Provider Network (Multi Plan) | 1.2% |
| Telemedicine | 0.8% |
| Total Reimbursement | 54.2% |
| ShareBox Contribution / Side by Side Products | % of Trinity MSC |
| ShareBox Member Reserve | 44.3% |

---

Aliera retains 65% of all fees outright, and Trinity receives the remaining 35%. However, as the example above makes clear, Trinity repays *from its 35%* (i.e. "from such amount") 54.2% of this total to Aliera for various reimbursements. The remaining 44.3% of the 35% Trinity received is placed into a reserve account for member medical expenses (Exhibit 8e, pgs. 7-8). In practical terms, the arrangement looks like this with a figurative total of $100:

| | **Less** | | **Total** |
|---|---|---|---|
| *Money received from consumer* | | | 100.00 |
| *Less 65% to Aliera* | - 65 | = | 35.00 |
| *Less 54.2% __of the remaining 35%__ reimbursed to Aliera* | - 18.97 | = | 16.03 |
| *Less 44.3% __of the remaining 35%__ placed in member expense reserve* | - 16.03 | = | 0.00 |

OIC - 039744

OIC - 039776

OIC 7702 Hamburger 041931

OIC 7702 Hamburger 042031

Trinity has a similar arrangement for its CarePlus, PrimaCare and dental and vision plans (Exhibit 5g, pgs. 16-18).

### b.  TRINITY HEALTHSHARE:

#### i.  Background:

Trinity Healthshare registered as a domestic corporation in the State of Delaware on 06/27/18 (Exhibit 8a). Approximately four months later, on 10/26/18, Trinity registered as a foreign corporation in the State of Georgia, with William Thead as the CEO and David Thead as the CFO and Secretary (Exhibit 8b). Trinity provided an address that was nearly identical to that of Aliera, at 5901b Peachtree Dunwoody Road, Atlanta, GA 30328.[17] However, the address is likely false, as the RIU sent correspondence to it in November 2018 (mere weeks after Trinity incorporated in Georgia) which was returned as undeliverable (Exhibit 8c).

#### ii.  Responses:

##### 1.  First Response

On 12/07/18, in response to the OICs notice (Exhibit 3b), Trinity replied (Exhibit 8d) via its attorney, J. Joseph Guilkey ("Attorney Guilkey"), who provided a letter written by Trinity's CEO, William Thead ("Thead"). In his letter, Thead explained "we are confident that Trinity meets the criteria listed in 26 USC § 5000A to be considered a health care sharing ministry." He explained Trinity was seeking a determination letter from the U.S. Department of Health and Human Services to that end, and believed such a letter would settle the matter (Exhibit 8d, pg. 1).[18] Thead explained that, regardless, Trinity does meet the definition of an insurer "because Trinity's operations do not shift risk to Trinity," (Exhibit

17. Only the suite number is different. Aliera is Suite 200 (Exhibit 4b), whereas Trinity is Suite 160c (Exhibit 8b).

18. HHS has informed the OIC it stopped issuing such determinations several years ago.

8d, pg. 2). Thus, Thead concluded, statutes regarding insurers are not applicable to Trinity.

Regarding whether Trinity had been operating continuously sharing member medical needs since at least 12/31/99, Thead stated his response was "contingent" on a determination from HHS. However, as HHS has told OIC, it has not provided such certifications for several years. RIU asked for more specifics about the history of any Trinity predecessor organization, as follows:

> In its own response to the OIC, Aliera stated, "Trinity derives its existence from the Baptist association of churches which have been in existence and continually sharing since the 1600's." As you are likely aware, there is no single, monolithic "association of Baptist churches." This is in marked contrast to, for example, the Roman Catholic Church. Baptist churches exist in the free church tradition, which is marked by a quest for autonomy from the State and, to greater or lesser extent, from ecclesiastical bureaucracy in general. The context for this ecclesiology is the principle of soul liberty; more specifically Baptists own struggles against State churches in Europe and America during and after the Protestant Reformation. The Baptist tradition does not express itself as a monolithic denomination, but rather as a multi-layered patchwork of local, regional, national and inter-national cooperative networks (i.e. "associations") of independent churches, many of which (at all levels) are aloof from and do not maintain formal ecclesiastical ties with each other. Even beyond the association level, there are many independent Baptist churches worldwide which remain detached from all associations, and view them as infringing on the autonomy of a local church.

> In light of this context, please (1) provide more clarification on Aliera's representations … and (2) please explain how this representation satisfies the language of 26 USC §5000A.

Trinity replied that it believed its forthcoming certification from HHS would address the issue, then remarked, "[w]e have concerns that interpreting the language of 26 USC §5000A too narrowly based on how one religion has historically organized itself could unintentionally discriminate against other religions," (Exhibit 8d, pg. 3). It explained (Exhibit 8d, pg. 4):

*The Baptist association of churches, formally in existence since the early 1600's, has provided for the health care needs of association members as a predecessor of Trinity. Thus, Trinity's predecessor church association does not have a rigid corporate form.*

Trinity also provided OIC a copy of the letter it sent to HHS, seeking official status as a HCSM. The letter explained why Trinity meets all five criteria of the Federal HCSM statute and, regarding the 12/31/1999 date, it largely echoed what it already provided to the RIU (Exhibit 8d, pg. 26):

*Baptists and many other Christian denominations have been sharing in each other's medical expenses since the sixteenth century. They have not only shared medical expenses since before 1999, they have shared medical expenses since the 1600's. The Baptist association of churches has formally been in existence since the early 1600's.*

In the letter, Thead also stated that Trinity "seeks to provide no-cost or low-cost health care sharing for missionaries, volunteers, employees of nonprofit faith-based ministries, and other individuals who share in our Statement of Beliefs. It coordinates sharing support from within the Baptist community to make this possible," (Exhibit 8d, pg. 23).

## 2. Second Response

On 03/11/19, in response to OICs follow-up request (Exhibit 3c), Trinity responded to the OIC (Exhibit 8e). Trinity denied it was created for the express purpose of entering into a corresponding marketing agreement with Aliera. Instead, it was created to share member medical needs in accordance with its Christian beliefs. It acknowledged it had no HCSM members at the time of its signed agreement with Aliera (Exhibit 8e, pg. 4).

Trinity also acknowledged that, at the time of its signed agreement with Aliera, it intended that all HCSM members become Aliera customers and that Aliera retain ownership of the membership roster. In fact, Aliera has exclusive ownership rights to the membership roster, and Trinity cannot contact HCSM members unless Aliera grants permission. Even

if Trinity's agreement with Aliera is terminated, Aliera will continue to service these HCSM members (Exhibit 8e, pgs. 4-5).

Trinity acknowledged Aliera is contracted to perform all development, sales and marketing responsibilities, and that Aliera must communicate Trinity's faith and lifestyle requirements to potential HCSM consumers (Exhibit 8e, pgs. 5-6).

Trinity acknowledged Aliera is contracted to perform billing, collection and accounts payable services. Aliera collects member contributions and enrollment fees, makes required distributions to a Trinity bank account, and is a signatory on Trinity's bank accounts (Exhibit 8e, pg. 6).

Trinity explained one of its purposes was to remain faithful to its statement of faith. However, Trinity provided a copy of its bylaws (Exhibit 8e, pgs. 11-16), which contain an *explicitly Protestant* statement that would be considered a conservative, evangelical expression of the Christian faith and message (see bylaws, Art. II.4, in Exhibit 8e, pg. 4). However, this statement of faith is quite different from the more generic faith statements Trinity members must agree to in order to join the HCSM:

| | Statement of Faith<br>*from bylaws* | | Faith Statements<br>*from marketing and plan* |
|---|---|---|---|
| 1 | We believe the Bible alone is the inspired Word of God; therefore it is the final and only source of absolute spiritual authority. | *vs.* | We believe that our personal rights and liberties originate from God and are bestowed on us by God. |
| 2 | We believe in the triune God of the Bible. He is one God who is revealed in three distinct Persons – God, the Father; God, the Son; and God, the Holy Spirit. | *vs.* | We believe every individual has a fundamental religious right to worship God in his or her own way. |
| 3 | We believe in Jesus Christ was God in the flesh – fully God and fully man. He was born of a virgin, lived a sinless life, died on the cross to pay the penalty for our sins, was bodily resurrected on the third day, and now is seated in the heavens at the right hand of God, the Father. | *vs.* | We believe it is our moral and ethical obligation to assist our fellow man when they are in need per our available resources and opportunity. |
| 4 | We believe that all people are born with a sinful nature and can be saved from eternal death only by grace alone, through faith alone, trusting only in Christ's atoning death and resurrection to save us from our sins and give us eternal life. | *vs.* | We believe it is our spiritual duty to God, and our ethical duty to others to maintain a healthy lifestyle and avoid foods, behaviors, or habits that produce sickness or disease to ourselves or others. |

OIC - 039748

OIC - 039780

OIC 7702 Hamburger 042035
OIC 7702 Hamburger 042035

| 5 | We believe in the bodily resurrection of all who have put their faith in Jesus Christ. All we believe and do is for the glory of God alone. | *vs.* | We believe it is our fundamental right of conscience to direct our own healthcare in consultation with physicians, family, or other valued advisors. |
|---|---|---|---|

As a result of Trinity's representation that it "coordinates sharing support **from within the Baptist community**"[19] to carry out its mission, the RIU asked Trinity whether it "intends to restrict membership to members of self-identified Baptist religious communities." Trinity explained the Federal HCSM statute does not require HCSM members "to rigidly adhere to a particular, in Trinity's case Christian, denomination." Indeed, Trinity stated "[f]undamentally, Trinity's Statement of Beliefs require members to believe in God," (Exhibit 8e, pg. 8).

This is incorrect; there are numerous self-identified Christian groups which could not sign Trinity's Statement of Faith from its bylaws. Rather, Trinity's Statement of Faith is an *explicitly Protestant* expression of the Christian faith and its bylaws state all HCSM members must adhere to it (see bylaws, Art. III.1; in Exhibit 8e, pg. 12):

> ## ARTICLE III
> ### MEMBERSHIP
>
> **Section 1. Age and Gender.** Membership shall not be limited on the basis age or gender. Membership is limited to traditional believers who are volunteers, missionaries, or employees of nonprofit Trinity Healthshare, Inc. ministries, and those who prescribe to the Statement of beliefs at Article II, Section 4, and prescriptions for living a full, healthy and personally spiritual life as contained in the bible and holy writings.

However, the faith statements it actually asks members to agree to in its marketing materials and solicitations bears little resemblance to the Protestant Statement of Faith in its bylaws (see the table, above). Specifically, Trinity's conservative Statement of Faith from its bylaws expresses the following:

1. The statement affirms a Protestant understanding of the Bible as the "final and only source of absolute spiritual authority." This position is at odds with other

---

19. Emphasis mine.

Christian traditions which see the role of tradition, through the precedent of the teaching magisterium of the church, as a legitimate source of authority to interpret the Bible for the people.

2. The statement affirms God is triune, which identifies the God whom Trinity believes in to be an *explicitly monotheistic, Trinitarian* God. This position is at odds with other self-identified Christian groups or renewal movements which explicitly deny the doctrine of the Trinity, such as the Jehovah's Witnesses, the Church of Jesus Christ of Latter Day Saints, and the United Pentecostal Church International, etc.

3. The statement affirms an orthodox view of Jesus Christ as fully God and fully man, in broad agreement with the Council of Chalcedon (451 A.D.). It also affirms the virgin birth, Christ's sinless life, His literal death to atone for sins, His bodily resurrection, and His ascension to heaven to rejoin God the Father.

4. The statement also affirms people can only be saved from eternal death "by grace alone, through faith alone, trusting only in Christ's atoning death and resurrection to save us from our sins and give us eternal life." This is an *explicitly Protestant* interpretation of the doctrine of salvation, as evidenced by the terminology "grace **alone**, through faith **alone**, trusting **only** in Christ's atoning death …"[20] For example, these statements are at odds with the Roman Catholic Church's doctrine of salvation, both in its formal catechism and in the canons and decrees of the Council of Trent.

5. The statement explains Trinity believes in the literal, bodily resurrection "of all who have put their faith in Jesus Christ."

Trinity not only put forth an explicitly Christian statement of faith, but an *explicitly Protestant expression* of the Christian faith and message. This ethos seems to be contradicted by the broader, generic faith statements it obligates its members to agree to. Moreover, Trinity's bylaws state membership is limited to those who prescribe to the statement of faith *in its own bylaws* (see bylaws, Art. III.1; in Exhibit 8e, pg. 12), not the

---

20. Emphasis mine. For further information on the "alone" and "only" statement bolded above, and the distinction between the historic Protestant and Roman Catholic understandings of salvation, see any public source discussion of the context of the "five solas" of the Protestant Reformation – even Wikipedia.

OIC - 039750

OIC - 039782

OIC 7702 Hamburger 042036
OIC 7702 Hamburger 042037

more generic faith statements that Aliera markets to consumers (Exhibit 8e, pg. 10). Trinity's claim that, in essence, it merely requires members to "believe in God" is incorrect.

### iii. **Website:**

Trinity's website, as it appeared on 01/24/19, emphasized the affordability of its plans for consumers (Exhibit 8f). It promotes "an alternative solution to the rising costs of health insurance without sacrificing on great healthcare." The site explains, "Trinity HealthShare is a unique healthcare sharing ministry (HCSM) because it offers membership to persons of all faiths and provides superior healthcare at a competitive price."

Below is a comparison between Trinity's webpage, and the more explicitly religious motivation of another HCSM:[21]



---

21. The image from Samaritan Ministries was captured from https://samaritanministries.org/.

OIC - 039751

OIC - 039783

OIC 7702 Hamburger 042004
OIC 7702 Hamburger 042038



Trinity's "Healthcare Cost Sharing Explained" page compares components of traditional health insurance and HCSMs. It explains, "Trinity Healthshare's medical cost sharing plans provide affordable and effective alternatives for those who believe in individual responsibility, healthy living, and caring for one another," (Exhibit 8g). It goes on, "Trinity HealthShare is a health care sharing ministry and bases its principles of health care upon sharing one another's burdens. With most medical cost sharing plans, individuals come together around a common religious or ethical belief, or both. Members must sign a statement of beliefs in order to join a health care sharing ministry."

