**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE ALIERA COMPANIES INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-11548 (JTD)<br><br>Related to ECF No. 17.<br><br>Obj. Deadline: Jan. 6, 2022, at 4:00 P.M. (EST)<br>H'rg Date: Jan. 13, 2022, at 11:00 A.M. (EST) |

**PETITIONING CREDITORS' OBJECTION TO**
**THE ALIERA COMPANIES INC.'S MOTION TO TRANSFER VENUE**
**PURSUANT TO 28 U.S.C. § 1412 AND FED. R. BANKR. P. 1014**

## I.  INTRODUCTION

Petitioning creditors Gerald and Roslyn Jackson, Dean Mellom, and Austin Willard, individually and, with Hanna Albina, on behalf of the classes they represent (collectively "Petitioners"), by counsel, object to the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014, filed by the Debtor, The Aliera Companies, Inc. ("Aliera").

Petitioners and the Certified Classes that they represent are victims of a massive "health insurance" fraud perpetuated by Aliera and its insiders. As Federal District Court Judge Barbara J. Rothstein from the Western District of Washington concluded, Aliera sold fake health insurance in violation of state and federal law:

> The Court finds that defendants have, indeed, violated RCW 48.01.040, .030, and the regulations that have been issued under that by illegally selling health insurance, and by failing to make payments as promised, to the individuals; and, in fact, siphoning off money from … the individuals, so that there are no funds now … to repay the class members for the money that has been taken from them. *Aliera has misused that money and has defrauded these individuals*.

---

[1] The last four digits of the Debtor's federal taxpayer identification number are 9555. The address of the Debtor's principal office is 990 Hammond Drive, Suite 700, Atlanta, Georgia 30328.

*Declaration of Eleanor Hamburger in Support of the Petitioning Creditors' Motion to Transfer Venue of the Later-Filed Voluntary Bankruptcy Cases of The Aliera Companies Inc. and Its Four Affiliates*, D.I. 18-1, *Ex. C* (emphasis added). Judge Rothstein was not alone in concluding that Aliera defrauded consumers – so did Federal District Court Judge Joseph M. Hood in the Eastern District of Kentucky. *See* D.I. 18-1, *Ex. D* ("Aliera misled the class members into entering into contracts for a product that was not what it purported to be and did not comply with applicable federal or state law."). Federal District Court Judge Amy Totenberg in the Northern District of Georgia described Aliera's tainted history as follows:

> Aliera and its affiliates have been investigated, sued, enjoined, and subjected to "cease and desist" orders in several jurisdictions, all of which have determined that Aliera's plans do not qualify as HCSMs and that Aliera is engaged in the unauthorized business of insurance. Aliera has been ordered to cease selling its Unity plans in Maryland, though Aliera has allegedly violated this order by selling Trinity plans. The State of Texas has filed suit against Aliera for engaging in the business of insurance. Aliera has been issued cease and desist orders by the insurance commissioners or insurance departments/divisions in various other states including Washington, New Hampshire, Colorado, and Connecticut, as discussed at length below.

*LeCann v. Aliera Cos.*, No. 1:20-cv-2429-AT, 2021 U.S. Dist. LEXIS 115827, *17-18 (N.D. Ga. June 22, 2021) (citations and footnotes omitted). Aliera left tens of thousands of consumers with massive unpaid medical bills all across the country. The Sharity Members Committee recently filed an adversary proceeding against Aliera and its subsidiaries seeking $574 million in damages incurred as a result of Aliera's fraud.[2]

---

[2] It is unsurprising that Aliera was founded by a convicted felon, Timothy Moses. *See United States v. Moses*, 219 Fed. App'x 847 (11th Cir. 2017) (affirming Moses' conviction for securities fraud and perjury). He was sentenced to over six years in prison. D.I. 18-1, at 8-9, ¶ 49. His supervised release was terminated in April 2015, just six months before Aliera's creation. *Id.* While Mr. Moses' wife, Shelley Steele, incorporated The Aliera Companies in Delaware (D.I. 18-1, Ex. J), Mr. Moses represented that he was Aliera's Executive Director. D.I. 18-2, Ex. L, attachments A and B.

