**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE ALIERA COMPANIES, INC.<br>d/b/a Aliera Healthcare, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11548 (TMH)<br><br>Jointly Administered<br><br>Ref. Docket No. 670 |

**RESPONSE OF THE LIQUIDATING TRUSTEE TO MOTION FOR DECLARATION THAT MONTANA INDIVIDUAL CLAIMS AGAINST STEELE AND TIM AND CHASE MOSES ARE NOT SUBJECT TO STAY**

Aliera LT, LLC, as Liquidating Trustee (the "Aliera Trustee") for The Aliera Companies, Inc., *et al.*, by and through its undersigned counsel, hereby files this response to the *Motion for Declaration that Montana Individual Claims Against Steele and Tim and Chase Moses are Not Subject to Stay* [Docket No. 670] the "Motion") and support hereof respectfully states as follows:

**Preliminary Statement**

1. By this Motion the Court is being asked for a declaration that the case filed by Ron and Maria Moeller (the "Moellers"), in federal court (the "Montana Action") in Montana against Shelley Steele, Tim Moses, and Chase Moses (collectively, the "Individual Defendants"), The Aliera Companies, Inc. ("Aliera"), and Trinity Healthshare, Inc. ("Trinity"), are not subject to the stay in these chapter 11 cases (or the separate Sharity chapter 11 case) and may proceed in Montana to be adjudicated there.

2. The Montana Action, through the *Second Amended Complaint and Demand for Jury Trial* (the "SAC") asserts sixteen counts but does not specify the particular defendant(s)

---

[1] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548), Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic Edge Solutions LLC (2923) (Case No. 22-10122) and USA Benefits & Administrators LLC (5803) (Case No. 22-10121).

ADMIN 698996187v1

subject to each count, or perhaps, more importantly, the applicable Defendant's connection to each count) other than to reference all Defendants.

3. Many of the claims asserted in the Montana Action are either (i) claims the Moellers have asserted against Aliera, which are otherwise subject to the Plan (as defined below) and subject to the proof claim reconciliation process and other provisions set forth therein, or (ii) derivative of claims or Causes of Action (as defined in the Plan)[2] that belong to the Aliera Trustee.

4. Indeed, the proof of claim filed by the Moellers, designated as Claim No. 10011 (the "Moeller POC")[3] relies, with little to no further explanation, on the Second Amended Complaint filed in the Montana Action as its factual support (among other related documents or exhibits).

### Factual Background

**a)** **The Bankruptcy Cases**

5. On December 3, 2021, an involuntary Chapter 11 petition was filed against Aliera in the United States Bankruptcy Court for the District of Delaware (the "Court") initiating an involuntary Chapter 11 case. On December 21, 2021, Aliera and four (4) of its wholly owned subsidiaries, the Debtors herein, each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division initiating the Georgia cases (the "Georgia Bankruptcy Cases"). On

---

[2] **Cause of Action** means any cause of action or claim held by the Debtors, the Estates, the Trust or any of them of any nature or type whatsoever, at law or in equity, against any person or entity, including any Avoidance Action and General Litigation Claim. Plan at § 1.15. **General Litigation Claims** means any pre- or post-petition claims or causes of action held by the Debtors or their Estates that are not expressly released by this Plan provided, for the avoidance of doubt, General Litigation Claims shall not include any causes of action that constitute Avoidance Actions. Plan at § 1.38.

[3] A true and correct copy of the Moeller POC is attached hereto as Exhibit A.

January 25, 2022, the Court entered an Order transferring the venue of the Georgia Bankruptcy Cases to the Court [Docket No. 67].

6.     The Debtors' bankruptcies are being jointly administered for procedural purposes only, pursuant to an Order the Court entered on February 17, 2022 [Docket No. 80].  On February 21, 2022, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 92].

**b)     The Chapter 11 Plan[4]**

7.     The *Combined First Amended Disclosure Statement and Plan of Liquidation* (the "Plan") was filed jointly by the Debtors and the Committee on May 15, 2023 [Docket No. 454]. The Plan provides for the creation of a Liquidating Trust which shall be governed by the trust Agreement, the Plan and the Confirmation Order.  The primary purpose of the Liquidating Trust will be to collect and distribute proceeds to the holders of unsecured claims as well as to prosecute causes of action assigned to the Liquidating Trust.

