### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE ALIERA COMPANIES, INC. d/b/a Aliera Healthcare, Inc., et al.[1] | Case No. 21-11548 (TMH) (Jointly Administered) |
| Debtors. | |
| In re: | Chapter 11 (Subchapter V) |
| SHARITY MINISTRIES, INC.,[2] | Case No. 21-11001 (TMH) |
| Debtor. | |

### OPINION AND ORDER

Before the Court are Ron and Maria Moeller's (the "Moellers") motions for a

declaration that they are free to pursue certain claims against Shelley Steele, Tim

Moses, and Chase Moses (the "Individual Defendants") in federal district court in

Montana (the "Montana Court").[3] Specifically, in the Motion, the Moellers ask the

---

[1] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548), Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic Edge Solutions LLC (2923) (Case No. 22- 10122), and USA Benefits & Administrators LLC (5803) (Case No. 22- 10121).

[2] The last four digits of the Debtor's federal tax identification number is 0344. The Debtor's mailing address is 821 Atlanta Street, Suite 124, Roswell, GA 30075.

[3] The Moellers filed identical motions in the above-captioned bankruptcy cases. See Motion for Declaration that Montana Individual Claims Against Steele and Tim and Chase Moses are Not Subject to the Stay (In re Aliera Companies, Inc., Case No. 21-11548 (TMH) [D.I. 670] and In re Sharity Ministries, Inc., Case No. 21-11001 (TMH) [D.I. 553]. Collectively, the motions are identified herein as the "Motion."

Court to find that the sixteen claims against the Individual Defendants in the Moellers' Montana complaint (the "Second Amended Complaint" or "Complaint") are not property of the Sharity and Aliera bankruptcy estates and thus that the Moellers may pursue those claims without violating the injunctions set forth in the Aliera and Sharity Plans of Liquidation (the "Plans").[4]

After a debtor files for bankruptcy, creditors lose standing to assert any estate claims against third parties.[5] Only the debtor-in-possession or trustee, as the case may be, is authorized to pursue those claims.[6] A creditor pursuing such an estate claim would violate the Plans' injunctions. Under the Third Circuit's decision in In re Emoral, such claims are part of the estate and thus not available for creditors to pursue when (1) those claims existed at the time of the petition filing and the debtor could have asserted them under state law and (2) the claims are general among creditors.[7] If the claims fail under either element, then they are pursuable. Under the first element of the test, alter ego or veil-piercing claims are of the kind that the debtor could have asserted prior to its bankruptcy case.[8] Under the second part of this test, a debtor could have asserted a claim on its own behalf

---

[4] The Complaint is pending in an action titled Maria Moeller and Ron Moeller v. The Aliera Companies, Inc.; Trinity Healthcare, Inc.; Timothy Moses, Shelley Steele, Chase Moses, and Does 1-10, Case No. 6:20-cv-00022-SHE (D. Mont.).

[5] Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002).

[6] In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014).

[7] Id.

[8] In re TPC Grp. Inc., No. 22-10493, 2023 WL 2168045, at *6 (Bankr. D. Del. Feb. 22, 2023).

when that claim is a "general" one, meaning that the theory of liability is general among creditors rather than particular to certain creditors.[9]

In arguing the claims are available to pursue, the Moellers contend that each of their sixteen claims is particular to them because the injuries they suffered were specific to them.[10] Conversely, the Individual Defendants contend that they did not act independently from the Debtors and that the injuries the Moellers suffered are similar to the injuries of other similarly situated creditors, meaning that the resulting claims are general and thus part of the estates.[11]

Both parties somewhat misapply the law under <u>Emoral</u> and associated cases, and the Second Amended Complaint contains allegations that muddy the waters further. The primary problem with the Second Amended Complaint is that its allegations are against both the Individual Defendants and the Debtors, and the allegations sometimes are unclear as to whether they are based on the independent tortious conduct of the Individual Defendants or based on their actions as the Debtors' alter ego.[12]

---

[9] <u>In re Maxus Energy Corp.</u>, 571 B.R. 650, 660 (Bankr. D. Del. 2017).

[10] Motion for Declaration that Montana Individual Claims Against Steele and Tim and Chase Moses Are Not Subject to Stay 5 [hereinafter D.I. 553].