On 09/14/18, the ministry's "FAQ" page explained, "becoming a member is simple; complete the membership application process online," (Exhibit 8h, pg. 3). It also related, "Trinity HealthShare welcomes members of all faiths who can honor the Statement of Beliefs, by which the Trinity HealthShare program operates," (Exhibit 8h, pg. 6).

    c.  ANABAPTIST HEALTHSHARE AND UNITY HEALTHSHARE:

        i.  **Background on Unity:**

OIC - 039752

OIC - 039784

OIC 7702 Hamburger 042005

OIC 7702 Hamburger 042039

During previous investigations, RIU learned Aliera formerly contracted with another HCSM, Unity Healthshare ("Unity"). RIU determined Unity was domiciled in Virginia, and obtained publically available documents from the Virginia Secretary of State regarding the entity (Exhibits 9b – 9e). Unity registered as a domestic Virginia corporation on 11/10/16 (Exhibit 9b, pgs. 2-3), and noted its records would be kept at an address identical to Aliera's, in Georgia (Exhibit 9b, pg. 4). RIU cannot find any record that Unity registered as a foreign corporation in the State of Georgia.

On 12/05/17, approximately three weeks after Unity was created, a press release appeared promoting touting Unity and explained the HCSM had the same operating relationship with Aliera that Trinity currently has (Exhibit 9e):

> **About Unity HealthShare**
>
> Unity HealthShare was established as a non-profit 501(c)(3) entity under the Anabaptist HealthShare organization. Members of health-sharing organizations share a common set of ethical or religious beliefs around health and community and further share in each other's medical expenses, unlike traditional health insurance. Aliera markets and sells Unity HCSM products alongside its non-insurance based products providing individuals ACA exemption.

In August 2018, Unity filed both a change of address and registered agent, and changed its name (Exhibits 9b – 9d). As of January 2019, Unity's website (www.unityhealthshare.com) automatically redirects to Trinity's website. Aliera explained that Unity's board terminated its agreement with Aliera (Exhibit 5a, pg. 5), which likely prompted Unity's address, resident agent and name changes.

From the documents RIU obtained during its four various investigations concerning Aliera while it was Unity's marketer, this investigation determined Unity had *precisely* the same generic "faith statements" as Trinity (Exhibits 9j – 9m). The following graphics demonstrate this (Exhibit 9j [pg. 2] from Unity, and Exhibit 5c [pg. 19] from Trinity, respectively):

OIC - 039753

OIC - 039785

OIC 7702 Hamburger 042006

OIC 7702 Hamburger 042040

- **HCSM Programs - Unity HealthShare (UHS) Statement of Beliefs**

At the core of what Unity HealthShare does, and how it relates to and engages with one another as a community of people, is a set of common beliefs.

UHS' Statement of Beliefs are as follows:

1.    We believe that our personal rights and liberties originate from God and are bestowed on us by God.

2.    We believe every individual has a fundamental religious right to worship God in his or her own way.

3.    We believe it is our moral and ethical obligation to assist our fellow man when he/she is in need according to our available resources and opportunity.

4.    We believe it is our spiritual duty to God and our ethical duty to others to maintain a healthy lifestyle and avoid foods, behaviors or habits that produce sickness or disease to ourselves or others.

5.    We believe it is our fundamental right of conscience to direct our own healthcare, in consultation with physicians, family or other valued advisors.

## MEMBERSHIP QUALIFICATIONS

### Statement of Beliefs

At the core of what we do, and how we relate to and engage with one another as a community of people, is a set of common beliefs. Our Statement of Shared Beliefs is as follows:

1. We believe that our personal rights and liberties originate from God and are bestowed on us by God.
2. We believe every individual has a fundamental religious right to worship God in his or her own way.
3. We believe it is our moral and ethical obligation to assist our fellow man when they are in need per our available resources and opportunity.
4. We believe it is our spiritual duty to God and our ethical duty to others to maintain a healthy lifestyle and avoid foods, behaviors, or habits that produce sickness or disease to ourselves or others.
5. We believe it is our fundamental right of conscience to direct our own healthcare in consultation with physicians, family, or other valued advisors.

Given that Trinity replaced Unity as Aliera's HCSM partner, their identical "faith statements" raises reasonable questions about whether Trinity was formed with the express purpose of entering into a marketing agreement with Aliera, and about the veracity of the *nature* (not the content) of its religious ethos.

ii.    **Background on Anabaptist**

RIU queried the Virginia Secretary of State, which provided all documents it possessed regarding Anabaptist Healthshare ("Anabaptist"). The entity was incorporated as a

OIC - 039754

OIC - 039786

OIC 7702 Hamburger 042007

OIC 7702 Hamburger 042041

domestic Virginia corporation on 5/25/15 (Exhibit 9f, pg. 4). The same individual, Tyler Hochstetler, acted as the registered agent for both Anabaptist and Unity.[22]

In its 2018 annual report, Unity listed two Aliera executives as directors (Exhibit 9g). In May 2018, Chase Moses, Aliera's Executive Vice President, submitted Unity's Form 990 for calendar year 2016 (Exhibit 9h). The form explained Anabaptist's purpose was "to provide health care sharing support for the missionaries, volunteers, and employees of conservative Anabaptist ministries and businesses," (Exhibit 9h, pg. 2).

### iii. **Agreement with Aliera**

Aliera provided RIU with a copy of its agreement with Unity (Exhibit 9i), which was signed on 02/01/17, approximately two months after Unity incorporated (Exhibit 9i, pg. 9). The agreement is similar to Trinity's, in that Unity gave Aliera exclusive license to sell and distribute Unity products (Exhibit 9i, pg. 4).

The agreement suggests Unity was formed as an HCSM for *the express purpose* of entering into this agreement with Aliera. It states that, "to facilitate the intent and purpose of this agreement," Anabaptist "has formed a subsidiary named Unity Healthshare, LLC," (Exhibit 9i, pg. 7). Aliera even agreed to reimburse Anabaptist up to $1,000 "for costs directly associated with the creation and filing of a new Section 501(3)(C) *[sic]* 'health share charitable organization' to be known as Unity Healthshare, LLC," (Exhibit 9i, pg. 7).

5. **REVIEW OF EVIDENCE OBTAINED**
    a. DOES TRINITY MEET THE DEFINITION OF A HCSM?

The evidence indicates Trinity does not meet the definition of a HCSM because (1) its representations about its religious convictions are contradictory, (2) it has not been operating as a 501(c)(3) legal entity and sharing member medical needs continuously

---

22. Compare Exhibit 9f, pg. 7 and Exhibit 9a, pg. 4.

OIC - 039755

OIC 7702 Hamburger 042042
OIC 7702 Hamburger 042042

OIC - 039787

since December 31, 1999, and (3) evidence indicates Trinity was formed in 2018 for the express purpose of entering into a marketing agreement with Aliera.

i. **Religious convictions**

OIC's interest is not in the *content* of Trinity's religious ethic; its interest is in the veracity of the *nature* of Trinity's representations *about* this religious motivation. If Trinity and its members do not share a religious or ethical motivation, then it cannot be an HCSM. Trinity's contradictory representations about the *nature* of its religious ethic to State and Federal government agencies and to consumers indicates it either does not understand its religious motivation, or fails to communicate a consistent message about its religious ethic to State and Federal regulators and its own members.

In representations to HHS, the State of Delaware and the OIC, Trinity states it holds to an explicitly conservative, Protestant expression of the Christian faith. Moreover, its bylaws obligate its members to affirm this specific Statement of Faith. However, the faith statements in its marketing materials and solicitations are very different. Indeed, one Aliera-linked trainer explained to prospective agents who will sell the HCSM product, "[i]t basically is saying that you believe in a higher power. It doesn't necessarily have to be a Christian God, or a Buddhist God, or a Jewish God. It doesn't … it doesn't matter as long as we all believe that there is a higher power …"

Trinity incorrectly asserted the Statement of Faith in its bylaws, in essence, simply requires members to "believe in God." This is incorrect; the Statement of Faith requires members to believe in a *very particular expression* of the Christian faith and message. Indeed, they require members to believe in a *very particular* Trinitarian conception of God.

ii. **Legal status since December 31, 1999**

Trinity was incorporated in 2018, and the Federal statute says a HCSM must have been in *continuous* existence sharing member health needs *continuously* since 12/31/1999. Trinity suggests OIC is incorrect to interpret the 1999 date as binding. It acknowledges

its very recent formation date, but states its religious ethos reflects the Baptist tradition of sharing health needs, which dates to at least the 16th century.

However, evidence suggests Trinity was formed for the express purpose of entering into a marketing agreement with Aliera, which was precisely what happened with Aliera's previous HCSM partner, Unity. Trinity incorporated, signed an agreement with Aliera, and brought no HCSM consumers to the agreement. Moreover, it retains virtually no funds from sales, delegates all operations to Aliera, and even yields maintenance, ownership and access to the membership list to Aliera. Unity and Trinity even obligate its HCSM consumers to agree to the *exact same* generic faith statements.

### iii.  Summary

Because (1) it was formed as a legal entity after 12/31/1999 and evidence suggests Trinity was formed for the express purpose of entering into a marketing agreement with Aliera, and (2) Aliera made (and continues to make) numerous contradictory representations about the nature of its religious ethic to consumers, State and Federal regulators, (3) Trinity does not meet the definition of an HCSM, according to RCW 48.43.009. Therefore, Trinity is not exempt from insurance regulation and is acting as an unauthorized insurer (as defined by RCW 48.01.050) which offers a variety of unauthorized disability insurance plans (as defined by RCW 48.11.030), because it undertakes to indemnify a consumer or pay a specified amount upon a determinable contingency of bodily injury, sickness or other health-related matters (see RCW 48.01.040).

Aliera declined to provide detailed information to RIU about the number of Trinity's HCSM products it has sold and the total amount of funds collected (Exhibit 5h). RIU did not elect to then seek the information via a subpoena.

### b.  ARE ALIERA'S ADVERTISEMENTS ABOUT THE TRINITY HCSM OPTIONS FALSE OR MISLEADING?

The evidence indicates this allegation is substantiated.

OIC - 039757

OIC - 039789

OIC 7702 Hamburger 042044
OIC 7702 Hamburger 042044

### i. **Legal basis for the determination**

Because the evidence indicates Trinity is not a HCSM, as defined by RCW and Federal statute, the laws concerning advertising for disability insurance likely apply to Trinity's HCSM products. Regardless of this finding, because these HCSM products mirror disability policies in their *function* (not the legal structure of the entity offering them), it is prudent to use disability advertising statutes to determine whether Trinity and Aliera are providing misleading or deceptive advertisements regarding HCSM products.

To that end, RCW 48.30.040 explains Trinity and Aliera cannot "knowingly make, publish, or disseminate any false, deceptive or misleading representation or advertising in the conduct of the business of insurance." According to WAC 284-50-050(1), the "format and content" of these disability insurance advertisements "shall be sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive." The statute explains that such advertisements "shall be truthful and not misleading in fact or in implication. Words or phrases, the meaning of which is clear only by implication or by familiarity with insurance terminology, shall not be used," (WAC 284-50-050[2]).

Likewise, WAC 284-50-060(1) relates that "[n]o advertisement shall omit information or use words, phrases, statements, references, or illustrations if the omission of such information or use of such … has the capacity, tendency, or effect of misleading or deceiving purchasers or prospective purchasers as to the nature or extent of any policy benefit payable, loss covered, or premium payable." The fact that the consumer later receives plan documents to review "does not remedy misleading statements."

The OIC "shall" determine whether a particular disability advertisement "has a capacity or tendency to mislead or deceive" based on "the overall impression that the advertisement may be reasonably expected to create upon a person of average education or intelligence, within the segment of the public to which it is directed," (WAC 284-50-050[1]).

### ii. **Advertisements are deceptive and misleading**

OIC - 039758

OIC - 039790

OIC 7702 Hamburger 042045
OIC 7702 Hamburger 042045

Evidence indicates Aliera's advertisements for Trinity's HCSM products are deceptive and misleading for both the selling agents and the consumers. The overall impression an average agent or consumer would likely receive from these advertisements and training tools is that the HCSM products are insurance:

- The agent training videos and assessment do not instruct prospective agents to convey the religious/ethical ethos which the RCW and Federal statute envision potential consumers will have. In fact, these tools use statutory and colloquial insurance terminology when describing the HCSM products to new agents who will sell them. This evidence therefore suggests the faith statements and disclaimer at the end of the agent assessment are *pro forma*.

- An Aliera consumer advertisement video promises that Aliera is "redefining the healthcare experience" by putting the "power of choice" in the consumer's hands (Exhibits 4x and 4y). An Aliera's executive explained on television that Aliera has created new "healthcare choices" through innovation (Exhibits 4z and 4aa, 1:05 – 1:20). The television host explained the Aliera executive was there to discuss "healthcare in America" (Exhibits 4z and 4aa, 0:00 – 0:50), and the executive described the HCSM plans for a national television audience without ever mentioning a religious/ethical motivation or caveat. This evidence suggests Aliera's HCSM disclaimers to consumers in its literature are *pro forma*.

In mid-2018, when Unity was Aliera's marketer, RIU received complaints from four consumers who stated the Aliera-contracted agent misrepresented the HCSM product as an insurance plan.[23] Since Trinity became Aliera's HCSM partner, RIU has received a similar complaint against Aliera in which the consumer alleged misrepresentation and explained he was solicited Trinity HCSM products along with actual insurance plans.[24]

---

23. See RIU cases 1560917, 1549758, 1539832 and 1546395. RIU opened each investigation to determine whether Aliera was selling insurance products without a license. Once it became apparent these complaints involved HCSM products, RIU closed each complaint as unsubstantiated. RIU did not make determinations about misrepresentation, because it determined it lacked jurisdiction over HCSM organizations.