## II.  FACTS

Petitioners have separately filed the *Petitioning Creditors' Motion to Transfer Venue of the Later-Filed Voluntary Bankruptcy Cases of The Aliera Companies Inc. and Its Four Affiliates* to transfer Aliera's later-filed voluntary bankruptcy to this Court. D.I. 18. In that Motion, Petitioners detail the facts behind this involuntary action and the facts supporting venue in this District. *Id.*, at 2-16. Petitioners incorporate those facts into this Opposition, and will not repeat all of them here, but raise additional facts only as necessary to object to this Motion.

Petitioners purchased healthcare plans sold by Aliera that purported to be health care sharing ministry ("HCSM") plans. The plans were sold through Sharity Ministries, Inc. ("Sharity"), an entity Aliera created, or a separate entity, OneShare Health, LLC ("OneShare"). When Aliera failed to pay medical claims, Petitioners sued in cases styled *Jackson et al., v. The Aliera Companies, Inc., et al,* No. 2:19-cv-1281 (J. Rothstein, W.D. Wash), and *Albina et al. v. The Aliera Companies, Inc., et al,* No. 5:20-cv-496-JMH (J. Hood, C.D. Ky) (collectively, the "Lawsuits"). D.I. 18-1, p.1, ¶ 1. Aliera avoided resolution on the merits in those cases by aggressively asserting an arbitration clause that was not received by the Petitioners until after they enrolled in the healthcare plans. *Id.*, p. 2, ¶ 3.

Sharity filed for bankruptcy under Chapter 11 on July 8, 2021 in this District. *In re Sharity Ministries,* No. 21-11001 (JTD). D.I. 18-4, p. 2, ¶ 5. Aliera then moved to stay the Lawsuits, claiming that the claims against it were "inextricably intertwined" with Sharity's bankruptcy and could not be separately adjudicated. *See, e.g.,* D.I. 18-3, p. 280 of 295. Aliera filed an appearance in the Sharity bankruptcy, and asserted a limited objection to Sharity's motion to reject the contracts it had with Aliera's subsidiaries. D.I. 33, 81 in *In re Sharity Ministries.* Sharity noted the outsized role Aliera played in its restructuring efforts in its Opposition to the United States Trustee's Motion to Remove the Debtor in Possession: "Post-Petition, [Sharity] encountered several practical and technical issues disentangling its operations from Aliera. Among other issues, Aliera took the position that it owned certain data and information that was critical to [Sharity's] continued operations …" D.I. 84 in *In re Sharity Ministries,* at 2,¶ 3.

After Sharity filed for bankruptcy, Aliera no longer had a steady stream of income from member's monthly payments, and it ceased operations. Rather than filing a bankruptcy petition, it assigned its assets and liabilities to its hand-picked assignee Katie S. Goodman under Georgia's Assignment for Benefit of Creditors ("ABC") statute. O.C.G.A. § 18-2-40 *et seq.* Under that statute, an assignee has no obligation to set aside fraudulent conveyances or recover preferential payments. O.C.G.A. § 18-2-54 (an assignee "may" attack and set aside fraudulent conveyances or recover property). By letter dated October 17, 2021, the assignee notified creditors that all claims needed to be received by her no later than January 11, 2022, or they would be barred. D.I. 17, p. 127.

Aliera's attorneys withdrew from the Lawsuits. The courts in both Lawsuits granted Aliera time to hire new attorneys, but Aliera failed to do so. Declaration of Eleanor Hamburger, dated Jan. 6, 2022, ¶¶3-4, 8. After giving notice to Aliera, its former attorneys, and the assignee, Petitioners obtained default judgments. *Id.*, ¶¶9-10. Aliera suggests that Petitioners misrepresented to those courts that it intended to participate in the ABC proceeding rather than file an involuntary bankruptcy. It is not clear what difference it would have made to the courts in granting the motions for default judgment in the Lawsuits if the intent was to participate in the ABC proceeding rather than file an involuntary bankruptcy. In any event, it is clear that Judge Rothstein was fully aware of the intent to file an involuntary bankruptcy, and that fact did not deter her from entering the default judgments on an expedited basis. See *id.*, ¶19; Ex. 1.[3]

After receiving approval from this Court, on November 29, 2021, the Committee of Members appointed by the Bankruptcy Court in the Sharity bankruptcy filed an adversary action against Aliera and its four subsidiaries—Advevo, LLC, Ensurian Agency, LLC, Tactic Edge, LLC,