8.     Pursuant to the Plan, the Aliera Trustee was designated the liquidating trustee to represent, in a fiduciary capacity, the interests of creditors and as such was given the authority to administer the Liquidating Trust assets, make certain distributions, and take such other actions as are necessary to carry out the purposes of the Liquidating Trust.

9.     On August 17, 2023, the Court entered *Findings of Fact, Conclusions of Law, and Order Confirming the Modified First Amended Chapter 11 Plan of Liquidation* [Docket No. 576] (the "Confirmation Order") and on September 6, 2023, the Trustee filed the *Notice of (I) Entry of Order Confirming the Modified First Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code and (II) Occurrence of Effective Date* [Docket No. 584] (the "Effective Date").

---

[4] Capitalized terms used in this section not otherwise defined shall have the meanings ascribed to them in the Plan.

Following the Effective Date, the ability to control the disposition and activities in the Chapter 11 Cases is in the hands of the Trustee.

**c)** **<u>The Claims Asserted In The Montana Action</u>**

10. The Second Amended Complaint filed in the Montana Action includes counts for breach of contract (Count I), unfair claim settlement practices (Count II), fraudulent inducement (Count III), deceit (Count IV), constructive fraud (Count V), negligent misrepresentation (Count VI), common law bad faith (Count VII), negligence (Count VIII), negligence *per se* (Count IX), breach of fiduciary duty (Count X), Consumer Protection Act (Count XI), joint tortious enterprise (Count XII), malice (Count XIII), promissory estoppel (Count XIV), equitable estoppel (Count XV), and alter ego (Count XVI).

**d)** **<u>The Relevant Provisions Of The Confirmation Order And Confirmed Plan</u>**

11. Section 8.9 of the Plan provides, in relevant part, that

> All Causes of Action against current and former Insiders are reserved. The Debtors, the Committee, and the Liquidating Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person…
>
> Except as otherwise set forth in the Plan, **the <u>Liquidating Trustee shall have the sole and exclusive authority and standing</u> to commence and prosecute Causes of Action of the Debtors and Estates for the benefit of Creditors and/or holders of Trust Beneficial Interests**.

Plan at Section 8.9 (emphasis added).

12. The Confirmation Order provides, in relevant part:

> <u>Vesting of Assets</u> 9. Except as otherwise provided in the Plan, on and after the Effective Date, all Assets of the Estates, including **all claims, rights, Causes of Action and any property acquired by the Debtors under or in connection with the Plan, shall vest in the Trust free and clear of all Claims, Liens, charges, other encumbrances, and Interests.**
>
> <u>Preservation of Causes of Action</u> 10. Except as expressly provided in the Plan or this Confirmation Order: (i) in accordance with section 1123(b)(3) of the Bankruptcy Code, all Causes of Action of the Debtors including Avoidance Actions and General Litigation Claims, shall survive confirmation of this Plan; and

(ii) the Liquidating Trustee shall have, retain, reserve and be entitled to assert all such Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan, this Confirmation Order, or any Final Order (including settlement or other agreements authorized thereby) may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

<u>Reservation of Causes of Action</u> 11. Unless a Cause of Action against a Holder or other Person or Entity is expressly waived, relinquished, released, compromised or settled in the Plan, the Confirmation Order or any Final Order, the Debtors, the Liquidating Trustee, and the Estates expressly reserve such Cause of Action for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), laches or the like shall apply to such Causes of Action upon or after the entry of this Confirmation Order or Effective Date based on the Combined Plan and Disclosure Statement or this Confirmation Order, except where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan, this Confirmation Order, a Final Order of the Bankruptcy Court or, following the Effective Date, in a written agreement duly executed by the Liquidating Trustee, which agreement, by its terms, is not subject to Bankruptcy Court approval.

Confirmation Order at ¶¶ 9-11 (emphasis added).

13. Paragraphs 26 and 19 of the Confirmation Order further provide, in pertinent part and respectively, that:

Except as otherwise specifically provided in the Plan, this Confirmation Order and the Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the authority (i) to file, withdraw, or litigate to judgment objections to Claims; (ii) to settle, compromise, or Allow any Claim or Disputed Claim…

The Liquidating Trustee shall have all powers, rights, duties and protections afforded to the Liquidating Trustee under the Plan, this Confirmation Order, and the Trust Agreement.