[11] Objection of Shelley Steele, Tim Moses and Chase Moses to Motion for Declaration that Montana Individual Claims Against Steele and Tim and Chase Moses Are Not Subject to Stay 4–10 [hereinafter D.I. 566].

[12] Second Amended Complaint, <u>Maria Moeller and Ron Moeller v. The Aliera Companies, Inc.; Trinity Healthcare, Inc.; Timothy Moses, Shelley Steele, Chase Moses, and Does 1-10</u>, Case No. 6:20-cv-00022-SHE, 3 (D. Mont.) (The Moellers describe the Individual Defendants as the "alter ego of Aliera and Sharity.").

To comply with the injunctive language in the Plans, the Moellers cannot pursue claims that belong to the Debtors' estates. Despite the ambiguity of the Second Amended Complaint, this Court has been able to determine that Counts I, XII, and XIII are not enjoined, and the Moellers may pursue them. However, they cannot pursue Count II because it is not assertable against the Individual Defendants and Count XVI because it is an alter ego claim that belongs to the estates. The Second Amended Complaint, however, lacks the specificity and clarity adequate for this Court to discern whether Counts III, IV, V, VI, VII, VII, IX, X, XI, XIV, and XV (the "<u>Remaining Claims</u>") are or are not enjoined. The question of what to do with the Remaining Claims must nonetheless be answered. The Court resolves the ambiguity of the Remaining Claims by finding the Plan Injunction cannot be said to exclude the Remaining Claims as they are currently pled. Therefore, as pled, the Remaining Claims cannot proceed.

The Court grants the motion in part and denies it in part.

I.    <u>Background</u>

The Moellers filed a complaint against the Individual Defendants in the United States District Court for the District of Montana in March 2020, asserting causes of actions based on the allegedly fraudulent health care coverage the defendants provided to the Moellers.[13] This complaint also named The Aliera Companies, Inc. ("<u>Aliera</u>") and Trinity Healthshare, Inc. (the former name of

---

[13] D.I. 553 at 1.

Sharity) (hereinafter "<u>Sharity</u>") as defendants.[14] The Moellers filed their Second

Amended Complaint, the subject of this opinion, on July 8, 2021.[15] The causes of

action asserted in the Second Amended Complaint are:

    i.    Breach of Contract;

    ii.    Unfair Claims Settlement Practices;

    iii.    Fraudulent Inducement;

    iv.    Deceit;

    v.    Constructive Fraud;

    vi.    Negligent Misrepresentation;

    vii.    Common Law Bad Faith;

    viii.    Negligence

    ix.    Negligence Per Se;

    x.    Breach of Fiduciary Duty;

    xi.    Consumer Protection Act;

    xii.    Joint Tortious Enterprise;

    xiii.    Malice;

    xiv.    Promissory Estoppel;

    xv.    Equitable Estoppel; and

    xvi.    Alter Ego.[16]

---

[14] <u>Id.</u>
[15] Second Amended Complaint.
[16] <u>Id.</u> at 46.

The Moellers are creditors in the Sharity bankruptcy case, which was filed in July 2021, after the Moellers filed the Second Amended Complaint. This Court entered an order on December 2, 2021, confirming Sharity's Plan of Liquidation.[17]

The Moellers also are creditors in the Aliera bankruptcy case, which was filed in December of 2021. This Court entered an order on August 17, 2023, confirming Aliera's Plan.[18]

On July 7, 2023, about a month before confirmation of Aliera's Plan, the Official Committee of Unsecured Creditors in the Aliera case and Neil Luria in his capacity as the liquidating trustee in the Sharity case filed an adversary proceeding against the Individual Defendants (hereinafter the "Adversary Proceeding"), among other defendants not party to the Second Amended Complaint.[19] The Adversary Proceeding's complaint asserted the following ten counts against the defendants:

i.      Breach of Duty of Care;

ii.     Breach of Duty of Loyalty;

iii.    Aiding and Abetting Breach of Fiduciary Duty;

iv.     Civil Conspiracy;

---

[17] Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Plan of Liquidation of Sharity Ministries, Inc. [D.I. 343].