24. See RIU case 1598492. The complaint did not cooperate with RIU or respond to requests for further information, and RIU did not open an investigation.

OIC - 039759

OIC 7702 Hamburger 042046
OIC - 039791

OIC 7702 Hamburger 042046

Another consumer related an agent claimed her physician and dentist were "in network," but later discovered this was incorrect.[25]

The evidence indicates Aliera (1) failed to represent Trinity's actual Statement of Faith, as defined by Trinity's bylaws, (2) provided misleading training to prospective agents about the nature of the HCSM products, and (3) provided misleading advertisements to the general public and potential consumers that have the capacity or tendency to mislead or deceive consumers, based on the overall impression that these advertisements may be reasonably expected to create upon a person of average education.

## Conclusions

1.  **The allegation that Trinity does not meet the statutory definition of a HCSM under RCW and Federal statute is substantiated. Trinity is therefore acting as an unauthorized insurer, in violation of RCW 48.05.030.**

The allegation is substantiated because (1) Trinity's representations about its religious convictions are contradictory, (2) it has not been operating as a 501(c)(3) legal entity and sharing member medical needs continuously since December 31, 1999, and (3) evidence indicates Trinity was formed in 2018 for the express purpose of entering into a marketing agreement with Aliera.

2.  **The allegation that Aliera's various advertisements on behalf of Trinity are deceptive and have the capacity and tendency to mislead or deceive consumers to believe they are purchasing insurance rather than a HCSM membership, in violation of RCW 48.30.040, WAC 284-50-050 and 284-50-060, is substantiated.**

The evidence indicates Aliera (1) failed to represent Trinity's actual Statement of Faith, as defined by Trinity's bylaws, (2) provided misleading training to prospective agents

---

25. See RIU case 1595064. RIU directed the consumer to work with Aliera's customer service to resolve the issue, and to contact OIC's Consumer Protection division for advocacy assistance, if necessary.

OIC - 039760

OIC - 039792

OIC 7702 Hamburger 042047
OIC 7702 Hamburger 042047

about the nature of the HCSM products, and (3) provided misleading advertisements to the general public and potential consumers that have the capacity or tendency to mislead or deceive consumers, based on the overall impression that these advertisements may be reasonably expected to create upon a person of average education.


Tyler Robbins
Investigations Manager

**State of Washington**
**Office of Insurance Commissioner**
**Legal Affairs Division**
**Regulatory Investigations Unit**



### *Final Investigative Report*
### *Exhibits List*

| | |
|---|---|
| Exhibit 1 | (09.11.2018) Initial Complaint |
| Exhibit 2 | (12.10.2018) NAIC license details |
| Exhibit 3a | (10.01.2018) NoI to Aliera and Trinity |
| Exhibit 3b | (11.08.2018) NoI to Trinity |
| Exhibit 3c | (02.26.2019) Follow-up Request for Info to Trinity |
| Exhibit 3d | (01.30.2019) Follow-up request to Aliera |
| Exhibit 4a | (12.18.2015) Aliera's Home Registration with Delaware Secretary of State |
| Exhibit 4b | (01.10.2019) Aliera #1 Documents from Delaware |
| Exhibit 4c | (04.28.2016) Aliera's Registration with Georgia Secretary of State |
| Exhibit 4d | (03.20.2017) Aliera Healthcare 2017 Georgia Registration |
| Exhibit 4e | (01.10.2018) Aliera Healthcare 2018 Georgia Registration |
| Exhibit 4f | (03.13.2017) Aliera Healthcare of Georgia Formation |
| Exhibit 4g | (03.14.2018) Aliera of Georgia 2018 Registration |
| Exhibit 4h | (07.05.2017) HealthPass USA Merger with Aliera |
| Exhibit 4i | (09.14.2018) Aliera Brochure for Brokers |
| Exhibit 4j | (11.05.2018) Aliera training portal homepage |
| Exhibit 4k | (09.28.2018) Training Modules Aliera (video) |
| Exhibit 4l | (09.28.2018) Training Modules Aliera (audio) |
| Exhibit 4m | (2016) Aliera Healthcare - Your ACA Solution (from Aliera's broker training site) |
| Exhibit 4n | (2016) Aliera Healthcare - Your ACA Solution (video) |
| Exhibit 4o | (2016) How to Use Your HealthPass Membership (video) |
| Exhibit 4p | (2016) Aliera Healthcare - How to Use Your Membership (from Aliera's broker training site) |
| Exhibit 4q | (2016) How to Activate Membership |
| Exhibit 4r | (2016) How to Activate Your HealthPass Membership (video) |

OIC - 039762

OIC - 039794

OIC 7702 Hamburger 042005

OIC 7702 Hamburger 042049

Exhibit 4s | (11.05.2018) Aliera Agent Assessment
Exhibit 4t | (10.29.2018) Aliera Healthcare Product Overview (video)
Exhibit 4u | (10.29.2018) Aliera Healthcare Product Overview
Exhibit 4v | (11.01.2018) Aliera Healthcare Enrollment Process (video)
Exhibit 4w | (11.01.2018) Aliera Healthcare Enrollment Process
Exhibit 4x | (09.19.2018) Aliera Healthcare - A New Era in Healthcare Choices (video)
Exhibit 4y | (09.19.2018) Alliera Healthcare A New Era in Healthcare Choices
Exhibit 4z | (10.01.2018) Aliera Healthcare featured on The Balancing Act, Lifetime TV (video)
Exhibit 4aa | (10.01.2018) Aliera Healthcare featured on The Balancing Act, Lifetime TV (mp3)
Exhibit 4ab | (2018) Aliera Comprehensive Care Brochure
Exhibit 4ac | (2018) Aliera CarePlus Advantage Brochure
Exhibit 4ad | (2018) Aliera Short-term Care Brochure
Exhibit 4ae | (2018) Trinity Dental and Vision Plan
Exhibit 5a | (10.22.2018) Aliera's First Response to OIC
Exhibit 5b | (10.01.2018) Trinity's 501(c)3 Certificate
Exhibit 5c | (2018) AlieraCare BSG Member Guide
Exhibit 5d | (2018) AlieraCare VPP Member Guide
Exhibit 5e | (2018) CarePlus Member Guide
Exhibit 5f | (2018) InterimCare Member Guide
Exhibit 5g | (11.16.2018) Aliera's Agreement with Trinity
Exhibit 5h | (02.19.2019) Aliera's Second Response to OIC
Exhibit 6a | (06.17.2015) HealthPass USA Articles and Certificate of Organization in Georgia
Exhibit 6b | (2016) HealthPass USA 2016 Annual Registrations in Georgia
Exhibit 6c | (03.30.2017) HealthPass USA 2017 Annual Registration
Exhibit 7a | (11.05.2018) Request to Delaware for Aliera (5045109)
Exhibit 7b | (01.10.2019) Aliera #2 Documents from Delaware
Exhibit 7c | (09.29.2011) Aliera's (#2) Home Registration with Delaware Secretary of State

OIC - 039763

OIC 7702 Hamburger 042050
OIC - 039795
OIC 7702 Hamburger 042050

| | |
|---|---|
| Exhibit 8a | (06.27.2018) Trinity HCSMs Home Registration with Delaware Secretary of State |
| Exhibit 8b | (11.01.2018) Trinity's Registration in Georgia |
| Exhibit 8c | (11.29.2018) Undeliverable Letter to Trinity |
| Exhibit 8d | (12.07.2018) First Response from Trinity |
| Exhibit 8e | (03.11.2019) Second Response from Trinity |
| Exhibit 8f | (01.24.2019) Trinity's Website Home Page |
| Exhibit 8g | (2018) Trinity Health Care Sharing explained |
| Exhibit 8h | (2018) Trinity Healthshare FAQs |
| Exhibit 9a | (11.15.2018) Unity's Incorporation in Virginia |
| Exhibit 9b | (08.08.2018) Unity's Registered Agent Address Change |
| Exhibit 9c | (08.14.2018) Unity's Principal Address Change |
| Exhibit 9d | (08.22.2018) Unity's Principal Address Change |
| Exhibit 9e | (12.05.2017) Press Release for Unity's New Website Launch |
| Exhibit 9f | (11.16.2018) Request to and Response from Virginia About Anabaptist HealthShare Docs |
| Exhibit 9g | (08.08.2018) Anabaptist Healthshare 2018 Annual Report |
| Exhibit 9h | (05.18.2018) Anabaptist HealthShare's Form 990 for 2016 |
| Exhibit 9i | (11.16.2018) Aliera's Agreement with Unity |
| Exhibit 9j | (05.25.2018) 1539832 acknowledgment |
| Exhibit 9k | (06.05.2018) 1546395 acknowledgment |
| Exhibit 9l | (06.05.2018) 1549758 acknowledgment |
| Exhibit 9m | (06.05.2018) 1560917 acknowledgment |

OIC - 039764

OIC 7702 Hamburger 042007
OIC - 039796
OIC 7702 Hamburger 042051

**Exhibit I**

OIC - 039797

OIC 7702 Hamburger 042052

CLOSED,CertRdyTrl,EXH,LONG,SUBMDJ

# U.S. District Court
## Northern District of Georgia (Atlanta)
### CRIMINAL DOCKET FOR CASE #: 1:04-cr-00508-CAP-JMF All Defendants

Case title: USA v. Moses

Date Filed: 09/29/2004
Date Terminated: 02/17/2006

Assigned to: Judge Charles A. Pannell, Jr
Referred to: Magistrate Judge Joel M.
Feldman

Appeals court case number: '06-11316'
'USCA-11th Circuit'

**Defendant (1)**

**Timothy C. Moses**
*TERMINATED: 02/17/2006*

represented by **Timothy C. Moses**
405 N. Errol Court
Atlanta, GA 30327
404-255-0652
PRO SE

**John Richard Martin**
Martin Brothers
44 Broad Street, N.W.
202 Grant Building
Atlanta, GA 30303
404-522-0400
Email: jack@martinbroslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**George Michael Smith**
The Law Office of G. Michael Smith
Building 15, Suite B
8565 Dunwoody Place
Atlanta, GA 30350
404-232-9743
Fax: 404-806-7180
Email: gmichael@scplegal.com
*ATTORNEY TO BE NOTICED*

**Pending Counts**

18:1348(1), 1348(2) and 2 SECURITIES
FRAUD
(1)

**Disposition**

CBOP 78 months. 5 years supervised
release, with standard conditions of
supervision. $200.00 Special Assessment.
$1,650,000.00 Restitution. 5/23/14
Supervised Release REVOKED: CBOP

OIC - 039798[6]

OIC 7702 Hamburger 042053

12/13/2018                                   CM/ECF-GA Northern District Court

|  | FOUR (4) MONTHS with no Supervised Release to follow |
|---|---|
| 18:1621(1) PERJURY GENERALLY (2) | CBOP 60 months, to run concurrently with Count One, for a total term of 78 months. 5 years supervised release, with standard conditions of supervision. $200.00 Special Assessment. $1,650,000.00 Restitution. 5/23/14 Supervised Release REVOKED: CBOP FOUR (4) MONTHS with no Supervised Release to follow |

**Highest Offense Level (Opening)**
Felony

**Terminated Counts**                        **Disposition**
None

**Highest Offense Level (Terminated)**
None

**Complaints**                               **Disposition**
None

**Plaintiff**
**USA**                          represented by   **Paul Monnin**
                                                 Alston & Bird, LLP - Atl
                                                 Suite 4900
                                                 1201 West Peachtree St.
                                                 Atlanta, GA 30309-3424
                                                 404-881-7394
                                                 Fax: 404-881-7777.
                                                 Email: paul.monnin@alston.com
                                                 *TERMINATED: 01/09/2009*
                                                 *LEAD ATTORNEY*

                                                 **Randy Scott Chartash**
                                                 Office of the United States Attorney-
                                                 ATL600
                                                 Northern District of Georgia
                                                 600 United States Courthouse
                                                 75 Ted Turner Dr., S.W.
                                                 Atlanta, GA 30303
                                                 404-581-6009
                                                 Email: randy.chartash@usdoj.gov
                                                 *TERMINATED: 05/15/2014*
                                                 *LEAD ATTORNEY*

                                                 **Raymond Joseph Burby , IV**

OIC - 039799 16

OIC 7702 Hamburger 042054

12/13/2018                                   CM/ECF-GA Northern District Court

Bryan Cave Leighton Paisner LLP - ATL
One Atlantic Center, 14th Floor
1201 West Peachtree St, N.W.
Atlanta, GA 30309-3488
404-572-6815
Fax: 404-572-6999
Email: Joey.Burby@BCLPlaw.com
*TERMINATED: 10/17/2006*
*LEAD ATTORNEY*

**Mary Christine Roemer**
Office of the United States Attorney-
ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6000
Fax: .
Email: mary.roemer@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2004 | 1 | INDICTMENT as to Timothy C. Moses (1) counts 1 and 2, with SPECIAL FINDINGS. (mas) (Entered: 10/01/2004) |
| 09/29/2004 | 2 | Defendant Information Sheet as to Timothy C. Moses. (mas) (Entered: 10/01/2004) |
| 09/29/2004 | 3 | Praecipe file; Arrest Warrant Issued as to Timothy C. Moses and delivered to USM on 9/30/04. (mas) (Entered: 10/01/2004) |
| 10/06/2004 | 4 | Minute Entry for proceedings held before Judge Janet F. King : Initial Appearance held as to Timothy C. Moses (1). Arraignment and Plea of Not Guilty entered for Counts 1, 2. Bond hearing held and Non-surety bond set at $100,000. Bond filed and Defendant released. Case assigned to Julie E. Carnes and Joel M. Feldman. Estimated Trial Time-Long. (Tape #JFK 04-67 @ 336)(ddm) (Entered: 10/07/2004) |
| 10/06/2004 | | Attorney update in case as to Timothy C. Moses. Attorney John Richard Martin for Timothy C. Moses added. (ddm) (Entered: 10/07/2004) |
| 10/06/2004 | 5 | Non-Surety Bond Entered as to Timothy C. Moses in amount of $ $100,000. (ddm) (Entered: 10/07/2004) |
| 10/06/2004 | 6 | ORDER Setting Conditions of Release as to Timothy C. Moses. Signed by Judge Janet F. King on 10/6/04. (ddm) (Entered: 10/07/2004) |
| 10/08/2004 | 7 | Sealed Document (fem) (Entered: 10/08/2004) |
| 10/08/2004 | 8 | Arrest Warrant Returned Executed on 10/6/04 as to Timothy C. Moses. (ddm) (Entered: 10/12/2004) |
| 10/15/2004 | 9 | PRETRIAL SCHEDULING ORDER as to Timothy C. Moses. Pretrial Conference set for 10/22/2004 at 10:30 AM in Courtroom 2022 before Judge Joel M. Feldman. Signed by Judge Joel M. Feldman on 10/15/04. (cc) (ddm) (Entered: 10/15/2004) |
| 10/15/2004 | 10 | PRETRIAL SCHEDULING ORDER as to Timothy C. Moses. Pretrial Conference set for 10/22/2004 10:30 AM in Courtroom 2022 before Judge Joel M. Feldman. Signed by |