---

[3] Judge Rothstein, not Petitioners, first raised the concept that a default judgment could be imposed if Aliera did not appear with counsel. *See id.,* at 10:13-17. After Judge Rothstein declined to allow Aliera thirty days to find new counsel, Petitioners' counsel suggested fifteen days from the date of the hearing. *Id.,* at 12:8-13:5. Judge Rothstein then suggested that *Jackson* plaintiffs could file their anticipated motions "on an expedited basis." *Id.* at 12:16-18. This colloquy occurred in the presence of Aliera's counsel.

and USA Benefits & Administrators, LLC (collectively, "Subsidiaries")—seeking $574,736,000 in damages. D.I. 305, 313 in *In re Sharity.*

Petitioners filed this involuntary bankruptcy on December 3, 2021. D.I. 1-1. The bankruptcy was served on Aliera and Katie Goodman, the assignee for the benefit of creditors in Georgia, on December 7, 2021. Hamburger Decl., ¶14. Aliera's response to the petition was due on or before December 29, 2021.

Aliera did not disclose its creditors within fourteen days of the filing. *Id.* Instead, Aliera directed its bankruptcy counsel (retained since August 2021),[4] to prepare and file a **second** bankruptcy in the Northern District of Georgia on December 22, 2021. D.I. 18-1, Ex. G. Aliera then filed a motion to transfer venue of the involuntary bankruptcy to the Northern District of Georgia on December 28, 2021. D.I. 17. The very next day, Aliera filed a motion to dismiss the involuntary bankruptcy. D.I. 18. Aliera noted both motions for a hearing on January 13, 2022, and required objections to be filed on January 6, 2022 at 4 pm EST.

Petitioners' counsel raised with Aliera's counsel that its motions were improperly served since the motions were not served on all of Aliera's creditors, which remain undisclosed in this case. Bankruptcy Rule 1014(b) required Aliera to provide all its creditors, not just some of them, with notice of its Motion to Transfer. Fed. R. Bankr. P. 1014(b). No Local Rule modifies this requirement in a manner that would render the service of the Debtor's Motion to Transfer sufficient. According to the certificate of service for Aliera's Motion to Transfer, it did not even serve Aliera's Motion to Transfer or notice thereof on most of the creditors holding the 30 largest unsecured claims. D.I. 21-3.

For the reasons stated in Petitioners' December 29 Motion, and for the reasons stated below, Aliera's bankruptcy belongs in this Court, and Aliera's motion should be denied.

With this Objection, Creditors Nelson Taplin Goldwater, Inc., located in Florida, the holder of a $217,748 undisputed claim and OneShare Health LLC, located in Texas, and the holder of an

---

[4] *See* Hamburger Decl., ¶11.

5

undisputed claim of $3,750,000 submit declarations supporting continued venue in the District of Delaware, with an operative date of December 3, 2021, the date the involuntary bankruptcy was filed. *See* Declaration of Michelle Delaney, Declaration of Buddy Combs. The Sharity Liquidating Trust and multiple states also support this Objection, as does another pair of litigants, Ron and Maria Moeller. Hamburger Decl.,¶18; Morrison Decl. It is likely that other creditors will, as well, once they are properly served with Aliera's motion.

### III.  ARGUMENT

**A.   All Creditors Must Be Served By Aliera Before This Court May Adjudicate Aliera's Motion to Transfer.**

Aliera failed to provide the required notice to creditors of its Motion to Transfer. Bankruptcy Rule 1014(b) requires notice of Aliera's Motion to be served on all "entities entitled to notice under Rule 2002(a)." Rule 2002(a) in turn requires notice on all creditors. These rules are not otherwise limited by the local rules. As the Eleventh Circuit commented on the precursor to Rule 1014(b), "[t]he wisdom of the notice and hearing requirement in Bankruptcy Rule 116(b)(2) is not open to question, however burdensome that duty may be." *In re Griggs*, 679 F.2d 855, 856 (11th Cir. 1982). This notice requirement is confirmed by the Advisory Committee comments on the 2014 amendments to Rule 1014(b):

> Notice of the hearing must be given to **all** debtors, trustees, **creditors**, indenture trustees, and United States trustees in the affected cases, as well as any other entity that the court directs. Because the clerk of the court that makes the determination often may lack access to the names and addresses of entities in other cases, a court may order the moving party to provide notice.