Confirmation Order at ¶¶ 26, 19.

14. Finally, paragraph 32 of the Confirmation Order approved the injunction provisions of Section 13.3 of the Plan, which provides that:

> as of the Effective Date all Persons that hold a Claim are permanently enjoined from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding … as against any of the Assets to be distributed under this Plan or any other Trust Assets;…

Confirmation Order at § 32.

**Objection**

15. As noted above, many of the claims asserted in the Montana Action are either (i) claims the Moellers have also asserted against Aliera, which are otherwise subject to the Plan and subject to the proof claim reconciliation process and other provisions set forth therein, or (ii) derivative of claims or Causes of Action (as defined in the Plan) that belong to the Aliera Trustee.

a) **The Montana Court Cannot Adjudicate the Moeller POC**

16. Given that the SAC is attached verbatim in support of the Moeller POC, there is no daylight between those claims. Therefore, the Moeller POC, insofar as it asserts claims against the Debtors, and by necessary extension the Montana Action, are subject to Paragraph 26 of the Confirmation Order and Section 11.13 of the Plan, which together grant the Aliera Trustee the authority to file, withdraw, or litigate to judgment objections to Claims; (ii) to settle, compromise, or Allow any Claim or Disputed Claim. As a result, the Montana Court, with respect, does not have authority to adjudicate the Moeller POC or the claims in the SAC against Debtor Aliera.

b) **The Moellers Cannot Usurp and/or Prosecute Plan Causes of Action**

17. As a threshold matter, "[a]fter a company files for bankruptcy, 'creditors lack standing to assert claims that are property of the estate." In re Maxus Energy Corp., 571 B.R. 650, 656 (Bankr. D. Del. 2017). This Court has established a two-part test for determining whether

a claim constitutes property of the bankruptcy estate: (1) the claim must be one that both existed at the commencement of the filing and that the trustee could have asserted on his own behalf under applicable state law; *and* (2) the claim must be a general one, with no particularized injury arising from it. Id. at 658.

18. Again, because the SAC does not specify the applicable Defendant's connection to each count, other than to reference all Defendants, it is difficult to determine exactly where the Moellers are or may be asserting claims or cause of action that belong to the Aliera Trustee. In any event, any claim contained in the Montana Action or Moeller POC, which asserts an estate Cause of Action under the Plan, cannot be prosecuted by any party other than the Aliera Trustee.

19. In Emoral, the Third Circuit explained that where a claim is "a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014) (citing St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989)).

20. While the Motion forcibly argues that the Moellers' claims are "very personal" claims that "relate to the Moellers' reliance on misrepresentations about the coverage to the claims that redress wrongful denial of Maria's cancer coverage; whether the claims demand payment of promised benefits or seek compensation for the emotional distress that Ron and Maria both suffered as they were forced to grapple with enormous medical bills while Maria was fighting for her life," the reality is that most of the claims are not sufficiently particularized from than the claims asserted by thousands of creditors against the Debtors' estates.

21. In sum, the Aliera Trustee is working diligently on behalf of all claimants, including the Moellers. The Montana Litigation involves claims which are, by definition, based

on facts and circumstances identical to those underlying the claims asserted in the Moeller POC in these chapter 11 cases. The Moeller POC should be determined and allowed or disallowed, as appropriate, by this Court, and only this Court.

22. The Montana Action also overlaps with claims brought by (or vested in) the Aliera Trustee against the Individual Defendants, which claims do not belong to the Moellers. Granting the Motion as presented could result in potentially inconsistent verdicts, judgments, or orders as well as the loss of litigation claims which are of significant value to the Debtors' estates.

## Conclusion

WHEREFORE, for the foregoing reasons, the Aliera Trustee respectfully requests that this Court deny the Motion as set forth herein.

Dated: February 17, 2025
Wilmington, Delaware

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: Dennis.Meloro@gtlaw.com

- and -

John D. Elrod (admitted *pro hac vice*)
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2259
Facsimile: (678) 553-2269
Email: ElrodJ@gtlaw.com

*Counsel for Aliera LT, LLC, as Liquidating Trustee for The Aliera Companies, Inc., et al.*