[18] Findings of Fact, Conclusions of Law, and Order Confirming the Modified First Amended Chapter 11 Plan of Liquidation [D.I. 576].

[19] Complaint, Official Committee of Unsecured Creditors of the Aliera Companies, Inc. et al v. Shelley Steele, Chase Moses, Timothy Moses et al, Case No. 23-50433-TMH (Bankr. D. Del. July 7, 2023) [D.I. 1].

v.      Voidable Transfers and Obligations – Constructive Fraud;

vi.     Voidable Transfers and Obligations – Actual Fraud;

vii.    Voidable Transfers and Obligations as to Present or Future Creditors;

viii.   Recovery of Transfers;

ix.     Preservation of Avoided Transfers; and

x.      Disallowance of Claims.[20]

The parties in the Adversary Proceeding entered into a Settlement Agreement in December of 2023 in which the Individual Defendants here agreed to pay a total of $7.4 million to Aliera LT, LLC, the liquidating trustee in Aliera, in exchange for a release of those claims in the Adversary Proceeding's complaint and any other claims held by the Liquidating Trustee.[21]

Each of the Sharity and Aliera Plans contains a provision that enjoins creditors from pursuing causes of action that belong to the estate after the Plan takes effect.

The Aliera Plan provides in Section 13.3:

> Except as otherwise provided in this Plan or Confirmation Order, as of the Effective Date all Persons that hold a Claim are permanently enjoined from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding against an Exculpated Party with respect to an Exculpated Claim, or as against

---

[20] Id. at 29–43.
[21] Defendants' Emergency Motion to Enforce Settlement Agreement and for a Temporary Restraining Order and Preliminary Injunction Ex. A at 1.1(a), 2.1(a).

any of the Assets to be distributed under this Plan or any other Trust Assets . . . .[22]

Similarly, the Sharity Plan provides in Section XIV(B):

Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor and any successors, assigns, or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind against any of the assets to be distributed under the Plan . . . .[23]

Both plans provide that their respective liquidating trustee has the "exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action and Avoidance Actions as the sole representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code" (the "Plan Injunctions").[24]

Because of the Plans, the Debtors have been dismissed from the Moellers' suit in Montana.[25] After the entry of the orders confirming the Plans, the Individual Defendants moved the court in the Montana case to dismiss the Moellers' claims against them for lack of jurisdiction, contending that those claims belonged to the Aliera and Sharity bankruptcy estates and thus, under the Plans' injunctions, were exclusively the Liquidating Trustee's to pursue.[26]

---

[22] Modified Combined First Amended Disclosure Statement and Plan of Liquidation Filed Jointly by the Debtors and the Official Committee of Unsecured Creditors Section 13.3, 33 [hereinafter Aliera Plan].

[23] Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Sharity Ministries Inc. Section XIV(B), 51.

[24] Id.; Aliera Plan at 33.

[25] Moellers' Supplemental Brief In Support of Motion for Declaration that Montana Individual Claims Against Steele and Tim and Chase Moses Are Not Subject to Stay [hereinafter D.I. 581 or "Reply"].

[26] D.I. 553 at 1–2.

8

The Montana Court requested additional briefing from the Moellers and the Individual Defendants addressing the effect of the Sharity and Aliera bankruptcy cases on the Moellers' ability to prosecute their claims against the Individual Defendants. On August 24, 2024, United States Magistrate Judge Kathleen L. DeSoto issued her Findings and Recommendation, recommending that further proceedings be stayed until this Court can determine whether the Moellers' claims against the Individual Defendants were enjoined under the Plans and confirmation orders in the Sharity and Aliera bankruptcy cases.[27]

Magistrate Judge DeSoto undertook a thoughtful analysis of the claims in the Second Amended Complaint and their interplay with the bankruptcy issues. This Court shares Magistrate Judge DeSoto's observation that "scrutiny of [the Moellers'] Second Amended Complaint reveals that it is pled in such a way that it is difficult to discern what conduct is attributable to Individual Defendants as opposed to Aliera or Sharity."[28] In so doing, the Court found:

> [T]hroughout the Second Amended Complaint, there are only six specific references to Shelley Steele. (Doc. 216 at ¶¶ 5, 18, 125, 126, and 127). The allegations in ¶¶ 5 and 18 are general allegations related to residency and her position at Aliera. The only specific allegations that involve her are included at ¶¶ 125-127, and underlie the alter ego theory.
>
> The Second Amended Complaint treats Tim Moses similarly; however, he is also referred to in ¶¶ 19, 20, 21, 22, 24, and 84. Generally, these allegations correspond to Moses's prior conviction and characterize him as a fraudster. The allegation in ¶ 84 relates to Fraudulent Inducement, alleging that Defendants did not disclose said prior conviction. The

---

[27] <u>Moeller v. Moses et al</u>, CV 20-22-H-BMM-KLD (D. Mont., Aug. 22, 2024) [D.I. 273].

[28] <u>Id.</u> at 11.

Second Amended Complaint sparsely references Chase Moses. (Doc. 216 at ¶¶ 5, 18, 125).

The remainder of the Second Amended Complaint refers to "Defendants" collectively making it difficult to discern whether alleged conduct is attributable to Aliera, Sharity, or the Individual Defendants. As a result, this Court has difficulty divorcing the allegations against Aliera or Sharity from the allegations involving the Individual Defendants. Although Plaintiffs go to great lengths to distinguish their claims against the Individual Defendants from Aliera and Sharity, the claims as pled in the Second Amended Complaint are indistinguishable and the Court cannot discern whether the claims are individualized as Plaintiffs argue.

Further, as a practical matter, the Individual Defendants appear to be Insiders. (Doc. 216 at ¶ 18). Plaintiffs allege that Shelley Steele was the CEO of Aliera Healthcare Inc., Chase Moses was the President and Tim Moses was Executive Director. As such, the relief Plaintiffs seek closely mirrors relief sought by the Official Committee of Unsecured Creditors of the Aliera Companies and the Sharity Liquidating Trustee in the Adversary Proceeding. Here—and in the Adversary Proceeding—there is a concerted effort to impose liability on the Individual Defendants, obtain a judgment against each of them and satisfy the judgment from their assets. Given the broad language in the Plan and Confirmation Order, reserving to the Liquidating Trusts all claims against Insiders and the equally broad language in the injunctions, this Court is not persuaded by Plaintiffs' argument that no ruling confers standing to the Liquidating Trustees to bring general alter ego claims on behalf of Members. As a result, allowing Plaintiffs to proceed here may run afoul of the Plan and Confirmation Order.

At a minimum, it appears Plaintiffs' factual allegations overlap with the allegations asserted in the Adversary Proceeding. The relief sought is similar, and any recovery by Plaintiffs individually would diminish the resources available to the Liquidating Trusts if they prevail against the Individual Defendants after Plaintiffs' suit is resolved. Under these circumstances, permitting Plaintiffs' case to proceed without an affirmative determination that this action is neither enjoined nor violative of the Plans and Confirmation Orders gives this Court pause.[29]

This Court agrees with Judge DeSoto's analysis.

---

[29] Id. at 11–13.

The Montana Court adopted the Findings and Recommendations and stayed any further proceedings until this Court determines that the Plan Injunctions do not bar the Moellers' claims against the Individual Defendants. The Montana Court ordered in relevant part "that further proceedings in this case are stayed pending a determination by the Delaware Bankruptcy Court in Case Nos. 21-11001-TMH and 21-11548-TMH; that Plaintiffs claims against Individual Defendants are not enjoined under the Plans and Confirmation Orders . . . ."[30]

Thus, the issue before the Court is whether the Moellers' claims against the Individual Defendants are enjoined by the Plan Injunctions. This question ultimately boils down to whether the claims against the Individual Defendants are 1) property of the estates and thus exclusively the Aliera and Sharity to pursue or 2) not property of the estates and thus open for pursuit by the Moellers. This Court shares the Montana Court's observations regarding the lack of clarity in the Second Amended Complaint.