OIC - 039800

OIC 7702 Hamburger 042055

| | | Judge Joel M. Feldman on 10/15/04. (pmw) (Entered: 10/15/2004) |
|---|---|---|
| 10/18/2004 | 11 | MOTION for Fifteen Day Extension of Time for filing Pretrial Motions and to Continue Pretrial Conference by Timothy C. Moses. (ddm) (Entered: 10/19/2004) |
| 10/20/2004 | 12 | ORDER granting 11 Motion for Extension of Time to File as to Timothy C. Moses (1) Pretrial Conference set for 11/9/2004 10:30 AM in Courtroom 2022 before Judge Joel M. Feldman; 10/18/04 thru 11/5/04 is herby excluded purs to the provisions of the speedy trial act, 18:3161(h)(8)(B)(i).. Signed by Judge Joel M. Feldman on 10/19/04. (pmw) (Entered: 10/20/2004) |
| 11/05/2004 | 13 | Motion for Twenty-five day Extension of Time for filing Pretrial Motions and to continue Pretrial Conference by Timothy C. Moses. (ddm) (Entered: 11/09/2004) |
| 11/05/2004 | 14 | ORDER GRANTING 13 Motion for Twenty-five day Extension of Time for filing Pretrial Motions and to continue Pretrial Conferene as to Timothy C. Moses (1). The time for filing Pretrial Motions is extended for 25 days, making the Pretrial Motions due on or before November 30, 2004. The Pretrial Conference is rescheduled for December 7, 2004 at 10:30 a.m. The time from October 18, 2004 through December 7, 2004 is hereby excluded pursuant to the provisions of the Speedy Trial Act.Signed by Judge Julie E. Carnes on 11/04/04. (cc) (ddm) (Entered: 11/09/2004) |
| 11/19/2004 | 15 | ORDER OF RECUSAL in case as to Timothy C. Moses, Judge Julie E. Carnes recused. Case reassigned to Judge Charles A. Pannell for all further proceedings. Signed by Judge Julie E. Carnes on 11/19/04. (cc and copy forwarded to CAP) (ddm) (Entered: 11/29/2004) |
| 11/30/2004 | 16 | MOTION for Authority to issue Rule 17 (c) Subpoenas with Incorporated Authority by Timothy C. Moses. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F)(ddm) (Entered: 12/02/2004) |
| 11/30/2004 | 17 | MOTION for Discovery, Inspection, Production and Copying of Evidence, Documents or Information covered by the Rule 16 (E)(i) of the Federal Rules of Criminal Procedure and/or favorable to the accused with Incorporated Authority by Timothy C. Moses. (ddm) (Entered: 12/02/2004) |
| 12/07/2004 | 18 | Minute Entry for proceedings held before Judge Joel M. Feldman :Pretrial Conference held as to Timothy C. Moses, motion for discovery & inspection and motion for authority to issue rule 17(c) supoenas, motions taken under advisement. As to both motions,government's response due on 12/17/04, defendant's reply brief due 10 days thereafter. (Tape #JMF 04-055 @ 2277)(pmw) (Entered: 12/08/2004) |
| 12/07/2004 | | ORDER taking under advisement 16 Motion as to Timothy C. Moses (1); taking under advisement 17 Motion for Discovery as to Timothy C. Moses (1) (see 18 ). Signed by Judge Joel M. Feldman on 12/7/04. (pmw) (Entered: 12/08/2004) |
| 12/17/2004 | 19 | MOTION for Continuance of time to file response to deft's rule 16(a)(1)(E)(i) & rule 17(c) motionsby USA as to Timothy C. Moses. (pmw) (Entered: 12/20/2004) |
| 12/20/2004 | 20 | ORDER granting 19 Motion for Continuance of time to file response to rule 16 & rule 17 motions, response due 12/22/04 as to Timothy C. Moses (1). Signed by Judge Joel M. Feldman on 12/17/04. (pmw) (Entered: 12/20/2004) |
| 12/23/2004 | 21 | RESPONSE in Opposition to 16 MOTION for Authority to issue Rule 17 (c) Subpoenas with Incorporated Authority, and 17 MOTION for Discovery as to Timothy C. Moses, filed by USA. (Attachments: # 1 Appendix - Continuation of Response)(kt) (Entered: 12/29/2004) |
| 01/06/2005 | 22 | ORDER ALLOWING TRAVEL OUTSIDE THE UNITED STATES, as to Timothy C. |

OIC - 039801[16]

OIC 7702 Hamburger 042056

| | | Moses. Signed by Judge Janet F. King on 1/6/05. (kt) (Entered: 01/07/2005) |
|---|---|---|
| 01/14/2005 | 23 | REPLY to Government's Consolidated Response to 17 MOTION for Discovery, as to Timothy C. Moses (kt) (Entered: 01/19/2005) |
| 01/27/2005 | 24 | ORDER denying 16 Motion for Authority to issue Rule 17 (c) Subpoenas, and denying 17 Motion for Discovery Documents or Information covered by the Rule 16 (E)(i) of the Federal Rules of Criminal Procedure, as to Timothy C. Moses (1) . Signed by Judge Joel M. Feldman on 1/27/05. (kt) (Entered: 01/28/2005) |
| 01/27/2005 | 25 | ORDER CERTIFYING CASE READY FOR TRIAL as to Timothy C. Moses. Signed by Judge Joel M. Feldman on 1/27/05. (kt) (Entered: 01/28/2005) |
| 02/10/2005 | 26 | OBJECTION to Magistrate Judge's 24 Order on Rule 17(c) subpoenas and discovery under Rule 16 and Brady, as to Timothy C. Moses. (kt) (Entered: 02/15/2005) |
| 02/24/2005 | 27 | Minute Entry for proceedings held before Judge Charles A. Pannell :In Chambers Conference as to Timothy C. Moses on Defendant's objections to the Magistrate Judge's Order of 1/27/05 24 . Court heard from counsel. Counsel to prepare proposed order on issues re: subpoenas they argee on. Court took remaining issues under ADVISEMENT. (Court Reporter Martha J. Frutchey)(kt) (Entered: 02/28/2005) |
| 02/25/2005 | 29 | MOTION to Continue of trial date by Timothy C. Moses. (kt) (Entered: 03/01/2005) |
| 02/28/2005 | 28 | ORDER TO CONTINUE - Ends of Justice as to Timothy C. Moses Time excluded from 2/28/05 until after the Court has ruled upon Defendant's objections to the Magistrate Judge's 24 Order regarding Rule 17(c) Subpoenas. Signed by Judge Charles A. Pannell on 2/28/05. (kt) (Entered: 03/01/2005) |
| 03/02/2005 | 30 | ORDER as to Timothy C. Moses granting in part and denying in part defendant's 16 MOTION for Authority to issue Rule 17 (c) Subpoenas. Signed by Judge Charles A. Pannell on 03/02/05. (dfb) (Entered: 03/03/2005) |
| 03/11/2005 | 31 | CONSENT ORDER REGARDING RULE 17(c) Subpoenas, as to Timothy C. Moses. Signed by Judge Charles A. Pannell on 3/11/05. (kt) (Entered: 03/14/2005) |
| 05/03/2005 | 32 | TRANSCRIPT of Proceedings regarding in chambers conference as to Timothy C. Moses held on February 24, 2005 before Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (als) (Entered: 05/04/2005) |
| 05/10/2005 | 33 | MOTION to Suppress Defendant's SEC deposition and to Dismiss Counts Count 2, by Timothy C. Moses. (Attachments: # 1 Brief # 2 Memorandum Opinion and Order)(als) (Entered: 05/10/2005) |
| 05/18/2005 | 34 | MOTION for Extension of Time reponse date re: 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress by USA as to Timothy C. Moses. (Burby, Raymond) (Entered: 05/18/2005) |
| 05/20/2005 | 35 | ORDER granting 34 Motion for Extension of Time to file response to dft's motion 33 to suppress and to dismiss as to Timothy C. Moses (1). Response due June 3, 2005. Signed by Judge Charles A. Pannell on 5/19/2005. (yrm) (Entered: 05/20/2005) |
| 05/24/2005 | 36 | NOTICE SETTING TRIAL as to Timothy C. Moses, Jury Trial set for 8/8/2005 09:30 AM in Courtroom 2307 before Judge Charles A. Pannell. (Attachments: # 1Trial Notice# 2Cert of Mailing)(yrm) (Entered: 05/24/2005) |
| 06/02/2005 | 37 | for Leave of Absence for the following date(s): July 22, 2005 to August 2, 2005, by Raymond Joseph Burby, IV. (Burby, Raymond) (Entered: 06/02/2005) |
| 06/03/2005 | 38 | RESPONSE in Opposition as to Timothy C. Moses filed by USA re 33 MOTION to |

OIC - 039802

OIC 7702 Hamburger 042057

| | | |
|---|---|---|
| | | Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress *His SEC Deposition* (Attachments: # 1)(Burby, Raymond) (Entered: 06/03/2005) |
| 06/07/2005 | 39 | NOTICE *of Intent to Offer Evidence Pursuant to Rule 404(b) of the Federal Rules of Evidence* as to Timothy C. Moses (Burby, Raymond) (Entered: 06/07/2005) |
| 06/09/2005 | | Submission of 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress as to Timothy C. Moses, submitted to District Judge Charles A. Pannell. (als) (Entered: 06/09/2005) |
| 06/16/2005 | 40 | ORDER REFERRING to Magistrate Judge Joel M. Feldman, MOTION as to Timothy C. Moses 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress filed by Timothy C. Moses, Signed by Judge Charles A. Pannell on 6/16/2005. (yrm) (Entered: 06/16/2005) |
| 06/16/2005 | | Submission of 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress as to Timothy C. Moses, submitted to Magistrate Judge Joel M. Feldman. (yrm) (Entered: 06/16/2005) |
| 06/24/2005 | 41 | REPLY TO RESPONSE to Motion as to Timothy C. Moses re: 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D (5) Exhibit E (6) Exhibit F (7) Exhibit G) (yrm) (Entered: 06/24/2005) |
| 07/11/2005 | 42 | MOTION to Continue Trial *Unopposed* with Brief In Supportby USA as to Timothy C. Moses. (Attachments: # 1)(Burby, Raymond) (Entered: 07/11/2005) |
| 07/12/2005 | 43 | RESPONSE to 42 MOTION to Continue Trial *Unopposed* filed by Timothy C. Moses. (ddm) (Entered: 07/15/2005) |
| 07/18/2005 | 44 | ORDER granting 42 Motion for Continuance of trial as to Timothy C. Moses (1) Jury Trial re-set for 9/6/2005 09:30 AM in Courtroom 2307 before Judge Charles A. Pannell.. Signed by Judge Charles A. Pannell on 7/18/2005. (yrm) (Entered: 07/18/2005) |
| 07/26/2005 | 45 | MOTION to Compel Production of relevant documents and/or MOTION for In Camera Review by court of relevant documents to determine whether they should be produced by Timothy C. Moses. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F)(als) (Entered: 07/27/2005) |
| 08/01/2005 | 46 | ORDER as to Timothy C. Moses Suppression Hearing set for 8/16/2005 10:30 AM in Courtroom 2022 before Judge Joel M. Feldman. Signed by Judge Joel M. Feldman on 8/1/05. (pmw) (Entered: 08/02/2005) |
| 08/03/2005 | 47 | MOTION in Limine Regarding Proposed Rule 404(b) Evidence with Brief In Support by Timothy C. Moses. (Martin, John) (Entered: 08/03/2005) |
| 08/04/2005 | 48 | Government's Response to the Defendant's 45 Motion to Compel as to Timothy C. Moses (Monnin, Paul) Modified on 8/4/2005 to correct docket text (als). (Entered: 08/04/2005) |
| 08/10/2005 | 49 | NOTICE OF HEARING as to Timothy C. Moses Pretrial Conference set for 8/19/2005 03:30 PM in room 2367 before Judge Charles A. Pannell. (yrm) (Entered: 08/10/2005) |
| 08/16/2005 | 50 | ORDER as to Timothy C. Moses (1) denying 45 Defendant's Motion to Compel Production of Relevant Documents and/or for In Camera Review by Court of Relevant Documents to Determine Whether They Should be Produced. It is hereby further ordered that the unredacted FBI records submitted by the Government shall be filed under seal and be made a part of the record in this matter until such time the Defendant's appeal and habeas rights are exhausted, at which point they shall be returned to the FBI. Signed by Judge Charles A. Pannell on 8/15/05. (ddm) (Entered: 08/16/2005) |