Notes of Advisory Committee on 2014 Amendments, Fed. R. Bankr. P. 1014(b). This makes perfect sense. Since Aliera's motion to transfer raises consideration of which forum will be convenient for the parties, notice must be provided to all parties, including creditors. *See In re Trico Steel Co., L.L.C.*, 261 B.R. 915, 917 (Bankr. N.D. Ohio 2001)(for the purpose of evaluating the "convenience" of a venue under Rule 1014(b), the "parties" include the debtor's creditors). Petitioners provided such notice when they filed their Motion to Transfer. *See* D.I. 18-8. Aliera's

creditors, for the most part, are unaware of Aliera's competing motion without such notice and unaware of the need to file their objections to it by January 6. On this basis alone, Aliera's Motion may be denied.

B.     **Legal Standard For Transferring Venue**

Should the Court reach the merits of Aliera's Motion to Transfer, it does not meet the required legal standard.

There is no question that venue is proper in Delaware, where Aliera is incorporated. 28 U.S.C. § 1408(1). Aliera does not argue otherwise.

Under 28 U.S.C. § 1412, a court may transfer a case or proceeding under Title 11 to a district court for another district, "in the interest of justice or for the convenience of the parties." When considering the convenience of the parties for purposes of transfer of venue, courts look to the following factors: (1) the proximity of creditors of every kind to the Court; (2) the proximity of the debtor to the Court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; and (5) the economic administration of the estate. *In re Enron Corp.,* 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002).

The factor accorded the greatest weight is whether the requested transfer would promote the economic and efficient administration of the estate. *Id; In re Rests. Acquisition I, LLC,* Case No. 15-12406 (KG), 2016 Bankr. LEXIS 684, *7 (D. Del. March 4, 2016).

C.     **Delaware Is the Most Efficient and Economic Venue for the Administration of the Aliera Estate**

Aliera fails to explain how venue in Georgia would promote the efficient and economic administration of the estate. It ignores the fact that administration of its bankruptcy, including resolution of the claims against it, are "inextricably intertwined," as Aliera itself has argued, with the Sharity bankruptcy that is already before this Court. All the members of Sharity with claims against Sharity also have claims against Aliera arising out of the same transactions. Aliera appeared in Sharity's bankruptcy and filed a limited objection to a motion to reject its executory contracts with Sharity. D.I. 81 in *In re Sharity Ministries*. The Sharity Members' Committee filed

an adversary action against Aliera and its subsidiaries, and that action is pending before this Court. These claims and actions involve the same evidence, require testimony from the same witnesses, and are most efficiently handled in the same venue. The four Aliera Subsidiaries have filed proofs of claim in the Sharity bankruptcy totaling over $119,000,000. Hamburger Decl., ¶ 20, Exhs. 2-5.

All the members who have claims against the Sharity estate (now the liquidating trust), also have claims against Aliera. Aliera was the sole entity that sold the Sharity plans to members, received the members' payments, administered the members' health care claims, and paid the providers. At the time Sharity filed its bankruptcy petition, Aliera siphoned off up to 60% of every dollar the members paid in monthly membership fees, leaving Sharity with a grossly underfunded account to pay members' medical claims. D.I. 18-4, ¶ 10 (Luria Declaration). Judicial efficiency requires the Aliera bankruptcy to proceed in the same district as the Sharity bankruptcy. *See Kurz v. EMAK Worldwide, Inc.,* 464 B.R. 635, 640 (D. Del. 2011) (Courts have recognized the strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court).

Moreover, Aliera ignores the significant learning curve that a Georgia court, a Georgia U.S. Trustee, and local counsel for Petitioners and Sharity members and liquidating trustee would face if the matter is transferred. This Court and the Delaware U.S. Trustee, on the other hand, have already been briefed on the unusual nature of the business, the claims of members, and the relationship between Sharity and Aliera. That learning curve should be considered in relation to judicial efficiency. *In re Enron,* 274 B.R. at 349 ("in considering both the efficient administration of the estates and judicial economy, it is also necessary to take account of the 'learning curve.'"). *See also, In re Malden Mills Indus.,* 361 B.R. 1, 10 (Bankr. D. Mass. 2007) (court's familiarity with the facts and litigants favors venue in that court). The learning curve, and judicial economy, tip sharply in favor of retaining venue in Delaware.