II.   <u>Jurisdiction</u>

The injunctions at issue here are contained in this Court's own orders confirming the Aliera and Sharity plans. A bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders."[31] Therefore, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).[32] These cases

---

[30] <u>Moeller v. Moses et al.</u>, CV 20-22-H-BMM-KLD (D. Mont. Oct. 17, 2024) [D.I. 274].
[31] <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 151 (2009).
[32] 28 U.S.C. § 1334(b).

have been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of reference.[33]

III.   <u>Discussion</u>

The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[34] Under this definition, the estate encompasses those causes of action in which "the claim existed at the commencement of the filing and [which] the debtor could have asserted the claim on his own behalf under [applicable] law."[35] The bankruptcy trustee has the exclusive authority under Bankruptcy Code section 541 to assert those causes of action that belong to the bankruptcy estate.[36]

The Third Circuit, in <u>In re Emoral, Inc.</u>, established an elements test for determining whether a cause of action is property of the estate. Those elements are: (1) "the claim [must have] existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law," and (2) the claim is "a general one, with no particularized injury arising from it."[37] When a claim meets both requirements, it is solely the trustee's to assert whereas, if either is not met, the claim belongs to the individual claimant.

---

[33] 28 U.S.C. § 157(a); Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012.
[34] 11 U.S.C. § 541(a)(1).
[35] 296 F.3d at 169.
[36] 11 U.S.C. § 541
[37] <u>In re Emoral, Inc.</u>, 740 F.3d at 879 (internal quotations omitted).

In Emoral, the Third Circuit dealt with claims of successor liability and found that such claims were of the kind that the debtor could have brought prior to the bankruptcy.[38] Similarly, in In re Maxus Energy Corp., this Court found that alter ego claims could have been brought by the debtor prior to the petition date.[39] Further, this Court, in In re TPC Group Inc., found that, under Delaware law, the debtor there could have brought veil-piercing claims prior to the petition date.[40] Thus, claims of successor liability, alter ego, and veil-piercing are of the kind that the debtor could have brought prior to the petition date, and, thus, such claims satisfy the first prong set by Emoral.

Regarding the second prong, the Third Circuit, in Emoral, clarified that a "general" claim is one for which "the facts giving rise to the cause of action [are] . . . common to all creditors," and a successful recovery on the claim will "benefit the creditors . . . generally."[41] Whether a claim against a third party is general turns on whether the basis for liability is "unique to a particular creditor or applies equally to all creditors."[42] The focus here is "not on individual injury but on whether the conduct that gives rise to the alleged liability was directed at a particular creditor" rather than at the debtor.[43] The Third Circuit expands on this in In re Wilton Armetale, Inc., stating that the generality or specificity of a claim is "not tied to the

---

[38] Id. at 879-880.
[39] 571 B.R. 650 (Bankr. D. Del. 2017).
[40] In re TPC Grp. Inc., 2023 WL 2168045, at *7.
[41] In re Emoral, Inc., 740 F.3d at 878.
[42] In re TPC Grp., Inc., 2023 WL 2168045 at *6.
[43] Id. at *7.

harm done to the creditor by the debtor" but instead is "based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claims against the debtor."[44] In that case, for example, the court found that a creditor trying to recover for their injuries from a third party because that third party had plundered the debtor did not have standing to bring such a claim.[45] That claim belonged to the estate because it was, primarily, a harm done to the estate that created a secondary harm to creditors.[46]

Given this framework, each of the counts in the Second Amended Complaint either is or is not part of the Sharity and Aliera estates. For the reasons explained below, Counts II, XII, and XIII are not part of the estates, meaning that the Moellers may continue pursuing them in Montana. However, Counts II and XVI are part of the estates, and the Plan Injunction enjoins the Moellers from pursuing them further. The Remaining Counts may or may not be part of the estates based on the allegations currently in the Second Amended Complaint, but the ambiguity in their drafting prevents the Court from finding that the Plan Injunction does not apply to them. Instead, the Court finds that the Remaining Counts are enjoined as currently pled.

A. The Moellers must remove Counts II and XVI from the Second Amended Complaint.

1. Count II: Unfair Claims Settlement Practices

---

[44] 968 F.3d 273, 282–283 (3d Cir. 2020) (internal quotations omitted).
[45] Id. at 283.
[46] Id.