OIC - 039803 16

OIC 7702 Hamburger 042058

| 08/16/2005 | 51 | Sealed Document. (se) (Entered: 08/17/2005) |
|---|---|---|
| 08/17/2005 | 52 | Minute Entry for proceedings held before Judge Joel M. Feldman :Motion Hearing as to Timothy C. Moses on why Defendant is entitled to an evidentiary hearing on 33 MOTION to Suppress SEC deposition testimony. Order to follow. (Tape #JMF 05-36 @ 3964)(ddm) (Entered: 08/18/2005) |
| 08/23/2005 | 53 | Minute Entry for proceedings held before Judge Charles A. Pannell :Pretrial Conference as to Timothy C. Moses.Court heard from counsel on Motion Inlimine 47 . Court took matter under advisement. Trial set for 9/6/05 at 9:30 a.m. (Court Reporter Martha Frutchey)(yrm) (Entered: 08/23/2005) |
| 08/23/2005 | 54 | ORDER as to Timothy C. Moses directing Counsel for the Government to produce documents previously requested by this Court for in camera examination. Signed by Mag Judge Joel M. Feldman on 08/23/05. (dfb) (Entered: 08/24/2005) |
| 08/25/2005 | 55 | Post-Hearing Brief as to Timothy C. Moses re 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress *SEC Deposition* (Martin, John) (Entered: 08/25/2005) |
| 08/31/2005 | 56 | REPORT AND RECOMMENDATION as to Timothy C. Moses (1) recommending Denied 33 MOTION to Dismiss Count 2 and MOTION to Suppress. Signed by Judge Joel M. Feldman on 8/31/05. (Attachments: # 1 Order for Service) (dcs) (Entered: 08/31/2005) |
| 09/01/2005 | 57 | OBJECTIONS TO 56 REPORT AND RECOMMENDATION as to Timothy C. Moses (Martin, John) (Entered: 09/01/2005) |
| 09/02/2005 | 58 | Minute Entry for proceedings held before Judge Charles A. Pannell :Pretrial Conference as to Timothy C. Moses. Counsel allowed additional time to file additional briefs in response to the Magistrate Judge's 56 Report and Recommendation and the 47 Motion in Limine. Jury Trial set for 10/17/2005 09:30 AM in Courtroom 2307 before Judge Charles A. Pannell. The time between now and the trial date shall be excluded from the Speedy Trial Act pursuant to 18 U.S.C. 3161(h)(8)(A)and(B). (Court Reporter Martha J. Frutchey)(dcs) (Entered: 09/06/2005) |
| 09/13/2005 | 59 | RESPONSE as to Timothy C. Moses re: 57 Objections to Report and Recommendation *Government's Response to Defendant's Objections to the Magistrate Judge's Report, Recommendation and Order* (Attachments: # 1)(Burby, Raymond) (Entered: 09/13/2005) |
| 09/20/2005 | | Submission of 56 REPORT AND RECOMMENDATION as to Timothy C. Moses re 33 MOTION to Dismiss Counts Timothy C. Moses (1) Count 2 MOTION to Suppress, recommending Denied as to Timothy C. Moses. submitted to District Judge Charles A. Pannell. (dcs) (Entered: 09/20/2005) |
| 09/21/2005 | 60 | RESPONSE in Opposition as to Timothy C. Moses filed by USA re 47 MOTION in Limine Regarding Proposed Rule 404(b) Evidence (Attachments: # 1 Exhibit)(Monnin, Paul) (Entered: 09/21/2005) |
| 09/26/2005 | 61 | REPLY TO RESPONSE to Motion as to Timothy C. Moses re: 47 MOTION in Limine Regarding Proposed Rule 404(b) Evidence (Martin, John) (Entered: 09/26/2005) |
| 10/12/2005 | 62 | ORDER adopting 56 Report and Recommendation as to Timothy C. Moses (1), denying 33 Motion to Dismiss Counts as to Timothy C. Moses (1); denying 33 Motion to Suppress as to Timothy C. Moses (1); granting 47 Motion in Limine as to Timothy C. Moses (1). Signed by Judge Charles A. Pannell on 10/12/05. (dcs) (Entered: 10/13/2005) |
| 10/13/2005 | 63 | Proposed Jury Instructions as to Timothy C. Moses (Martin, John) (Entered: 10/13/2005) |

OIC - 039804[46]

OIC 7702 Hamburger 042059

| | | |
|---|---|---|
| 10/14/2005 | 64 | Proposed Voir Dire Questions as to Timothy C. Moses by USA. (Burby, Raymond) (Entered: 10/14/2005) |
| 10/16/2005 | 65 | MOTION To Bring Electronic Equipment into Courtroom by USA as to Timothy C. Moses. (Monnin, Paul) (Entered: 10/16/2005) |
| 10/17/2005 | 69 | Minute Entry for proceedings held before Judge Charles A. Pannell:Voir Dire Begun Timothy C. Moses (1) on Count 1,2 (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/24/2005) |
| 10/17/2005 | 70 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial begun as to Timothy C. Moses held on 10/17/2005. Jury Impaneled and Sworn as to Timothy C. Moses. Opening Statements by Counsel. Government's Evidence: B.M. Power, sworn and testified. Government's Exhibits 1-10 and 101, admitted. (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/24/2005) |
| 10/17/2005 | 71 | ORDER granting 65 Motion To Bring Electronic Equipment into Courtroom as to Timothy C. Moses (1). Signed by Judge Charles A. Pannell on 10/17/05. (dcs) (Entered: 10/24/2005) |
| 10/18/2005 | 72 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to Timothy C. Moses held on 10/18/2005. Government's Evidence Continued: Warren Pellegrini; Marcello Villahoz, sworn and testified. Government's Exhibits Admitted. Defendant's Exhibit's Admitted. (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/24/2005) |
| 10/18/2005 | 79 | WITNESS LIST as to Timothy C. Moses filed by USA. (dcs) (Entered: 10/28/2005) |
| 10/18/2005 | 80 | Defendant's EXHIBIT LIST as to Timothy C. Moses (Exhibits placed in Exhibit Room) (dcs) (Entered: 10/28/2005) |
| 10/19/2005 | 73 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to Timothy C. Moses held on 10/19/2005. Government's evidence continued: Jeff Kempter, Dennis Baca, William Cromer, Jon Watson, sworn and testified. Government Exhibits Admitted. (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/24/2005) |
| 10/20/2005 | 66 | Requests to Charge as to Timothy C. Moses filed by USA (Monnin, Paul) Modified docket text on 10/21/2005 to accurately reflect e-filed document. (dfb) (Entered: 10/20/2005) |
| 10/20/2005 | 67 | Proposed Jury Instructions as to Timothy C. Moses (Martin, John) (Entered: 10/20/2005) |
| 10/20/2005 | 74 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to Timothy C. Moses held on 10/20/2005. Government's Evidence Continued: Jon Watson testimony resumed. Jeff Haverty, Deirdre Baker, Steven Hicks, sworn and testified. Government's Exhibits admitted. (Court Reporter Elise Smith Evans)(dcs) (Entered: 10/24/2005) |
| 10/20/2005 | 81 | Government's EXHIBIT LIST as to Timothy C. Moses filed by USA (Exhibit placed in Exhibit Room) (dcs) (Entered: 10/28/2005) |
| 10/21/2005 | 75 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to Timothy C. Moses held on 10/21/2005. Government's evidence continued: Gary Toussaint, Wilbert Myles, John Matthai, Adam Craft sworn and testified. Government's Exhibit Admitted. Defendant's Exhibit Admitted. (Court Reporter Elise Smith Evans) (dcs) (Entered: 10/28/2005) |
| 10/24/2005 | 68 | Proposed Jury Instructions as to Timothy C. Moses (Martin, John) (Entered: 10/24/2005) |
| 10/24/2005 | 76 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to |

OIC - 039805¹⁶

OIC 7702 Hamburger 042060

| | | |
|---|---|---|
| | | Timothy C. Moses held on 10/24/2005. Government's evidence continued. Edward Saunders, Richard Murphy, Jack Stapleton, Stacy McBee sworn and testified. (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/28/2005) |
| 10/24/2005 | 82 | Court EXHIBIT LIST as to Timothy C. Moses (Exhibit placed in Exhibit Room) (dcs) (Entered: 10/28/2005) |
| 10/25/2005 | 77 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to Timothy C. Moses held on 10/25/2005. Government's evidence continued: Graham Loomis, Hugh Cohen, sworn and testified. Government's Exhibit admitted. Government Rests. Defendant's Verbal Motion for Directed Verdict. Court Verbally DENIED the Defendant's Motion. Defendant's Evidence: Edward Brown, John Westrick, Thomas Higgins, sworn and testified. Defendant's Exhibit's admitted. (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/28/2005) |
| 10/25/2005 | | ORAL MOTION for Directed Verdict by Timothy C. Moses. (dcs) (Entered: 10/28/2005) |
| 10/25/2005 | | VERBAL ORDER denying ORAL Motion for Directed Verdict as to Timothy C. Moses (1). Entered by Judge Charles A. Pannell on 10/25/05. (dcs) (Entered: 10/28/2005) |
| 10/25/2005 | 83 | Government's EXHIBIT LIST as to Timothy C. Moses filed by USA (Exhibits placed in Exhibit Room) (dcs) (Entered: 10/28/2005) |
| 10/25/2005 | 84 | Defendant's WITNESS LIST as to Timothy C. Moses. (dcs) (Entered: 10/28/2005) |
| 10/26/2005 | 78 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial held as to Timothy C. Moses held on 10/26/2005. Defendant's evidence continued: Thomas Higgins testimony continued. Michael Brown sworn and testified. Defendant's Exhibit admitted. Defendant rests. Defendant's Oral Renewed Motion for Judgment of Acquital. Court Verbally DENIED Motion. Charge Conference held. Closing arguments by counsel. Defendant Orally moved for Mistrial. Court verbally DENIED the Defendant's Motion. Charge by the Court. (Court Reporter Martha J. Frutchey)(dcs) (Entered: 10/28/2005) |
| 10/26/2005 | | ORAL RENEWED MOTION for Judgment of Acquittal by Timothy C. Moses. (dcs) (Entered: 10/28/2005) |
| 10/26/2005 | | ORAL MOTION for Mistrial by Timothy C. Moses. (dcs) (Entered: 10/28/2005) |
| 10/26/2005 | | VERBAL ORDER denying ORAL Motion for Judgment of Acquittal as to Timothy C. Moses (1); denying ORAL Motion as to Timothy C. Moses (1). Entered by Judge Charles A. Pannell on 10/26/05. (dcs) (Entered: 10/28/2005) |
| 10/27/2005 | 85 | Minute Entry for proceedings held before Judge Charles A. Pannell:Jury Trial concluded as to Timothy C. Moses held on 10/27/2005. Jury Deliberations Began. Jury Verdict of Guilty as to Counts 1 and 2. (Court Reporter Elise Smith Evans)(dcs) (Entered: 10/28/2005) |
| 10/27/2005 | 86 | JURY VERDICT as to Timothy C. Moses (1) Guilty on Count 1,2. (dcs) (Entered: 10/28/2005) |
| 10/27/2005 | 87 | NOTICE OF SENTENCING Set as to Timothy C. Moses. Sentencing set for 1/9/2006 10:30 AM in Courtroom 2307 before Judge Charles A. Pannell. (dcs) (Entered: 10/28/2005) |
| 11/03/2005 | 88 | NOTICE OF SENTENCING Set/Reset as to Timothy C. Moses Sentencing re-set for 1/27/2006 11:00 AM in Courtroom 2307 before Judge Charles A. Pannell. (yrm) (Entered: 11/03/2005) |
| 11/04/2005 | 89 | Notice for Leave of Absence for the following date(s): 11/21/05-11/25/05, by Paul Monnin. (Monnin, Paul) (Entered: 11/04/2005) |

OIC - 039806

OIC 7702 Hamburger 042061

| | | |
|---|---|---|
| 12/06/2005 | 90 | Notice for Leave of Absence for the following date(s): 12/23/05-12/28/05, 4/3/06-4/7/06, by Raymond Joseph Burby, IV. (Burby, Raymond) (Entered: 12/06/2005) |
| 12/16/2005 | 91 | NOTICE OF SENTENCING Set/Reset as to Timothy C. Moses Sentencing re-set for 2/1/2006 04:00 PM in Courtroom 2307 before Judge Charles A. Pannell. (yrm) Additional attachment(s) added on 12/16/2005 (yrm). (Entered: 12/16/2005) |
| 01/30/2006 | 92 | Sentencing Memorandum as to Timothy C. Moses (Martin, John) (Entered: 01/30/2006) |
| 02/05/2006 | 93 | NOTICE OF SENTENCING Set/Reset as to Timothy C. Moses Sentencing re-set for 2/17/2006 09:30 AM in Courtroom 2306 before Judge Charles A. Pannell. (yrm) (Entered: 02/05/2006) |
| 02/16/2006 | 94 | Sentencing Memorandum as to Timothy C. Moses filed by USA (Attachments: # 1 Exhibit A# 2 Exhibit B)(Monnin, Paul) (Entered: 02/16/2006) |
| 02/17/2006 | 95 | Minute Entry for proceedings held before Judge Charles A. Pannell:Sentencing as to Timothy C. Moses. Government's Evidence: Graham Loomis, sworn and testified. Government's Exhibits 1-4 admitted. Defendant's Evidence: Michael Brown, sworn and testified. Defendant's exhibits 1-13 admitted. Defendant verbally moved for downward departure. Court verbally DENIED the defendant's motion. CBOP 78 months. Followed by 5 years supervised release. No fine imposed. $1.65 million in restitution. Defendant given his appeal rights by the Court. Defendant allowed voluntary surrender. (Court Reporter Martha Frutchey)(dcs) (Entered: 02/21/2006) |
| 02/17/2006 | 96 | JUDGMENT AND COMMITMENT as to Timothy C. Moses (1), Count(s) 1, CBOP 78 months. 5 years supervised release, with standard conditions of supervision. $200.00 Special Assessment. $1,650,000.00 Restitution. Defendant allowed voluntary surrender.; Count(s) 2, CBOP 60 months, to run concurrently with Count One, for a total term of 78 months. Signed by Judge Charles A. Pannell on 2/17/06. (dcs) --Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 02/21/2006) |
| 02/17/2006 | 97 | WITNESS LIST as to Timothy C. Moses (dcs) (Entered: 02/22/2006) |
| 02/17/2006 | 98 | EXHIBIT LIST as to Timothy C. Moses (dcs) (Additional attachment(s) added on 11/29/2012: # 1 Defendant's Exhibits) (kac). (Entered: 02/22/2006) |
| 02/17/2006 | | Exhibits as to Timothy C. Moses received from Courtroom Deputy and placed in Exhibit Room. (dcs) (Entered: 02/22/2006) |
| 02/17/2006 | 99 | WITNESS LIST as to Timothy C. Moses filed by USA. (dcs) (Entered: 02/22/2006) |
| 02/17/2006 | 100 | EXHIBIT LIST as to Timothy C. Moses filed by USA (dcs) (Additional attachment(s) added on 11/29/2012: # 1 USA Exhibits 02172006 hearing) (kac). (Entered: 02/22/2006) |
| 02/17/2006 | | Exhibits as to Timothy C. Moses received from Courtroom Deputy and placed in Exhibit Room. (dcs) (Entered: 02/22/2006) |
| 02/23/2006 | 101 | NOTICE OF APPEAL as to Timothy C. Moses re 96 Judgment and Commitment, Filing fee $ 255, receipt number 547821. Transcript Order Form due on 3/9/2006 (ckd) (Entered: 02/23/2006) |
| 02/23/2006 | | Request For Presentence Investigation Report as to Timothy C. Moses re: 101 Notice of Appeal filed on 2/23/06. (ckd) (Entered: 02/23/2006) |
| 02/23/2006 | 102 | Transmission of Certified Copy of Notice of Appeal, J&C and Docket Sheet as to Timothy C. Moses to US Court of Appeals re 101 Notice of Appeal (ckd) (Entered: 02/23/2006) |