Aliera suggests, without evidence, that it would be more efficient to proceed in Georgia because professional fees and travel would be dramatically lower if the case proceeds in Georgia. This Court, however, successfully and seamlessly employs Zoom hearings, eliminating the need for travel for most court hearings. In any event, the list of Aliera's creditors shows that they are

located in Massachusetts, New York, Illinois, California, Texas, Alabama, Arkansas, Virginia, Florida, South Carolina, Oregon, Colorado, Pennsylvania, Missouri, Kentucky, District of Columbia, New Hampshire, North Carolina, Montana, Nebraska, Iowa, Arizona, New Jersey, and South Carolina, in addition to Georgia. If travel were required, there is no reason that travel for most of those creditors would be less expensive if the matter were transferred to Georgia.

**D.  The Other Factors Do Not Favor Transfer of Venue**

*Location of creditors.* Aliera claims that a "plurality" of its creditors is in Georgia. ***First***, that does not appear to be correct. Of the 112 unsecured creditors[5] of Aliera and its Subsidiaries listed on Exhibits A-1 through A-5 to Aliera's Deed of Assignment—a list that includes neither the Petitioners nor the Sharity members—only 17 have Georgia addresses, while 22 have Illinois addresses. D.I. 17, pp. 28-35. Those 17 creditors with Georgia addresses hold less than 10% of the total dollar amount of the claims shown on the Deed of Assignment.[6] If the creditors of the Subsidiaries are excluded, only 13 of the 61 creditors reported on Exhibit A-1 of the ABC filing have Georgia addresses. D.I. 17, pp. 28-29. Those creditors hold only 11% of the debt, excluding the amounts owed to Petitioners and Sharity members.[7] See *In re Enron Corp.,* 274 B.R. 327, 346 (Bankr. S.D.N.Y. 2002) (the fact that approximately one-third of the number of creditors were located in Texas, and approximately one-third of the total amount of debt was held by Texas creditors did not favor transfer of the bankruptcy to Texas). Of the largest 30 creditors listed on Aliera's Bankruptcy Petition, only five, excluding Sharity, are located in Georgia. Those five

---

[5] Aliera has no secured creditors.

[6] The Deed of Assignment shows a total debt of approximately $17,440,000. The total amount of the claims for the 17 unsecured creditors with Georgia address is approximately $1,729,000. The claims of the Petitioners and Sharity are not included in these numbers. Nor does it include the amounts Aliera owes to the states of Washington and Pennsylvania for regulatory violations.

[7] The Deed of Assignment shows Aliera's total debt, excluding the debt of its Subsidiaries, as $15,308,095.48, and the debt of those creditors with addresses in Georgia as $1,643,176.28. That total does not include the claims of Petitioners or Sharity members.

creditors hold only 0.15% of the total claim amounts listed of the 30 largest creditors.[8] D.I. 18-2, pp. 93-96 of 185. Even if the claims of the Petitioners and Sharity are excluded from the denominator, the five creditors with Georgia addresses hold only 8% of the total dollar amount of the remaining 27 largest creditors.

*Second*, and more importantly, the vast majority of the members to whom Aliera sold sham health insurance products live outside Georgia. Fewer than 5% live in Georgia. The remainder reside throughout the country, with over a third living in California, New York or Texas. D.I. 18-4, ¶ 9 (Luria Declaration).

***Location of assets, books, and records.*** The location of assets does not favor venue in Georgia. Aliera has few assets. Its ABC filing reflects that it has no cash, no accounts receivable, no inventory, no real property, and intellectual property of "little or no" or "unknown" value. D.I. 17, at 36. Its office equipment, furniture, computers, hardware and software are minimal—valued at $22,000. *Id*. Aliera argues that its primary assets are "bank deposits and accounts receivable." D.I. 17, at 12. Yet, Aliera's assignee admits that at the time of the assignment, Aliera and the Subsidiaries had "little or no cash." D.I. 17, p. 17, ¶ 3. The Deed of Assignment reflects that the "accounts receivable" are almost entirely amounts it claims are owed to its Subsidiaries by Sharity. D.I. 17, at 37-40. Sharity, of course, has substantial claims against Aliera that have already been asserted in an adversary action before this Court and in connection with the Sharity bankruptcy. Those claims will be resolved in the Sharity bankruptcy that is pending in Delaware.