14

The Moellers must dismiss Count II from the Complaint because the claim for Unfair Settlement Practices is no longer viable. Montana law requires that such claims may be brought only against insurance companies, and, given that Aliera and Sharity have both been dismissed from the suit and the Individual Defendants are natural persons, this claim is effectively dismissed.[47]

   2.  Count XVI: Alter Ego

As established by Emoral, Wilton Armetale, and TPC Group, claims of vicarious liability, such as alter ego claims, that could have been brought by the Debtor prior to the petition date and are general to all creditors are property of the estates.[48] The Second Amended Complaint alleges that the Individual Defendants were alter egos of the debtors and used this relationship to "control[] and commingle[] funds, transfer[] funds to their own accounts for their own personal benefit, and otherwise treat[] the funds given in trust to Aliera and [Sharity] as if these funds were their own."[49]

While these actions no doubt injured the Moellers and other creditors, the primary victims of these actions were the debtors themselves, with the creditors' harm being a secondary effect of that primary harm. Thus, given that the primary harm was to the estates and any secondary injury suffered by creditors as a result would therefore be "general" to all creditors, Count XVI is a part of the estates,

---

[47] Mont. Code Ann. § 33-18-201 (2023).
[48] See 740 F.3d at 882; 968 F.3d at 283; 2023 WL 2168045, at *7.
[49] Second Amended Complaint ¶ 125.

meaning the Plan Injunction enjoins the Moellers from bringing this claim, and the

Moellers must dismiss Count XVI from the Second Amended Complaint.

B. Counts I, XII, and XIII are not part of the bankruptcy estates and may remain in the Second Amended Complaint.

To the first prong of the Emoral analysis, all the remaining claims in the

Second Amended Complaint existed at the time of and prior to the bankruptcies

given that the Complaint was filed prior to either bankruptcy petition.[50] As to the

second prong, the Individual Defendants rely on Emoral's assertion that a general

claim is one that "fail[s] to demonstrate how . . . the factual allegations that would

establish [the] cause of action . . . are unique . . . as compared to other creditors . . .

."[51] However, the test in Emoral does not require that the theory of liability is

common to all creditors as a result of the nondebtor defendants committing a

certain tortious action repeatedly to numerous creditors. Instead, the test provides

that a claim is general when the theory of liability is common to all creditors

because there was first harm to the bankruptcy estate, which in turn, harmed all

creditors.[52] For example, this Court in In re Cornucopia Oil & Gas Co., LLC points

out that a claim alleging that the nondebtor defendants plundered the debtor's

assets would be a general claim that was part of the estate because the harm was

common to creditors based on their relationship to the debtor.[53] However, the Court

there also found that claims for failure to disclose material facts would not be

---

[50] Id. at 47.
[51] 740 F.3d at 880.
[52] See No. 19-11781, 2024 WL 791962, at *2 (Bankr. D. Del. Feb. 26, 2024).
[53] Id.

property of the estate because they are not general to all creditors (even though this is the kind of claim that, depending on the case, numerous creditors could have against the same nondebtor defendants).[54]

Similarly, here, while numerous creditors might potentially have highly similar claims to those in the Second Amended Complaint, that is because the Individual Defendants would have allegedly committed the same torts repeatedly, not because they committed a single tort that harmed the estates, with that harm also reaching creditors. Thus, though the harm to creditors here might be common, it is not "general" within the meaning of <u>Emoral</u>, and, therefore, the counts below belong to the Moellers.

### 1. Count I: Breach of Contract

The Moellers asserted Count I against the Individual Defendants as well as Sharity and Aliera. The Moellers entered into contracts only with Sharity and Aliera.[55] As the Individual Defendants point out, they were not parties to these contracts.[56] However, under Montana law, an agent entering contracts on behalf of a principal may be directly liable to the third party when the agent's actions are wrongful in nature.[57] Whether the Moellers can prove that the Individual Defendants acted as agents or that they acted wrongfully in their role as agents is

---

[54] <u>Id.</u>
[55] Second Amended Complaint ¶ 67.
[56] Supplemental Objection of Shelley Steele, Tim Moses, and Chase Moses to Motion for Declaration that Montana Individual Claims Against Steele and Tim and Chase Moses Are Not Subject to Stay 5.
[57] Mont. Code Ann. § 28-10-702(3) (2023).

not for this Court to decide. Instead, the only issue here is whether a claim of this kind belongs to the estates or to the Moellers. Given that the Moellers are alleging a form of direct liability, this claim does not belong to the estates.