OIC - 039807 16

OIC 7702 Hamburger 042062

| 02/28/2006 | 103 | MOTION to Amend/Correct 96 Judgment and Commitment, by Timothy C. Moses. (Martin, John) (Entered: 02/28/2006) |
|---|---|---|
| 02/28/2006 | 104 | USCA Acknowledgment of Receipt of Notice of Appeal as to Timothy C. Moses for 101 Notice of Appeal filed by Timothy C. Moses, Case Appealed to United States Court of Appeals Eleventh Circuit Case Number 06-11316-I (ckd) (Entered: 03/01/2006) |
| 03/01/2006 | | Received PRESENTENCE INVESTIGATION REPORT (Sealed) as to Timothy C. Moses. (se) (Entered: 03/01/2006) |
| 03/01/2006 | 105 | MOTION for Bond Pending Appeal by Timothy C. Moses. (Martin, John) (Entered: 03/01/2006) |
| 03/03/2006 | 106 | TRANSCRIPT ORDER FORM as to Timothy C. Moses for proceedings held on 8/17/05; trial transcripts for 10/17/05 - 10/27/05; Sentence transcript for 2/17/06 before Judge Pannell, re 101 Notice of Appeal. Court Reporter: Martha Frutchey. USCA Appeal Number 06-113161. Financial Arrangements due on 3/17/2006 (fem) (Entered: 03/06/2006) |
| 03/08/2006 | 107 | AMENDED JUDGMENT AND COMMITMENT as to Timothy C. Moses (1) rendered on 2/17/06, be amended and modified on page two as follows: The Court recommends that the defendant be incarcerated in a Camp Facility in or as close to Atlanta, Georgia if possible. Signed by Judge Charles A. Pannell on 3/8/06. (epm) --Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 03/09/2006) |
| 03/16/2006 | 108 | NOTICE OF HEARING ON MOTION as to Timothy C. Moses 105 MOTION for Bond Pending Appeal: Motion Hearing set for 3/22/2006 10:00 AM in Courtroom 2306 before Judge Charles A. Pannell. (yrm) (Entered: 03/16/2006) |
| 03/16/2006 | 109 | RESPONSE in Opposition as to Timothy C. Moses filed by USA re 105 MOTION for Bond Pending Appeal (Monnin, Paul) (Entered: 03/16/2006) |
| 03/21/2006 | 110 | REPLY to RESPONSE to 105 MOTION for Bond Pending Appeal filed by Timothy C. Moses (Martin, John) Modified on 3/24/2006 to accurately reflect e-filed pleading (mas). (Entered: 03/21/2006) |
| 03/21/2006 | 113 | Appeal notice sent to Court Reporter, Martha Frutchey, granting the application for Extension of Time to File Transcripts to and including May 8, 2006 as to Timothy C. Moses re: 101 Notice of Appeal. (kac) (Entered: 03/24/2006) |
| 03/22/2006 | 111 | Minute Entry for proceedings held before Judge Charles A. Pannell : Hearing as to Timothy C. Moses re 105 MOTION for Bond Pending Appeal filed by Timothy C. Moses. Court took matter under advisement. (Court Reporter Martha Frutchey)(yrm) (Entered: 03/22/2006) |
| 03/23/2006 | 112 | ORDER denying 105 Motion for Bond Pending Appeal as to Timothy C. Moses (1). Signed by Judge Charles A. Pannell on 5/22/06. (yrm) (Entered: 03/23/2006) |
| 04/25/2006 | 114 | NOTICE OF VOLUNTARY SURRENDER/REPORTING INFORMATION by USM as to Timothy C. Moses. Defendant is directed to report to FCI Talladega - Camp on May 3, 2006 at 12:00 Noon to begin service of sentence. Reg. No. 56345-019 (epm) (Entered: 04/27/2006) |
| 04/27/2006 | 115 | TRANSCRIPT of Trial Proceedings as to Timothy C. Moses held on 10/17/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 116 | TRANSCRIPT of Trial Proceedings as to Timothy C. Moses held on 10/18/05 before |

OIC - 039808

OIC 7702 Hamburger 042063

| | | |
|---|---|---|
| | | Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (epm) Modified on 4/28/2006 to correct docket text. (epm). (Entered: 04/28/2006) |
| 04/27/2006 | 117 | TRANSCRIPT of Jury Trial Proceedings as to Timothy C. Moses held on 10/19/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Elsie Smith Evans. (epm) Modified on 4/28/2006 to correct docket text. (epm). (Entered: 04/28/2006) |
| 04/27/2006 | 118 | TRANSCRIPT of Jury Trial Proceedings as to Timothy C. Moses held on 10/20/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Elsie Smith Evans. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 119 | TRANSCRIPT of Jury Trial Proceedings as to Timothy C. Moses held on 10/21/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Elsie Smith Evans. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 120 | TRANSCRIPT of Proceedings as to Timothy C. Moses held on 10/24/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 121 | TRANSCRIPT of Trial Proceedings as to Timothy C. Moses held on 10/25/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 122 | TRANSCRIPT of Proceedings as to Timothy C. Moses held on 10/26/05 and 10/27/05 before Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 123 | TRANSCRIPT of Sentencing Hearing as to Timothy C. Moses held on 2/17/06 before Judge Charles A. Pannell, Jr.. Court Reporter: Martha J. Frutchey. (epm) (Entered: 04/28/2006) |
| 04/27/2006 | 124 | Financial Arrangements Completed as to Timothy C. Moses re: 101 Notice of Appeal filed by Timothy C. Moses. Case Appealed to USCA - 11th Circuit. USCA Case Number 06-11316-I. Transcript due by 5/30/2006. (kac) (Entered: 05/01/2006) |
| 05/08/2006 | 126 | TRANSCRIPT of Proceedings as to Timothy C. Moses held on August 17, 2005 before Judge Joel M. Feldman. Court Reporter: Martha J. Frutchey. Certificate of Readiness due on 5/22/2006. (kac) (Entered: 05/10/2006) |
| 05/09/2006 | 125 | Judgment and Commitment Returned Executed by USM as to Timothy C. Moses on 5/03/2006, delivered to FCI TDG. Reg. No. 56345-019 (cdg) (Entered: 05/09/2006) |
| 06/19/2006 | | CERTIFICATE OF READINESS of Record On Appeal re: 101 Notice of Appeal filed by Timothy C. Moses transmitted to USCA. USCA Case Number 06-11316-II. (pjm) (Entered: 06/19/2006) |
| 06/20/2006 | 127 | Certified copy of CERTIFICATE OF READINESS of Record on Appeal transmitted to USCA re: 101 Notice of Appeal. Case Appealed to USCA-11th Circuit Case Number 06-11316-II. (4 Vols. of Pldgs. 1 Filed Under Seal, 1 Expandable Folder of Exhibits, 3 Envelopes of Exhibits- 1 Filed Under Seal, and 11 Transcripts.) (pjm) (Entered: 06/20/2006) |
| 06/28/2006 | 128 | USCA Acknowledgment of COR as to Timothy C. Moses re: 101 Notice of Appeal filed by Timothy C. Moses. Case Appealed to USCA - 11th Circuit. USCA Case Number 06-11316-II. (4 Vols. of Pldgs-1 FILED UNDER SEAL, 11 Transcripts, 1 Expandable Folder of Exhibits, and 3 Envelopes of Exhibits-1 FILED UNDER SEAL (PSI)) (kac) (Entered: 06/30/2006) |
| 09/21/2006 | 129 | FORTHWITH LETTER from USCA re: 101 Notice of Appeal filed by Timothy C. Moses. USCA Case Number 06-11316-II. Appeal Record due by 10/2/2006.(pjm) |

OIC - 039809 16

OIC 7702 Hamburger 042064

| | | (Entered: 09/29/2006) |
|---|---|---|
| 09/29/2006 | 130 | Certified and Transmitted Record on Appeal as to Timothy C. Moses to US Court of Appeals re: 101 Notice of Appeal. (4 Vols. of Pldgs w/ 1 FILED UNDER SEAL, 11 Transcripts, 1 Expandable Folder of Exhibits, and 3 Envelopes of Exhibits w/ 1 FILED UNDER SEAL (PSI)) (pjm) (Entered: 09/29/2006) |
| 10/05/2006 | 131 | USCA Acknowledgment as to Timothy C. Moses re: 101 Notice of Appeal filed by Timothy C. Moses. Case Appealed to USCA-11th Circuit. Case Number 06-11316-II. (pjm) (Entered: 10/06/2006) |
| 10/17/2006 | 132 | MOTION by Raymond Joseph Burby, IV to Withdraw as Attorney for Timothy C. Moses by on behalf of USA as to Timothy C. Moses. (Attachments: # 1 Text of Proposed Order) (Burby, Raymond) (Entered: 10/17/2006) |
| 10/17/2006 | | Attorney update in case as to Timothy C. Moses. Attorney R. Joseph Burby, IV terminated as co-counsel for USA pursuant to 132 Motion. (dfb) (Entered: 05/04/2007) |
| 11/30/2006 | | Submission of 132 MOTION by Raymond Joseph Burby, IV to Withdraw as Attorney for Timothy C. Moses as to Timothy C. Moses, submitted to District Judge Charles A. Pannell. (Submitted Motion only, record on Appeal) (adg) (Entered: 11/30/2006) |
| 02/06/2007 | 133 | JUDGMENT of USCA (certified copy) Timothy C. Moses (1) AFFIRMING Decision of the USDC Count 1,2 re: 101 Notice of Appeal. USCA Appeal Number 06-11316. (pjm) (Entered: 02/07/2007) |
| 02/06/2007 | 134 | Appeal Record Returned as to Timothy C. Moses: 101 Notice of Appeal. (4 Vols. of Pldgs-1 FILED UNDER SEAL, 11 Transcripts, 1 Expandable Folder of Exhibits, and 3 Envelopes of Exhibits-1 FILED UNDER SEAL (PSI)) (pjm) (Entered: 02/07/2007) |
| 12/05/2008 | 135 | Letter from Clerk of Court to John Richard Martin re: Exhibits as to Timothy C. Moses. (adg) (Entered: 12/05/2008) |
| 12/05/2008 | 136 | Letter from Clerk of Court to USA re: Exhibits as to Timothy C. Moses. (adg) (Entered: 12/05/2008) |
| 12/31/2008 | 137 | Letter received from John R. Martin re Exhibits as to Timothy C. Moses. Exhibits to be picked up by Chad Mason by 1/5/2009. (adg) (Entered: 01/05/2009) |
| 01/05/2009 | 138 | Letter received Exhibits as to Timothy C. Moses received by Chad Mason for John Martin. (adg) (Entered: 01/06/2009) |
| 01/09/2009 | | Attorney update in case as to Timothy C. Moses. Attorney Randy Scott Chartash for USA added. Attorney Paul Monnin terminated. (adg) (Entered: 01/09/2009) |
| 01/09/2009 | 139 | Letter from Clerk of Court to USA re Exhibits as to Timothy C. Moses. (adg) (Entered: 01/09/2009) |
| 03/25/2009 | 140 | Acknowledgment of Receipt of Govt's Exhibits as to Timothy C. Moses received by Linda Isaac for USA. (adg) (Entered: 03/25/2009) |
| 11/29/2012 | 141 | NOTICE TO COUNSEL OF RECORD for USA as to Timothy C. Moses regarding RECLAMATION AND DISPOSITION OF UNCLAIMED EXHIBITS pursuant to Local Rule 79.1D(2). (kac) (Entered: 11/29/2012) |
| 11/29/2012 | 142 | NOTICE TO COUNSEL OF RECORD for Timothy C. Moses regarding RECLAMATION AND DISPOSITION OF UNCLAIMED EXHIBITS pursuant to Local Rule 79.1D(2). (kac) (Entered: 11/29/2012) |
| 01/08/2013 | 143 | Exhibits of USA as to Timothy C. Moses retrieved as directed in 141 Exhibit Return Notification. (kac) (Entered: 01/08/2013) |