Aliera's claim that its books and records are located in Georgia is entitled to no weight. "[T]he presence of the books and records in Houston is not a major concern because with modern technology that information, which is ordinarily computerized, can be readily transported via electronic mail." *In re Enron,* 274 B.R. at 348. The same is true here.

---

[8] The five creditors with Georgia addresses are listed with claims totaling $938,638. The total dollar amount of the claims of the 30 largest creditors is $612,059,451. Excluding the claims of Sharity and the Petitioners, the total dollar amount of the next 27 creditors is $11,290,756.

***Georgia's interest.*** Aliera claims the state of Georgia has a substantial public interest in its bankruptcy, but it cites no reason for that substantial public interest other than the fact that some of its creditors are located in Georgia. There is no evidence that Georgia has asserted any regulatory interest in this matter. *Compare*, *In re Innovative Commun. Co.,* LLC, 358 B.R. 120, 128 (U.S. Virgin Islands had a substantial public interest in the bankruptcy of a major local public utility). Even if Georgia did assert a claim—which it has not done—that would not necessarily favor a transfer of venue. *In re Rests. Acquisition I, LLC,* 2016 Bankr. LEXIS 684, at *17 (Texas's interest in resolving state tax disputes in Texas did not override the interests of all other interested parties in the economic administration of the estate). The only case Aliera cites in support of a state's interest in "having local controversies decided within its own borders" is *Hechinger Inv. Co. of Del. v. M.G.H. Home Improvement, Inc.*, 288 G.R. 398, 402-03 (Bankr. D. Del. 2003). In *Hechinger*, the court denied a transfer, noting the action arose under federal law, and there were no complex or novel state law issues raised that would favor a transfer of venue to the home state. Here, too, Aliera cites no complex or novel Georgia law issues that this Court would confront, and there is no particular state interest compelling a transfer to Georgia.

***Aliera's choice of venue.*** Aliera's desire to now proceed in the bankruptcy court in Georgia is entitled to little weight under the facts of this case. Aliera signaled to its creditors its choice to evade legal scrutiny of its finances and its transactions with insiders by filing a Deed of Assignment for benefit of creditors without recognizing the substantial claims of the Petitioners or the Sharity members. The ABC filing signaled to Petitioners that it intended simply to close up shop and fade away without consideration for or payment of the claims of members or Petitioners. If Aliera truly believed that its dissolution should be overseen by a bankruptcy court in Georgia, it would have filed a bankruptcy matter in Georgia to begin with, rather than seek to avoid judicial scrutiny through the ABC process.

## IV.  CONCLUSION

Aliera is defunct. It is out of business and no reorganization will put it back into business. The issue is how to manage the claims against insiders and others that will create a fund to pay its many creditors, including Petitioners and the thousands of members of the healthcare plans that Aliera created. Those claims can be most efficiently and fairly administered in this District, where the issues have already been raised, the attorneys have entered appearances, various states have expended substantial effort in seeking a positive outcome for their residents, and the U.S. Trustee and this Court are already well-advised on the facts and circumstances.

Aliera's motion to transfer venue should be denied.

[*Signature Block Follows on Next Page*]

Dated: January 6, 2021
      Wilmington, Delaware

Respectfully submitted,

*/s/ Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
David W. Giattino (No. 5614)
**STEVENS & LEE, P.C.**
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Tel:    (302) 425-3310 | (302) 425-2608
Fax:   (610) 371-7972 | (610) 371-7988
E-mail:  joseph.huston@stevenslee.com
          david.giattino@stevenslee.com

– and –

Eleanor Hamburger (admitted *pro hac vice*)
**SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC**
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel:    (206) 223-0303
Fax:   (206) 223-0246
E-mail:  ele@sylaw.com

– and –

Cyrus Mehri (admitted *pro hac vice*)
**MEHRI & SKALET, PLLC**
2000 K Street NW, Suite 235
Washington, D.C. 20006
Tel:    (202) 822-5100
Fax:   (202) 822-4997
E-mail:  CMehri@findjustice.com

*Counsel to the Petitioning Creditors*