This is not a general claim. Though the Individual Defendants may have entered into highly similar or even identical contracts with other creditors, the harm alleged in this claim is not secondary to harm that these alleged torts would have caused to the estates. The alleged harm here is direct from the Individual Defendants to the Moellers. There is no harm to the estates here that trickled down as a secondary harm to other creditors. Therefore, as explained above, though this cause of action may be common to other creditors who entered similar contracts, it is not "general" within the meaning of Emoral.

### 2. Count XII: Joint Tortious Enterprise

In In re TPC Group Inc., this Court found that a claim for negligent undertaking was a direct cause of action and thus was not a general claim which was part of the bankruptcy estate.[58] There, the theory of liability was that a party (the non-debtor defendants) who undertakes to another party (the debtor) to protect a third party (the claimant) must do so in a reasonable manner.[59] The duty owed to the third party (the creditor) was distinct from the duty owed to the debtor.[60] Therefore, because the theory of liability of negligent undertaking was unique to the

---

[58] 2023 WL 2168045, at *8.

[59] Id.

[60] Id.

creditor, the Court found that the claim was not general and was, thus, not a part of the estate.[61]

Here, similarly, Count XII is for Joint Tortious Enterprise which, simply put, provides that a party may be liable to a third party if they commit a tortious act in concert with or in assistance of another. The duty owed under Count XII is to the third party (here, the Moellers), not the other tortfeasor. Thus, like the claim in TPC Group, Count XII is a direct claim that belongs to the Moellers rather than a general, indirect claim that would belong to the estates.

      3.   <u>Count XIII: Malice</u>

Count XIII for Malice is not an independent cause of action but rather allows plaintiffs to seek punitive damages by asserting that the underlying tortious conduct involved actual malice under Montana Code § 27-1-221.[62] This is not an independent claim and is instead derivative of the other causes of action in the Second Amended Complaint.[63] Therefore, Count XIII may remain in the Second Amended Complaint as it relates to the aforementioned causes of action which belong to the Moellers and are thus permitted to go forward in the Montana proceedings.

    C.   <u>The remaining claims in the Second Amended Complaint depend on allegations of actions taken by the Individual Defendants and may be property of the estates, depending on whether they rely on theories of direct or vicarious liability.</u>

---

[61] <u>Id.</u>

[62] Mont. Code Ann. § 27-1-221 (2023).

[63] <u>Id.</u>

In addition to the aforementioned claims, the Moellers assert eleven other causes of action against the Individual Defendants, some of which involve direct conduct by the Individual Defendants and others that seem to rely on theories of vicarious liability.[64] In their Motion and Reply, the Moellers assert additional factual allegations that pertain specifically to the Individual Defendants.[65] However, this Court's review is limited to the Second Amended Complaint, which also includes allegations against the debtors and allegations against the Individual Defendants of alter ego liability.[66]

Based on its review of the Second Amended Complaint, which is not a model of clarity, this Court cannot find that the Remaining Claims are either enjoined or not enjoined. That problem must be resolved, however. The best resolution this Court can craft is to determine that the Moellers cannot meet their burden of showing that the Remaining Claims are not enjoined.

This Court does not order that the Remaining Claims be dismissed, or that the Moellers be granted leave to further amend. While it is possible that the Moellers could amend the Second Amended Complaint to plead causes of action that are not enjoined under the analytical framework described in this opinion, that is not a question that can be resolved today. That is a question for the Montana Court. This Court limits its ruling to a finding that the Moellers have not established that

---

[64] Second Amended Complaint.
[65] D.I. 553 6; D.I. 581 ¶ 14.
[66] Second Amended Complaint ¶ 5.

they can proceed with the Remaining Claims without running afoul of the injunctions set forth in the Aliera and Sharity Plans.

IV.   <u>Conclusion</u>

For the foregoing reasons, it is hereby ordered that the Motion is granted in part and denied in part. Counts I, XII, and XIII set forth causes of action that are not enjoined. However, Counts II and XVI are enjoined by the Plan Injunctions. The Moellers may not pursue the Remaining Claims as presently pled.

Date: July 24, 2025
Wilmington, Delaware

Thomas M. Horan
United States Bankruptcy Judge