OIC - 039810

OIC 7702 Hamburger 042065

12/13/2018                                    CM/ECF-GA Northern District Court

| | | |
|---|---|---|
| 01/17/2013 | <u>144</u> | Petition and Order to Modify Conditions of Supervised Release as to Timothy C. Moses. Signed by Judge Charles A. Pannell, Jr on 1/16/2013. (adg) (Entered: 01/18/2013) |
| 10/09/2013 | | Exhibits Defendants 1-13 of Timothy C. Moses Destroyed as directed in <u>142</u> Exhibit Return Notification. (bdb) (Entered: 10/09/2013) |
| 05/07/2014 | <u>145</u> | Petition for Summons to appear 5/19/2014 at 2:00 PM and Order to Show Cause why Supervised Release should not be Revoked as to Timothy C. Moses. Signed by Judge Charles A. Pannell, Jr on 5/5/2014. (adg) (Entered: 05/08/2014) |
| 05/14/2014 | <u>146</u> | NOTICE OF HEARING as to Timothy C. Moses. Revocation of Supervised Release Hearing set for Monday, 5/19/2014 at 02:00 PM in ATLA Courtroom 2307 before Judge Charles A. Pannell Jr. (jtj) (Entered: 05/14/2014) |
| 05/14/2014 | <u>147</u> | NOTICE OF ATTORNEY APPEARANCE: George Michael Smith appearing on behalf of Timothy C. Moses (Smith, George) (Entered: 05/14/2014) |
| 05/15/2014 | <u>148</u> | Certification of Consent to Substitution of Counsel for USA as to Timothy C. Moses. Mary Christine Roemer replacing attorney Randy Scott Chartash. (Roemer, Mary) (Entered: 05/15/2014) |
| 05/19/2014 | <u>149</u> | Minute Entry for proceedings held before Judge Charles A. Pannell, Jr: Hearing re Revocation of Supervised Release as to Timothy C. Moses. Defendant ADMITTED-IN-PART and DENIED-IN-PART ALLEGATIONS as set forth in the petition. Court finds defendant has VIOLATED conditions of Supervised Release, Supervised Release CONTINUED. Shanon Brewer, Timothy Moses, sworn & testified. Govt's exhs 1-3 admitted. Dft's exhs 1-8, 10-13 admitted. Hearing will resume 5/20/2014 at 3:00 p.m. Hearing not concluded. (Court Reporter Debra Bull) (adg) (Entered: 05/20/2014) |
| 05/22/2014 | <u>151</u> | RECEIPT for Exhibits as to Timothy C. Moses received from Courtroom Deputy and placed in Exhibit Room. (Attachments: # <u>1</u> Government Exhibit and Witness List, # <u>2</u> Defendant's Exhibit and Witness List, # <u>3</u> GE 001, # <u>4</u> GE 002, # <u>5</u> GE 003, # <u>6</u> DFT 001, # <u>7</u> DFT 002, # <u>8</u> DFT 003, # <u>9</u> DFT 004, # <u>10</u> DFT 005, # <u>11</u> DFT 006, # <u>12</u> DFT 007, # <u>13</u> DFT 008, # <u>14</u> DFT 010, # <u>15</u> DFT 011, # <u>16</u> DFT 012, # <u>17</u> DFT 013)(kac) (Entered: 05/28/2014) |
| 05/23/2014 | <u>150</u> | ORDER REVOKING SUPERVISED RELEASE - AMENDED JUDGMENT AND COMMITMENT as to Timothy C. Moses (1). IT IS ADJUDGED that the defendant, is hereby committed to Bureau of Prisons for a term four (4) months with no supervised release to follow. The defendant if allowed to self surrender to the United States Marshal on June 16, 2014 no later than 12:00 p.m., unless directed by the Bureau of Prisons to surrender somewhere else. The defendant is not to surrender before June 16, 2014. Signed by Judge Charles A. Pannell, Jr on 5/23/14. --Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (hfm) (Entered: 05/23/2014) |
| 05/23/2014 | | Clerks Certificate of Mailing as to Timothy C. Moses re <u>150</u> Amended Judgment and Commitment. (hfm) (Entered: 05/23/2014) |
| 06/02/2014 | <u>152</u> | Mail Returned as Undeliverable. Mail sent to Timpthy C. Moses re <u>150</u> Amended Judgment and Commitment, marked forward time expired, 700 River Knoll Dr SE, Marietta, GA 30067-4751 (adg) (Entered: 06/04/2014) |
| 06/04/2014 | | Clerks Certificate of Re-mailing <u>150</u> Amended Judgment and Commitment to Timothy C. Moses re to forwarding address. (adg) (Entered: 06/04/2014) |
| 06/10/2014 | <u>153</u> | First MOTION for *Alternative Confinement* by Timothy C. Moses. (Attachments: # <u>1</u> Statement of Material Facts Physican Statement, # <u>2</u> Statement of Material Facts Grady |

OIC - 039811 <sup>16</sup>

OIC 7702 Hamburger 042066

| | | Hospital Records, # 3 Statement of Material Facts Gastroenterology Report, # 4 Statement of Material Facts Northside Hospital (Smith, George) Modified on 6/12/2014 (ATTACHMENTS SEALED) (adg). Modified on 6/20/2014 (adg). (Entered: 06/10/2014) |
|---|---|---|
| 06/12/2014 | 154 | ORDER GRANTING 153 Motion for Alternative Confinement as to Timothy C. Moses (1). The defendant is allowed to self surrender to the USM on 7/15/2014 no later than 12:00pm, unless directed by the BOP to surrender elsewhere. The defendant is not required to surrender before 7/15/2014. It is FURTHER ORDERED that the Clerk serve a copy of this order upon the defendant, defense counsel, probation officer, United States Attorney, and the United States Marshal. Signed by Judge Charles A. Pannell, Jr on 6/12/2014. (adg) (Entered: 06/12/2014) |
| 06/12/2014 | | Clerks Certificate of Mailing as to Timothy C. Moses re 154 Order. Counsel served via NEF,certified copies hand-delivered to USM and USPO. (adg) (Entered: 06/12/2014) |
| 06/13/2014 | 155 | First MOTION to Seal Document 153 by Timothy C. Moses. (Smith, George) (Entered: 06/13/2014) |
| 06/19/2014 | | ORAL ORDER granting 155 Motion to Seal Document as to Timothy C. Moses (1). Entered by Judge Charles A. Pannell, Jr on 6/19/2014. (dcs) (Entered: 06/19/2014) |
| 06/19/2014 | 156 | Mail Returned as Undeliverable. Mail sent to Timpthy C. Moses re 154 Order on Motion for Voluntary Surrender, marked forward time expired, return to sender, 700 River Knoll Dr, SE, Marietta, GA 30067 (adg) (Entered: 06/20/2014) |
| 06/20/2014 | | Clerks Certificate of Re-mailing as to Timothy C. Moses re 154 Order on Motion for Voluntary Surrender, per returned mail. (700 River Knoll Dr SE, Marietta, GA 30067) (adg) (Entered: 06/20/2014) |
| 06/27/2014 | 157 | NOTICE OF VOLUNTARY SURRENDER/REPORTING INFORMATION by USM as to Timothy C. Moses. Defendant is directed to report to FPC Atlanta by NOON, July 15, 2014 to begin service of sentence. Reg No. 56345-019 (adg) (Entered: 07/07/2014) |
| 07/09/2014 | 158 | MOTION to Modify Sentence by Timothy C. Moses. (Attachments: # 1 Exhibit Medical Records) (Smith, George) Modified on 7/10/2014 (adg). (Entered: 07/09/2014) |
| 07/10/2014 | | Submission of 158 MOTION to Modify Sentence as to Timothy C. Moses, submitted to District Judge Charles A. Pannell. (adg) (Entered: 07/10/2014) |
| 07/11/2014 | 159 | ORDER DENYING 158 Motion to Modify Sentence as to Timothy C. Moses (1). However, due to the defendant's current medical condition, the court shall STAY the July 15, 2014 surrender date to the Federal Bureau of Prisons for the confinement portion of his sentence. Defense counsel is directed to file within 45 days a status report of the defendant's medical condition. Signed by Judge Charles A. Pannell, Jr on 7/11/2014. (cc: USMS) (adg) (Entered: 07/11/2014) |
| 07/11/2014 | | Clerks Certificate of Mailing as to Timothy C. Moses re 159 Order. (adg) (Entered: 07/11/2014) |
| 07/17/2014 | 160 | Mail Returned as Undeliverable. Mail sent to Timothy C. Moses re 159 Order, marked forward time expired, return to sender, 700 River Knoll Dr, SE, Marietta, GA 30067-4751. (adg) (Entered: 07/18/2014) |
| 07/18/2014 | | Clerks Certificate of Re-Mailing 159 Order on Motion for Miscellaneous Relief, to Timothy C. Moses at address provided on 160 Returned Mail. (adg) (Entered: 07/18/2014) |
| 09/04/2014 | 161 | STATUS REPORT as to Timothy C. Moses (Smith, George) (Entered: 09/04/2014) |
| 09/17/2014 | 162 | REDACTION as to Timothy C. Moses (Smith, George) (Entered: 09/17/2014) |

OIC - 039812

OIC 7702 Hamburger 042067

| 11/17/2014 | 163 | NOTICE *Medical Records* as to Timothy C. Moses (Smith, George) (Entered: 11/17/2014) |
|---|---|---|
| 02/12/2015 | 164 | STATUS REPORT *Medical Records* as to Timothy C. Moses (Smith, George) (Entered: 02/12/2015) |
| 02/26/2015 | 165 | MOTION to Modify Conditions of Release *or* MOTION for Early Termination of Supervised Release by Timothy C. Moses. (Smith, George). Added MOTION for Early Termination of Supervised Release on 3/2/2015 (adg). (Entered: 02/26/2015) |
| 03/02/2015 | | Submission of 165 MOTION to Modify Conditions of Release *or* MOTION for Early Termination of Probation/Supervised Release as to Timothy C. Moses, submitted to District Judge Charles A. Pannell. (adg) (Entered: 03/02/2015) |
| 03/30/2015 | | ORAL ORDER Directing USA to Respond to 165 Motion to Modify Conditions of Release *or* Motion for Early Termination of Probation/Supervised Release by 4/17/2015 as to Timothy C. Moses. Entered by Judge Charles A. Pannell, Jr on 3/30/2015. (dcs) (Entered: 03/30/2015) |
| 04/17/2015 | 166 | RESPONSE as to Timothy C. Moses filed by USA re: 165 MOTION to Modify Conditions of Release *or* MOTION for Early Termination of Probation/Supervised Release (Roemer, Mary) (Entered: 04/17/2015) |
| 04/20/2015 | | Submission of Order Directing USA to Respond to Motion, 166 Response to Motion as to Timothy C. Moses, submitted to District Judge Charles A. Pannell. (adg) (Entered: 04/20/2015) |
| 04/21/2015 | 167 | ORDER as to Timothy C. Moses re Defendant's 165 Motion to Modify Sentence and Early Termination of Supervised Release. The court hereby VACATES the sentence imposed on 5/20/2014 150 Order Revoking Supervised Release. Defendant's 165 Motion to Modify Sentence and Early Termination of Supervised Release is granted. The defendant's supervised release is hereby terminated. Signed by Judge Charles A. Pannell, Jr. on 4/21/2015. (dfb) (Entered: 04/21/2015) |
| 05/26/2017 | | All GOVERNMENT EXHIBITS held by the Clerk's Office for this case were returned to the U.S. Attorney's Office on April 20, 2017, as to Timothy C. Moses (mec) (Entered: 05/26/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/13/2018 11:05:48 | | |
| **PACER Login:** | alstonbird:4690803:0 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 1:04-cr-00508-CAP-JMF |
| **Billable Pages:** | 14 | **Cost:** | 1.40 |

Page 1 of  5

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**

-vs-                                                     **Case No.  1:04-CR-508-1-CAP**

**TIMOTHY MOSES**

**Defendant's Attorney:**
**John R. Martin**

---

### JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

The defendant was found guilty  on Count(s) 1, 2 of the Indictment.

Accordingly, the defendant is adjudged guilty of such count(s) which involves the following offense:

| Title & Section | Nature of Offense | Count No. |
|---|---|---|
| 18 USC §§ 1348(1), 1348(2)and 2 | Securities Fraud | 1 |
| 18 USC § 1621(1) | Perjury | 2 |

The defendant is sentenced as provided in pages 2 through  5 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay the special assessment of **$ 200.00** which shall be due immediately.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States attorney for this district within thirty days  of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.        2762                    Date of Imposition of Sentence:
Defendant's Date of Birth:         1958                                          February 17, 2006
Defendant's Mailing Address:
Georgia

Signed this the ___17th___ Day of February, 2006.

s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
UNITED STATES DISTRICT JUDGE

OIC - 039814

Page 2 of 5

1:04-CR-508-1-CAP : TIMOTHY MOSES

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **Seventy-Eight (78) months on Count One and Sixty (60) months on Count Two, to run concurrently for a total sentence of 78 months.**

The Court recommends that the defendant be incarcerated in a facility in or as close to Atlanta, Georgia if possible.

The Court recommends that the defendant participate in the 500 Hour Drug/Alcohol Treatment Program while in the custody of Bureau of Prisons.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons as notified by the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
Deputy U.S. Marshal

OIC - 039815

OIC 7702 Hamburger 042070

Page 3 of  5

1:04-CR-508-1-CAP : TIMOTHY MOSES

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **Five (5) years on Count One and Three (3) years on Count Two to run concurrently.**

While on supervised release, the defendant shall not commit another federal, state or local crime and shall not illegally possess a controlled substance.  The defendant shall comply with the standard and special conditions that have been adopted by this court (set forth below).  If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release.  The defendant shall comply with the following additional conditions:

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

The defendant shall not own, possess or have under his control any firearm, dangerous weapon or other destructive device.

The defendant shall submit to a search of his person, property, real or personal, residence, place of business or employment, and/or vehicle(s) at the request of the United States Probation Officer.

The defendant shall make a full and complete disclosure of finances and submit to an audit of financial documents, at the request of the United States Probation Officer.

The defendant shall pay any financial penalty that is imposed by this judgment.

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

The defendant shall perform 100 hours of community service as directed by the probation officer.

Any portion of the fine that is not paid in full at the time of the defendant's release from imprisonment shall become a condition of supervision and be paid at the monthly minimum rate of not less than $300,  plus 25% of the defendant's monthly income in excess of $2,000.

Pursuant to 42 U.S.C. § 14135A(d) and 10 U.S.C. 1565(d), which requires mandatory DNA testing for Federal Offenders convicted of felony offenses, the defendant shall cooperate in the DNA collection as directed by the probation officer.

The defendant shall participate in the drug/alcohol treatment program as directed by the United States Probation Officer and if able, contribute to the cost of services for such treatment.

OIC - 039816

Page 4 of  5

1:04-CR-508-1-CAP : TIMOTHY MOSES

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime.  In addition:

1.      The defendant shall not leave the judicial district without the permission of the court or probation officer;

2.      The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3.      The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4.      The defendant shall support his or her dependents and meet other family responsibilities;

5.      The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6.      The defendant shall notify the probation officer within **72** hours of any change in residence or employment;

7.      The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician, and shall submit to periodic urinalysis tests as directed by the probation officer to determine the use of any controlled substance;

8.      The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9.      The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10.     The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11.     The defendant shall notify the probation officer within **72** hours of being arrested or questioned by a law enforcement officer;

12.     The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13.     As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

OIC - 039817

OIC 7702 Hamburger 042072

Page 5 of  5

1:04-CR-508-1-CAP : TIMOTHY MOSES

## FINE

The Court finds that the defendant does not have the ability to pay a fine and cost of incarceration. The Court will waive the fine and cost of incarceration in this case.

## RESTITUTION

The defendant shall make restitution to the victims in this case in the  amount of $1.65 million to the victims in this case.  A list of the victims will be sent to the U.S. District Court Clerk's Office.

The restitution shall be paid in full immediately.  Any portion of the restitution that is not paid in full at the time of the defendant's release from imprisonment shall become a condition of supervision and be paid at the monthly rate of not less than $300.00, plus 25% of the defendant's monthly income that exceeds $2,000.

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the fine remains unpaid.

OIC - 039818

ND/GA PROB 12C
(6/12)

# UNITED STATES DISTRICT COURT

### for

# NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY - 7 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## Violation Report and Petition For Summons
## for Offender Under Supervision

Name of Offender: **Timothy Moses**                    Docket No. **1:04-CR-508-01-CAP**

Name of Sentencing Judicial Officer: **Honorable Charles A. Pannell, Jr.**

Date of Original Sentence: **February 17, 2006**

Original Offense: **Securities Fraud/18 U.S.C. §§1348(2) and 1621(1)**

Original Sentence: **78 months incarceration followed by 5 years supervised release with special conditions to participate in the 500 hour drug/alcohol program while in the custody of the Bureau of Prisons (completed), firearm restrictions, search, financial disclosure, no new credit, drug testing and treatment, 100 hours of community service (completed), and pay $1.65 million in restitution at a rate of $300 plus 25% of the offender's monthly income that exceeds $2,000.**

Type of Supervision: **Supervised Release**          Date Supervision Commenced: **January 3, 2011**

Assistant U.S. Attorney: **To Be Assigned**          Defense Attorney: **G. Michael Smith**

---

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**

The offender has violated the conditions of supervision as follows:

Moses has failed to follow the instructions of the probation officer by refusing to disclose his financial information as ordered by the Court. He has not provided supporting documents for deposits made to his bank account. On July 22, 2013, Moses was instructed to obtain his own bank account where his deposits and withdrawals could be monitored, which he failed to do.

In July 2012, Moses opened new lines of credit without the approval of his probation officer. Moses denied opening the credit and was instructed to provide proof that he disputed the credit. Further, it took him six months to submit a copy of the letter he stated he would mail to dispute the new line of credit his son allegedly opened. To date, there is no evidence on his credit report of Moses disputing these lines of credit or closing the account.

Moses failed to answer truthfully all inquiries by the probation officer by refusing to answer direct

OIC - 039819

questions regarding his finances.

Moses has failed to provide verification of his employment and income with Ambassador Limousine Services as instructed. He has only provided copies of two paychecks, both in the amount of $300, though he claimed on his written monthly report form to have made significantly more.

On February 17, 2014, Moses accepted employment as a consultant with Physicians Access Care after he was denied permission by the probation officer to be employed in any capacity with this company. He did not notify the probation officer of his employment nor did he provide proof of his employment.

In addition, Moses failed to be truthful on his written monthly report form by not disclosing his income from Physicians Access Care for the months of February and March 2014.

Moses has failed to provide proof that he has filed income taxes while under supervision.

**PREVIOUS VIOLATION(S) REPORTED TO THE COURT:**

On July 25, 2012, a violation report was submitted to the Court for failure to pay restitution. Your Honor agreed with the recommendation to monitor Moses closely, and no further action was taken.

On October 1, 2012, a violation report was submitted to the Court for failure to pay restitution. Moses was given a verbal reprimand, and no further action was taken. Your Honor agreed with the probation officer's recommendation.

On January 16, 2013, a violation report was submitted to the Court for failure to pay restitution. Your Honor modified Moses's restitution payments to $100 per month. He has complied with that order.

**PETITIONING THE COURT TO:**

Issue a Summons for Timothy Moses directing him to appear before the Court at Atlanta, Georgia, on the 19th day of May, 2014, at 2:00 p.m., to show cause why Supervised Release heretofore entered should not be revoked.

I declare under penalty of perjury that the foregoing is true and correct.

_____    5/1/14        _____ 5/1/14
Shannon N. Brewer          Date          Shelley S. Jones              Date
U. S. Probation Officer                  Supervising U.S. Probation Officer

OIC - 039820

**THE COURT ORDERS:**

☒ The issuance of a Summons.

☐ No Action

☐ Other

_____
Honorable Charles A. Pannell, Jr.
Senior U. S. District Court Judge

_____
Date

OIC - 039821

OIC 7702 Hamburger 042076

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    v.

TIMOTHY MOSES

CRIMINAL ACTION
NO. 1:04-CR-508-CAP

ORDER/JUDGMENT

On this 20th day of May, 2014, came the attorney for the government and the defendant appeared in person and with counsel, G. Michael Smith.

A probation officer of this court having moved the court to revoke the supervised release heretofore granted the defendant on February 17, 2006, for the period of (5) five years. The defendant having denied that he violated the terms and conditions of his supervised release, and the court having found that the defendant did violate his conditions of supervised release, it is,

ORDERED BY THE COURT that the supervised release be revoked, and IT IS ADJUDGED that the defendant, having been found guilty of said offense, is hereby committed to Bureau of Prisons for a term four (4) months with no supervised release to follow. The defendant if allowed to self surrender to the United States Marshal on June 16, 2014 no later than 12:00 p.m., unless directed by the Bureau of Prisons to surrender somewhere else. The defendant is not to surrender before June 16, 2014.

IT IS FURTHER ORDERED that the Clerk serve a copy of this Order upon the defendant, defense counsel, Probation Officer, United States Attorney and the United States Marshal.

SO ORDERED, this _23rd_ day of May, 2014.


/s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

2

OIC - 039823

OIC 7702 Hamburger 042078

**Exhibit J**

OIC - 039824

OIC 7702 Hamburger 042079



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "ALIERA HEALTHCARE,
INC.", FILED IN THIS OFFICE ON THE EIGHTEENTH DAY OF DECEMBER,
A.D. 2015, AT 2:10 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

5911418  8100
SR# 20192508840

Authentication: 202595776
Date: 04-08-19

You may verify this certificate online at corp.delaware.gov/authver.shtml

OIC 039825

OIC 7296 hamburger 356

OIC 7702 Hamburger 042080

State of Delaware
Secretary of State
Division of Corporations
Delivered  02:10 PM 12/18/2015
FILED  02:10 PM 12/18/2015
SR  20151437643 - File Number  5911418

# STATE of DELAWARE
## Certificate of Incorporation
## ALIERA HEALTHCARE, INC.
### A Stock Corporation

**ONE**

Name of the corporation is Aliera Healthcare, Inc.

**TWO**

The initial registered agent for the corporation shall be Delaware Business Incorporators, Inc., whose office address is 3422 Old Capitol Trail, Suite 700, Wilmington, New Castle County, Delaware, 19808, the registered agent in charge is Delaware Business Incorporators, Inc.

**THREE**

The Board of Directors shall initially consist of two members and shall not exceed nine members, the names and address of the initial member of the Board of Directors is as follows:

Shelley Steele
(Incorporator)
700 River knoll Drive
Marietta, Georgia 30067

G. Michael Smith, Esq.
8565 Dunwoody Place
Building # 15
Atlanta, Georgia 30350

**FOUR**

The Corporation is authorized to issue Fifty Million (50,000,000) Shares, of common, voting stock, 0.001 par value.

**FIVE**

The Corporation is incorporated to engage in all legal forms of business as contemplated under the General Corporation Law of Delaware, to include but not to be limited by the following expressed purposes, to wit:

OIC 7296 hamburger 355

OIC 039826
TDP 007956

OIC 7702 Hamburger 042081

(a) To engage in the business of providing all models of Health Care to the general public. To use all forms of marketing to include all forms of print, television, radio, electronic media direct mailing to sell or advise of the business interests of the corporation.

(b) To cultivate, generate or otherwise engage in the development of ideas or other businesses.  To buy, own or acquire other businesses, to market and in any way improve the commercial application to the betterment and pecuniary gain of the corporation and its stockholders, and it shall be authorized in connection therewith to carry on any lawful business, not inconsistent with the General Corporation Law of Delaware, and is organized to follow the corporate powers conferred by the General Corporation Law of Delaware or any other applicable State or Federal Codes.

    IN WITNESS WHEREOF, the undersigned for the purpose of forming a corporation under the laws of the State of Delaware, do make, file and record this certificate, and do certify that the facts herein stated are true and I have accordingly hereunto set my hand this 18th day of December, A.D. 2015.

Shelley Steele
Incorporator

G. Michael Smith
Attorney for Incorporator

OIC 039827
OIC TDP 001959
OIC 7296 hamburger 356
OIC 7702 Hamburger 042082

**Exhibit K**

OIC - 039828

OIC 7702 Hamburger 042083



# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "ALIERA HEALTHCARE, INC.", FILED IN THIS OFFICE ON THE EIGHTH DAY OF JUNE, A.D. 2017, AT 1:33 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

5911418  8100
SR# 20192508840

Authentication: 202595775
Date: 04-08-19

You may verify this certificate online at corp.delaware.gov/authver.shtml

OIC D039829

OIC TDP3019564

OIC 7296 hamburger 3552

OIC 7702 Hamburger 042084

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:33 PM 06/08/2017
FILED 01:33 PM 06/08/2017
SR 20174656103 - File Number 5911418

## AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF
## ALIERA HEALTHCARE, INC.

Aliera Healthcare, Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

FIRST: The name of the Corporation is Aliera Healthcare, Inc. The Corporation was incorporated on December 18, 2015.

SECOND: This Amended and Restated Certificate of Incorporation of the Corporation amends and restates the Certificate of Incorporation of the Corporation, and has been adopted and approved in accordance with Sections 242 and 245 of the General Corporation Law of the State of Delaware (the "General Corporation Law"). This Amended and Restated Certificate of Incorporation therefore supersedes the Certificate of Incorporation and Certificate of Amendment previously filed with the Delaware Secretary of State on December 18, 2015. This Amended and Restated Certificate of Incorporation was adopted by the Board of Directors and the stockholders of the Corporation in accordance with Section 242 of the General Corporation Law.

THIRD: The entire text of the Certificate of Incorporation of the Corporation is hereby amended and restated to read in its entirety as follows:

### ARTICLE I

The name of the corporation (hereinafter called "Corporation") is Aliera Healthcare, Inc.

### ARTICLE II

The address of the Corporation's registered office in the State of Delaware is: Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

### ARTICLE III

The purpose for which the Corporation is formed is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law.

### ARTICLE IV

The Corporation is authorized to issue two classes of stock to be designated, respectively, common stock and preferred stock. The total number of shares of all classes of capital stock ("Shares") which the Corporation shall have the authority to issue is 50,000, consisting of 40,000 Shares of common stock having a par value of $0.001 per share (the "Common Stock"), and 10,000 Shares of preferred stock having a par value of $0.001 per share (the "Preferred Stock"). The Board of Directors is authorized, subject to limitations prescribed by law, to provide for the issuance of shares of preferred stock in one or more series, and by filing a certificate pursuant to

29774849 v3

OIC 039830
OIC TDP 007959

OIC 7702 Hamburger 042085

OIC 7296 hamburger 356

the applicable law of the State of Delaware, to establish from time to time the number of shares to be included in each such series, to fix the designation, powers, preferences, and rights of the shares of each such series and the qualifications, limitations, or restrictions of any wholly unissued series of preferred stock and to establish from time to time the number of shares constituting any such series or any of them; and to increase or decrease the number of shares of any series subsequent to the issuance of shares of that series, but not below the number of shares of such series then outstanding. In case the number of shares of any series shall be decreased in accordance with the foregoing sentence, the shares constituting such decrease shall resume the status that they had prior to the adoption of the resolution originally fixing the number of shares of such series.

## ARTICLE V

The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. The number of directors shall be fixed by or in the manner provided in the Bylaws. Any director, or the entire Board of Directors, may be removed, with or without cause, by the holders of a majority of shares of stock then entitled to vote in the election of directors.

## ARTICLE VI

A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of the General Corporation Law; or (iv) for any transaction from which the director derived any improper personal benefit. Neither the repeal or the modification of this Article VII nor the adoption of any provisions of the Certificate of Incorporation of the Corporation inconsistent with this Article VII shall adversely affect the rights of any director of the Corporation with respect to any matter occurring, or any cause of action, suit or claim that, but for this Article VII, would accrue or arise, prior to such repeal, modification or adoption of an inconsistent provision.

## ARTICLE VII

The Certificate of Incorporation of the Corporation may be amended from time to time in accordance with the laws of the State of Delaware then in effect.

I, the undersigned, being the incorporator hereinabove named, for the purpose of forming a corporation pursuant to the General Corporation Law, do make this certificate, hereby declaring and certifying that this is my act and deed and the facts herein stated are true, and accordingly have hereunto set my hand this      day of June, 2017.

_____
Shelley Steele, Authorized Officer

29774849 v3

2

OIC 7296 hamburger 358

OIC 039831
TDP-001936

OIC 7702 Hamburger 042086